# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>USA GYMNASTICS,[1]<br><br>　　　　Debtor. | Chapter 11<br><br>Case No. 18-09108-RLM-11 |
| USA GYMNASTICS,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY f/k/a CIGNA INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, LIBERTY INSURANCE UNDERWRITERS INC., NATIONAL CASUALTY COMPANY, RSUI INDEMNITY COMPANY, TIG INSURANCE COMPANY, VIRGINIA SURETY COMPANY, INC. f/k/a COMBINED SPECIALTY INSURANCE COMPANY, WESTERN WORLD INSURANCE COMPANY, ENDURANCE AMERICAN INSURANCE COMPANY, AMERICAN INTERNATIONAL GROUP, INC., AMERICAN HOME ASSURANCE COMPANY, and DOE INSURERS<br><br>　　　　Defendants. | Adv. Proc. No. 19-50012<br>in 18-09108-RLM-11 |

**USA GYMNASTICS' OBJECTION TO DEFENDANTS' JOINT MOTION TO
<u>WITHDRAW THE REFERENCE OF THE ADVERSARY PROCEEDING</u>**

---

[1] The last four digits of the Debtor's federal tax identification number are 7871. The location of the Debtor's principal office is 130 E. Washington Street, Suite 700, Indianapolis, Indiana 46204.

USA Gymnastics, as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**" or "**USAG**"), hereby objects (the "**Objection**") to *Defendants' Joint Motion to Withdraw the Reference of the Adversary Proceeding* [Adv. Dkt. 37] (the "**Withdrawal Motion**"). In support of its Objection, USAG respectfully states as follows:

## INTRODUCTION

USAG commenced this bankruptcy case to implement procedures to equitably determine the rights of, and allocate recoveries to, survivors of sexual abuse. USAG's insurance policies are the single greatest asset of USAG's estate, and the coverage under those policies will fund recoveries to survivors holding allowed claims against USAG. *See, e.g., Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 748 (7th Cir. 1989) ("A policy of insurance is an asset of the estate"); *In re Stinnett*, 321 B.R. 477, 483–85 (S.D. Ind. 2005) (holding that insurance policy and proceeds were property of estate), *aff'd*, 465 F.3d 309, 312–13 (7th Cir. 2006) (same). It is imperative that USAG determine the amount of coverage under its insurance policies so that it may move forward in its bankruptcy case and bring resolution to the sexual abuse claims.

The Withdrawal Motion and the accompanying *Motion For Stay Of The Adversary Proceeding* [Adv. Dkt. 38] (the "**Stay Motion**") seek to halt the progress of USAG's bankruptcy case by staying the Adversary Proceeding and sending it to the District Court. At this early stage in the Adversary Proceeding, USAG submits that it would be premature and counter to the interests of USAG and the creditor survivors for the District Court to withdraw the reference. Regardless of whether the Adversary Proceeding presents claims that the Bankruptcy Court may not enter judgment on without consent, the Bankruptcy Court is still the appropriate forum for this case to progress until it becomes trial ready. Defendants' principal arguments in support of their Withdrawal Motion—that the Bankruptcy Court lacks the power to issue final judgments in non-core matters and that Defendants may in the future demand a jury trial—are not yet ripe and

could be mooted by the resolution of this Adversary Proceeding prior to trial. Allowing the Bankruptcy Court to guide the parties through the pre-trial process is the most efficient use of judicial resources and will promote uniformity of bankruptcy administration, foster economical use of debtor and creditor resources, and expedite the bankruptcy process. Accordingly, USAG respectfully requests that the District Court deny the Withdrawal Motion without prejudice to the rights of Defendants to refile the Withdrawal Motion if the case ever becomes trial ready.

## BACKGROUND

**I.      The Bankruptcy Case.**

USAG is a 501(c)(3) not-for-profit organization based in Indianapolis, Indiana. USAG sets the rules and policies that govern the sport of gymnastics in the United States, including selecting and training the United States gymnastics teams for the Olympics and World Championships. USAG provides educational opportunities for coaches and judges, as well as gymnastics club owners and administrators, and sanctions approximately 4,000 competitions and events throughout the United States annually. More than 200,000 athletes, professionals, and clubs are members of USAG.

On December 5, 2018, USAG filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. At the time it filed its case, hundreds of lawsuits were pending against USAG, most arising out of sexual abuse committed by Lawrence Nassar. USAG determined that the Bankruptcy Court provided the most efficient and equitable forum in which to determine the rights of the hundreds of sexual abuse plaintiffs and distribute recoveries to those holding allowed claims. USAG expects to fund recoveries from its insurance policies. USAG has no other significant assets.

USAG has maintained various comprehensive general liability and directors and officers primary, excess, and umbrella insurance policies. USAG's insurance policies have various coverage periods and terms, complicating the determination as to which policies apply to which claims against USAG. Further, numerous of USAG's insurers have wrongfully refused to defend or indemnify USAG with respect to certain pre-petition lawsuits and investigations, requiring USAG to incur unnecessary defense costs in those matters.

It is not in the best interests of USAG or the survivors for USAG to languish in chapter 11. Accordingly, USAG moved swiftly to institute procedures and bar dates for submitting claims, including claims for sexual abuse [Bankruptcy Dkt. 301], and USAG brought this Adversary Proceeding to determine its available insurance coverage.

## II. The Adversary Proceeding.

On February 1, 2019, USAG filed this Adversary Proceeding against Defendants, which are USAG's insurers. USAG seeks a declaration determining the scope of USAG's rights and its insurers' obligations under USAG's insurance policies. In particular, USAG requests that the Court determine: (i) which claims against USAG are covered by which policy; (ii) the limits offered by each policy as to the claims which trigger those policies; (iii) whether particular insurers wrongfully refused to defend and indemnify USAG under the policies; (iv) whether any policies are exhausted on account of USAG's liabilities or the size of claims; and (v) whether and on what terms the insurers may settle claims in good faith when policies appear in danger of exhaustion. (*See* Adv. Dkt. 1, at ¶ 36.) For Defendants' breaches of their defense and indemnification duties, USAG requests actual and consequential damages, pre-judgment and post-judgment interest on the same, and attorneys' fees. (*Id.* at ¶ 46.)

On March 1, 2019, USAG filed a Motion for Partial Summary Judgment against one of the Defendants, Liberty Insurance Underwriters ("**LIU**") [Adv. Dkt. 26 (the "**LIU Summary Judgment Motion**")]. LIU sold a claims-made policy to USAG covering the period from May 16, 2016 to May 16, 2017. (LIU Summary Judgment Motion, at 2.) The policy imposed a duty upon LIU to defend USAG with respect to any claim made during the policy period arising from a wrongful act, as well as post-policy claims that related to a claim initially made during the policy period. (*Id.* at 5.) LIU has refused to defend USAG in litigation and investigations that triggered the policy's duty to defend. These matters include: lawsuits alleging USAG's liability for sexual abuse committed by Nassar; a proceeding initiated by the United States Olympic Committee (the "**USOC**") to decertify USAG as an Olympic National Governing Body; investigations conducted by the USOC, the Indiana Attorney General, the U.S. House of Representatives Committee on Energy and Commerce, the U.S. House of Representatives Committee on Oversight and Government Reform, and the U.S. Senate Committee on Commerce, Science, and Transportation; and various criminal prosecutions of former USAG officers and employees. (*Id.* at 2-5.) The LIU Summary Judgment Motion highlights the type of substantial and complex issues that the Court will have to resolve for each insurance policy at issue and each Defendant involved in this Adversary Proceeding.

As of the date of this Objection, none of the Defendants have filed any answers or dispositive motions in this Adversary Proceeding and there has been no discovery.

## ARGUMENT

**I.   Standard For Permissive Withdrawal Of The Reference.**

The District Court has original, but not exclusive, jurisdiction over all bankruptcy proceedings. 28 U.S.C. § 1334(b). The Bankruptcy Court exercises such jurisdiction under a standing order of reference, as provided by 28 U.S.C. § 157(a); *see also* S. Dist. Ind. Local R.

4

83-8 (providing for automatic referral of bankruptcy cases to the Bankruptcy Court for the Southern District of Indiana). Once a title 11 proceeding has been referred to the Bankruptcy Court, the District Court's authority to withdraw the reference is governed by 28 U.S.C. § 157, which provides for both mandatory and permissive withdrawal. Only permissive withdrawal is at issue here. (Withdrawal Motion, at 5-6.) Permissive withdrawal is appropriate "for cause shown." 28 U.S.C. § 157(d). As the movants, the Defendants bear the burden to show cause. *In re Stein*, No. 17-CV-00561-TWP-MJD, 2017 WL 2418325, at *1 (S.D. Ind. Jun. 2, 2017) (denying motion to withdraw reference).

"A district court has broad discretion in determining whether to withdraw a reference based on cause, but permissive withdrawal is the exception, rather than the rule." *Gecker v. Marathon Fin. Ins. Co.*, 391 B.R. 613, 614–15 (N.D. Ill. 2008) (internal quotations and citations omitted). As the Supreme Court recognized in its seminal decision, *Stern v. Marshall*, 564 U.S. 462 (2011), under the "division of labor" envisioned by the Bankruptcy Code, bankruptcy courts will hear most adversary proceedings and contested matters in the first instance, even those on which they may not issue final judgments. *Id.* at 502. "Although withdrawal is an important component of [the statutory] scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of the bankruptcy court." *STC, Inc. v. Global Traffic Technologies, LLC*, No. 15-CV-0037, 2015 WL 1042431, at *4 (S.D. Ill. Mar. 6, 2015) (quoting *In re Enron Corp.*, 295 B.R. 21, 28 (S.D.N.Y. 2003)).

28 U.S.C. § 157(d) does not define cause. When making a determination whether cause exists for permissive withdrawal, a court may consider:

> a. judicial economy, convenience, and the particular court's knowledge of the facts;
> b. the promotion of uniformity and efficiency of bankruptcy administration;
> c. the reduction of forum shopping and confusion;

5

       d.    conservation of debtor and creditor resources;
       e.    whether the proceeding is core or non-core; and,
       f.    whether the parties have requested a jury trial.

*Gecker*, 391 B.R. at 615 (applying above factors and denying motion to withdraw reference).

## II.   Permissive Withdrawal Is Not Appropriate At This Stage Of The Adversary Proceeding.

Cause does not currently exist for permissive withdrawal of this Adversary Proceeding. For purposes of this Objection, USAG does not dispute that its Complaint presents pre-petition breach of contract claims and assumes that Defendants will assert a jury demand. Regardless, the other factors in the permissive withdrawal analysis weigh strongly in favor of retaining the case under the Bankruptcy Court's jurisdiction, particularly at this early point in the Adversary Proceeding.

### A.   The Core/Non-Core Determination And Defendants' Expectation That They Will Assert A Jury Demand Do Not Require Withdrawal Of The Reference.

Defendants focus primarily on two factors—whether the proceeding is core or non-core and whether the parties have requested a jury trial—in seeking withdrawal of the reference. But the mere fact that a proceeding is non-core does not necessitate withdrawal. Courts have refused to withdraw the reference in the early stages of non-core adversary proceedings when doing so would not promote judicial efficiency.

Indeed, "[w]here a proceeding is in a preliminary stage, the bankruptcy judge is presiding over other actions that rely on the same factual and legal grounds and discovery is yet to be conducted, the bankruptcy judge is in a better position to preside over the proceeding efficiently, and permissive withdrawal of the reference is not warranted." *STC, Inc.*, 2015 WL 1042431, at *4; *see also Official Comm. Of Unsecured Creditors of Country Stone Holdings, Inc. v. First Midwest Bank & Ronald Bjustrom*, No. 15-CV-04063-SLD, 2016 WL 1259378, at *3 (C.D. Ill. Mar. 30, 2016) ("[J]udicial economy will be served by allowing the claims to be considered by

6

the bankruptcy court first. The bankruptcy court has great expertise in dealing with claims that are, like these, deeply entangled in the underlying bankruptcy proceedings. The bankruptcy court also has much greater familiarity with the facts of this case").

Thus, "[o]f the courts that have considered the issue of an early withdrawal of a reference to the bankruptcy court, the overwhelming majority have declined, post-*Stern*, to withdraw the reference, recognizing the value of the bankruptcy judge's familiarity with relevant law and the facts of the cases before them." *Mason v. Klarchek*, No. 12-CV-9971, 2013 WL 1869098, at *2 (N.D. Ill. May 2, 2013) (internal citation omitted); *see also In re E & S Facilities, Inc.*, 181 B.R. 369, 373–74 (S.D. Ind. 1995) (refusing to permissively withdraw reference early in RICO adversary proceeding because "the interests of judicial economy and efficient case management weigh in favor of continued litigation at the bankruptcy court level").

In addition, the "mere request for a jury trial is not sufficient cause for immediate withdrawal." *In re Stein*, 2017 WL 2418325, at *2. It is possible that "judicial efficiency is best served by allowing necessary pretrial issues, some of which may obviate the need for a jury trial altogether, to proceed in bankruptcy court." *Kemp v. Nelson*, No. 16-CV-1546-JPS, 2016 WL 7177508, at *3 (E.D. Wis. Dec. 9, 2016). Accordingly, district courts consistently refuse to withdraw the reference in the early stages of an Adversary Proceeding, even where defendants demand a jury trial and refuse to consent to trial in the bankruptcy court. *See, e.g., In re Stein*, 2017 WL 2418325, at *2; *Kemp*, 2016 WL 7177508, at *3; *Abrams v. DLA Piper (US) LLP*, No. 12-CV-19-TLS, 2012 WL 1714591, at *4 (N.D. Ind. May 15, 2012); *Southern Elec. Coil, LLC v. FirstMerit Bank, N.A.*, No. 11-C-6135, 2011 WL 6318963, at *4 (N.D. Ill. Dec. 16, 2011); *In re Petters Co., Inc.*, 440 B.R. 805, 810 (Bankr. D. Minn. 2010); *In re Neumann Homes, Inc.*, 414 B.R. 383, 386–87 (N.D. Ill. 2009); *Gecker*, 391 B.R. at 616; *CDX Liquidating Trust v. Venrock*

7

*Associates*, No. 04-CV-7236, 2005 WL 3953895, at *4 (N.D. Ill. Aug. 10, 2005); *In re Conseco Fin. Corp.*, 324 B.R. 50, 55–56 (N.D. Ill. 2005); *ABC-NACO, Inc. v. Klos Trucking, Inc.*, No. 04-C-0033, 2004 WL 728190, at *2 (N.D. Ill. Mar. 31, 2004); *In re Dreis & Krump Manufacturing Co.*, No. 94-C-4281, 1995 WL 41416, at *3 (N.D. Ill. Jan. 31, 1995); *Vista Metals Corp. v. Metal Brokers Int'l Inc.*, 161 B.R. 454, 458–59 (E.D. Wis. 1993); *Bus. Comm'cns, Inc. v. Freeman*, 129 B.R. 165, 166 (N.D. Ill. 1991).

In short, the permissive withdrawal analysis turns on the specific facts and circumstances of each case, not on *per se* rules. Even in non-core proceedings where defendants demand jury trials, cause does not exist for immediate withdrawal when withdrawal would not also promote judicial efficiency, uniformity of bankruptcy administration, the economical use of debtor and creditor resources, or the expeditious resolution of the underlying bankruptcy case. *See First Midwest Bank*, 2016 WL 1259378, at *3. Here, where the Bankruptcy Court is best positioned to guide the parties through the pre-trial stages, the nature of the claims USAG asserts and the fact that Defendants may demand a jury trial should not control the analysis.

### B. Withdrawing The Reference Will Not Promote Judicial Economy Or Uniformity Of Bankruptcy Administration.

The Bankruptcy Court has already gained extensive familiarity with USAG, its operations, and the claims asserted against it and is familiar with the insurance coverage disputes at issue in this Adversary Proceeding.[2] (*See* Bankruptcy Dkt. 197 (final order authorizing USAG to continue its insurance policies).) Allowing the Bankruptcy Court to guide the same parties through factual discovery related to the Adversary Proceeding and to rule on any pre-trial

---

[2] The Bankruptcy Court is also uniquely familiar with the Debtor's main case which even at this relatively early stage already contains more than 340 docket entries. The Debtor's *Additional Designation Of Record*, filed contemporaneously herewith, identifies certain of the key filings in the Bankruptcy Court.

8

motions will promote judicial economy and administrative and substantive uniformity, even if the reference is eventually withdrawn to allow trial to proceed in the District Court.

*Gecker v. Marathon Financial Insurance Company*, 391 B.R. 613, 615-16 (N.D. Ill. 2008), is instructive. There, the district court declined to withdraw the reference for a non-core adversary proceeding involving insurance contracts and defendants who demanded a jury trial because doing so would not promote judicial economy. The court reached this result because it found that the bankruptcy court "has gained substantial familiarity with the parties, their counsel, and the background issues of the case" and "has a significant base of knowledge from which to manage the next steps of the adversary proceeding." 391 B.R. at 615-16. The court also noted that a "jury trial remains a distant and speculative prospect." *Id.* at 616. Accordingly, it refused to withdraw the reference because doing so would negate the work the bankruptcy court had already devoted to the bankruptcy case and the adversary proceeding and would force the district court to familiarize itself with the parties, their claims, and their defenses, all without an assurance that a jury trial and a final judgment would actually and eventually be necessary. *Id.* Similarly, in *STC, Inc.*, a district court reached the same conclusion and noted that if it withdrew the reference, "the case would be referred to a magistrate judge for discovery purposes, requiring yet another new phase of familiarization with the facts of this case. It is therefore not an efficient use of judicial resources to withdraw the reference at this time." 2015 WL 1042431, at *4.

Here, as in *Gecker*, the likelihood of an actual jury trial and a final judgment in this Adversary Proceeding is "speculative" at best. 391 B.R. at 616. The principal class of claimants in USAG's chapter 11 case are survivors of sexual abuse whose recoveries will be funded by USAG's insurance proceeds. USAG expects that following the April 29, 2019 claims bar date, USAG, the survivors, and the insurers will attempt to reach a consensual, global resolution of

9

these claims and the coverage issues presented in this Adversary Proceeding. If that happens, this Adversary Proceeding would be mooted and there would be no need for a jury trial or for the District Court to enter a final judgment. Interests of judicial economy therefore favor keeping this Adversary Proceeding in the Bankruptcy Court unless and until it becomes apparent that USAG and its insurers will require a trial to determine the coverage dispute.

The likelihood of this Adversary Proceeding reaching trial is further reduced by the fact that insurance contracts are at issue. "The interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly suited for summary judgment." *Wagner v. Yates*, 912 N.E.2d 805, 808 (Ind. 2009); *accord Berkshire Hathaway Homestate Ins. Co. v. Basham*, 113 N.E.3d 630, 635 (Ind. Ct. App. 2018) (interpreting insurance contract and affirming grant of summary judgment in favor of policyholder). Accordingly, the most likely resolution of this Adversary Proceeding will be a summary judgment ruling, which the District Court would treat as a report and recommendation if issued by the Bankruptcy Court in the first instance.

To this point, Defendants argue that judicial economy is not served when a Bankruptcy Court decides non-core issues because a district court must review the bankruptcy court's orders *de novo*. (Withdrawal Motion, at 12–13.) The logical result of Defendants' argument is that the reference should be withdrawn in every case where the matter is non-core. But this simply cannot be and is not the case. If it were, Congress would *not* have explicitly instructed bankruptcy courts to consider non-core claims in the first instance and propose findings of fact and conclusions of law, subject to *de novo* review in the district court. *See* 28 U.S.C. § 157(c). Further, the Supreme Court in *Executive Benefits Insurance Agency v. Arkison*, 134 S. Ct. 2165 (2014), which post-dates *Stern*, would not have approved this very procedure. *Id.* at 2172-73.

10

This Court should therefore reject Defendants' argument that judicial economy supports withdrawing this Adversary Proceeding over which the Bankruptcy Court already has substantial familiarity; otherwise, "the exception [*i.e.*, withdrawal of the reference] would swallow the rule because judicial economy and efficiency would never be promoted when a Bankruptcy Court hears a non-core issue." *In re HA 2003, Inc.*, No. 03-C-9008, 2004 WL 609799, at *3 (N.D. Ill. Mar. 24, 2004) (denying motion to withdraw reference early in non-core adversary proceeding concerning insurance coverage).

Defendants next argue that judicial economy favors withdrawal because the Bankruptcy Court lacks specialized competence with respect to insurance coverage disputes. (Withdrawal Motion, at 14-15.) This argument is overstated and misses the point. *First*, though the Adversary Proceeding does not call upon the Bankruptcy Court to exercise its specialized expertise with respect to bankruptcy law, the Adversary Proceeding is, at bottom, a contract dispute. The interpretation of contracts is a routine judicial task for both the District Court and the Bankruptcy Court. Neither the District Court nor the Bankruptcy Court is comparatively more competent in breach of contract disputes, and so this factor does not establish cause for withdrawal.

*Second*, Defendants' contention that the Adversary Proceeding does not call upon the Bankruptcy Court's specialized knowledge regarding bankruptcy *law* is a red herring. The Bankruptcy Court has already gained significant familiarity and expertise with regard to USAG, its claimants, its insurers, its chapter 11 case, and the factors that will determine the successful resolution of this case. The Bankruptcy Court will only gain more expertise regarding USAG, the parties involved here, and the circumstances of this insurance coverage dispute as the bankruptcy case progresses, the full universe of claims is submitted, and a plan is proposed and hopefully

11

confirmed. Ignoring the Bankruptcy Court's specialized competence over the actual facts and parties involved in this Adversary Proceeding does not serve the interests of judicial economy.

Simply put, "the bankruptcy court is familiar with the facts of this case and better equipped to manage all pretrial matters and issues arising out of the Debtor's bankruptcy estate." *In re Stein*, 2017 WL 2418325, at *2; *accord E & S Facilities*, 181 B.R. at 374 (denying motion to withdraw reference because "the interests of judicial economy and efficient case management weigh in favor of continued litigation at the bankruptcy court level"). Judicial economy weighs in favor of denying the Withdrawal Motion.

### C. Withdrawing The Reference Will Not Conserve Debtor And Creditor Resources.

Withdrawing the reference will not conserve debtor and creditor resources and in fact will do just the opposite. USAG is a not-for-profit entity with no significant assets other than the insurance policies that are the subject of this Adversary Proceeding. It cannot afford a lengthy chapter 11 case. Moreover, USAG's creditors, and in particular the survivors of sexual abuse, are entitled to an efficient resolution of their claims. For these reasons, USAG sought and obtained from the Bankruptcy Court an April 29, 2019, bar date for the filing of all claims against USAG. Following the expiration of the bar date, USAG intends to work efficiently (and hopefully consensually) with the insurers and survivors through the claims administration process. Keeping this Adversary Proceeding in the Bankruptcy Court and on a parallel track will promote efficiency, avoid duplication, and conserve creditor and debtor resources. Even if a final adjudication of this Adversary Proceeding by the District Court becomes necessary, it will be more efficient to have the District Court review a report and recommendation prepared by the Bankruptcy Court, rather than have the District Court independently duplicate work that the Bankruptcy Court will also do to resolve the underlying bankruptcy case. *See 880 S. Rohlwing*

12

*Road, LLC v. T&C Gymnastics, LLC*, No. 16-CV-07650, 2017 WL 264504, at *10 (N.D. Ill. Jan. 19, 2017) ("the bankruptcy court's ability to handle pre-trial matters and to issue, as necessary, proposed findings of fact and conclusions of law promotes judicial economy and weighs against early withdrawal").

### D. Withdrawing The Reference Will Not Prevent Forum Shopping.

Last, Defendants contend that USAG engaged in impermissible forum shopping by filing this Adversary Proceeding in the Bankruptcy Court following the administrative closure of the pre-petition litigation in the District Court. (Withdrawal Motion, at 15-17.) This argument is without merit.

The focus of the forum shopping inquiry is whether a party acted with impermissible motivations in moving litigation from one court to another. *See In re Conseco Fin. Corp.*, 324 B.R. 50, 54–55 (N.D. Ill 2005). Defendants insinuate that USAG filed this Adversary Proceeding because it sought to have the litigation heard in a friendlier forum. (Withdrawal Motion, at 17.) But there is no basis for that conclusion, nor would it be more efficient to reopen the pending district court case, as Defendants suggest. (*Id.* at 16.) The prepetition District Court case was not materially further along than the Adversary Proceeding before the Bankruptcy Court. The day before USAG filed for bankruptcy one defendant filed a motion to dismiss; none of the other defendants had answered or otherwise responded to USAG's complaint. Neither the District Court nor the Bankruptcy Court had ruled on any merits issue in this insurance coverage dispute at the time USAG filed the Adversary Proceeding and the District Court closed its case.[3]

USAG would have had no basis to believe that the bankruptcy forum would be friendlier

---

[3] USAG also disagrees with Defendants' contention that USAG filed an erroneous notice of stay and that the District Court erred when it administratively closed the case. (Withdrawal Motion, at 16-17.) The insurers' opposition to the declaratory judgment complaint would have constituted an act to exercise control over property of the estate and the case was appropriately stayed under 11 U.S.C. § 362(a)(3). *See In re Mid-City Parking, Inc.*, 332 B.R. 798, 807 n. 7 (Bankr. N.D. Ill. 2005).

13

to it and more hostile to Defendants. Instead, USAG filed this Adversary Proceeding after commencing its chapter 11 case to promote judicial efficiency by having one court administer both its bankruptcy case and this insurance coverage dispute. Defendants' forum shopping concerns are misplaced.

## CONCLUSION

For all of the foregoing reasons, USAG respectfully requests the Court deny, without prejudice, the Withdrawal Motion and grant such other relief as may be just.

Dated: <u>March 19, 2019</u>                  Respectfully submitted,

**PLEWS SHADLEY RACHER & BRAUN LLP**

By: */s/ Steven A. Baldwin*

     One of its Attorneys
George M. Plews
Gregory M. Gotwald
Tonya J. Bond
Steven A. Baldwin
1346 North Delaware Street
Indianapolis, Indiana 46202
(317) 637-0700
gplews@psrb.com
ggotwald@prsb.com
tbond@prsb.com
sbaldwin@psrb.com

-and-

**JENNER & BLOCK LLP**

Catherine L. Steege (admitted *pro hac vice*)
Melissa M. Root
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350
csteege@jenner.com
mroot@jenner.com

*Counsel for the Debtor*

14

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing *USA Gymnastics' Objection To Defendants' Joint Motion to Withdraw the Reference of the Adversary Proceeding* was filed electronically this 19th day of March, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

*/s/ Steven A. Baldwin*

*Counsel for the Debtor*