**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| USA GYMNASTICS, INC., | Case No. 18-09108-RLM-11 |
| Debtor. | Adv. Proc. No. 1:19-ap-50012 |

| | |
|---|---|
| USA GYMNASTICS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ACE AMERICAN INSURANCE COMPANY f/k/a | ) |
| CIGNA INSURANCE COMPANY, GREAT | ) |
| AMERICAN ASSURANCE COMPANY, LIBERTY | ) |
| INSURANCE UNDERWRITERS INC., NATIONAL | ) |
| CASUALTY COMPANY, RSUI INDEMNITY | ) |
| COMPANY, TIG INSURANCE COMPANY, | ) |
| VIRGINIA SURETY COMPANY, INC. f/k/a | ) |
| COMBINED SPECIALTY INSURANCE | ) |
| COMPANY, WESTERN WORLD INSURANCE | ) |
| COMPANY, ENDURANCE AMERICAN | ) |
| INSURANCE COMPANY, AMERICAN | ) |
| INTERNATIONAL GROUP, INC., AMERICAN | ) |
| HOME ASSURANCE COMPANY, and DOE | ) |
| INSURERS, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF USA GYMNASTICS' MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>AGAINST TIG INSURANCE COMPANY</u>**

## I.     INTRODUCTION

TIG Insurance Company ("TIG") sold multiple policies of liability insurance to USA

Gymnastics ("USAG") between 1986 and 2001. The TIG policies, and the proceeds thereof, are

critical to USAG's ability to resolve claims asserted by individuals who allege that USAG is

legally responsible for sexual abuse committed by Larry Nassar ("Nassar") or by other persons (collectively, the "Sexual Abuse Claims"). *Thirty percent of all of the Sexual Abuse Claims* occurred during years in which USAG was insured by TIG.

TIG's position is that limited abuse or molestation exclusions ("AMEs") in certain of the TIG policies give TIG a basis to deny coverage for many of the Sexual Abuse Claims. TIG is wrong. The AMEs in TIG's policies are either inapplicable to the coverage sought by USAG, or are limited to a small subset of claimants who allege that abuse occurred while those claimants were in the care, custody or control of USAG. Because TIG's unreasonable coverage position interferes with USAG's ability to reach a consensual resolution among its carriers and the sexual abuse survivors, USAG seeks entry of partial summary judgment on an expedited basis. Specifically, USAG requests entry of a judgment order declaring: (1) that the AME in the 2001 TIG policy applies only to Coverages A and B and does not apply to Coverage D (Legal Liability to Participants) or any other coverage; (2) that the AME in the 1996 TIG excess policy does not apply to "bodily injury" claims such as the Sexual Abuse Claims; and (3) that the AME in the 1991 and 1992 TIG policies does not apply unless the claimant was in the "care, custody or control" of USAG or another insured at the time of abuse.[1]

## II.   STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### A.   The 2001 Primary Policy.

TIG sold USAG numerous primary and excess level Commercial General Liability ("CGL") policies, including a primary policy with an effective date of August 1, 2001, through August 1, 2002 (the "2001 Policy"). [Dkt. 2-5; Tab 15.] The 2001 Policy has multiple coverage

---

[1] This is the first of two motions USAG will bring as to TIG. TIG also claims certain USAG policies are "lost," but the evidence actually supports the existence of these policies. This "lost policy" motion will be brought soon.

grants. That is, it provides different ways in which a liability may be covered. The 2001 Policy includes the following separate and independent types of coverage:

> Coverage A: Property Damage & Bodily Injury;
> Coverage B: Advertising & Personal Injury;
> Coverage C: Medical Payments; and
> Coverage D: Legal Liability to Participants.

[Dkt. 2-5; Tab 15 at 521–25, 539.][2] It also provides sexual abuse or molestation liability coverage. [*Id.* at 563.][3] Coverages A–D and the sexual abuse or molestation liability coverage are all separate and independent coverages.[4] Each has its own grants, exclusions, conditions, and limits.

The 2001 Policy contains an AME that is made applicable only to Coverage A and B (the "2001 AME"). The 2001 AME states that its exclusion "is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal and Advertising Injury Liability**." [Dkt. 2-5; Tab 15 at 549.][5] The 2001 AME does not state that it applies to Coverages C, D, or to the sexual abuse or molestation liability coverage. [*Id.*]

Coverage D in particular provides important additional coverage to USAG for the Sexual Abuse Claims.[6] It insures USAG for bodily injury liability arising from its athlete participants. It

---

[2] "Coverage A" covers liability for property damage and bodily injury, while "Coverage B" protects against exposure for advertising injuries and "personal injuries" (a defined term encompassing several enumerated claims like defamation, wrongful entry, and invasion of privacy). [Dkt 2-5 at 521, 524, 531.] Copies of the policy pages containing this language are attached as Exhibit 1.

[3] The sexual abuse or molestation liability coverage does not restrict any other coverages provided by the policy. [*Id.* at 563–70.]

[4] TIG also sold USAG an excess policy for the 2001 policy period. This policy follows form in all relevant ways to the primary policy.

[5] A copy of this AME is attached as Exhibit 2.

[6] As a practical matter, Coverage D is the most significant here.  Coverage C is "med-pay" coverage, for medical expenses up to $5,000 per person. The sexual abuse or molestation liability endorsement provides up to $1 million per occurrence, with no aggregate limit, but contains a deemer clause which potentially

states in relevant part:

## LEGAL LIABILITY TO PARTICIPANTS

This endorsement modifies insurance provided under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\*\*\*

The following is added to SECTION I – COVERAGES:

COVERAGE D – LIABILITY TO "PARTICIPANTS"

1.     Insuring Agreement.

     a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to any "participant". We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .

[Dkt. 2-5; Tab 15 at 539.][7]

Coverage D specifically lists all of the exclusions that apply to it:

2.     Exclusions.

     This insurance does not apply to:

     a.     "Bodily injury" that is excluded under SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions. Paragraphs a., b., c., d., e., f., g., h., i., and o.

[*Id.*] Coverage D's exclusions do not include an AME, nor does Coverage D reference or even mention the 2001 AME that was applied to Coverages A and B. [*See id.*] The same is true for Coverage C [*id.* at 525] and the sexual abuse or molestation coverage [*id.* at 566.]

---

limits coverage to abuse that first occurs during the policy period. Coverage D, however, provides up to $1 million per occurrence, with no aggregate limit and no deemer clause.

[7] A copy of Coverage D is attached as Exhibit 3.

- 4 -

      **B.**     **The 1996 Excess Policy.**

      TIG also sold USAG an excess liability Policy with a policy period from September 9, 1996 to August 1, 1997 ("1996 Excess Policy"). [Dkt. 2-5; Tab 12.] It provides $2 million in additional coverage. The 1996 Excess Policy states:

**SECTION I**
**INSURING AGREEMENTS**

      **A.**     **COVERAGE**

      \*\*\*

> The Definitions, Terms, Conditions, Limitations, and Exclusions of the UNDERLYING INSURANCE, in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provision of this policy, or relate to premium, subrogation, any obligation to defend, the payment of expenses, limits of insurance, cancellation or any renewal agreement.

[Dkt. 2-5; Tab 12, at 448.][8]

      This policy also contains a limited "Personal Injury" molestation exclusion. It states:

**MOLESTATION EXCLUSION**

> This insurance does not apply to **Personal Injury** arising out of or contributed to by the molestation of anyone. The term molestation as used here includes, but is not limited to:
>
> 1.     any actual, alleged or threatened sexual conduct or misconduct;
>
> 2.     any actual, alleged or threatened mental or physical abuse;
>
> 3.     any negligent screening, hiring, employment, training or supervision related to paragraphs 1. or 2. above; or
>
> 4.     any investigation, failure to investigate, or failure to report to proper authorities which is related to paragraphs 1. or 2. above.

---

[8] The relevant policy page is attached as <u>Exhibit 4</u>.

for which any **insured** may be legally liable or for which any **insured** may have assumed the liability of others.

[Dkt. 2-5; Tab 12, at 456 (emphasis in original).][9] The 1996 Excess Policy does not define

"**Personal Injury**." But the underlying primary policy, to which the 1996 Excess Policy

"follows form," defines it as:

injury, **other than "bodily injury"**, arising out of one or more of the following offenses:

a.    False arrest, detention or imprisonment;
b.    Malicious prosecution;
c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
d.    Oral or written publication of material that slanders of libels a person or organization or disparages a person's or organization's goods, productions or services; or
e.    Oral or written publication that violates a person's right of privacy.

[Dkt. 2-5; Tab 11, at 410 (emphasis added).] The underlying policy defines "bodily injury" (as

distinguished from "personal injury") to mean "bodily injury, sickness or disease sustained by a

person, including death resulting from any one of these at any time." [*Id*. at 409.][10]

**C.    The 1991 And 1992 Primary Policies.**

TIG also sold USAG primary policies with effective dates of August 1, 1991 – August 1,

1992 and August 1, 1992 – August 1, 1993 (the "1991 Policy" and "1992 Policy" respectively).

[Ex. 7, TIG Policy No. SSP-02719412; Dkt 2-5, Tab 2.][11] These policies provide $1 million per

occurrence, with no aggregate limit. Similar to the 2001 Policy, these policies contain participant

liability coverage. However, in these policies, TIG added this coverage as a part of Coverage A,

---

[9] This AME is attached as Exhibit 5.

[10] The relevant policy definitions are attached as Exhibit 6.

[11] TIG did not produce a copy of the 1991 Policy until after USAG filed this adversary proceeding. The 1991 Policy is attached as Exhibit 7. The declaration of USAG's corporate representative, Bernadette M. Barron, authenticating the 1991 Policy is attached as Exhibit 8.

as opposed to providing it in a separate Coverage D. [*Compare* Ex. 7, at 27 and Dkt 2-5, Tab 2,

at 62; *with* Dkt. 2-5; Tab 15 at 549.]

The 1991 and 1992 Policies contain a "care, custody or control" AME (the "1991-92

AME"). [Ex. 7, at 27; Dkt 2-5, Tab 2, at 62.] The 1991-92 AME states:

> This insurance does not apply to "bodily injury", "property damage" or "personal
> and advertising injury" arising out of:
>
> 1.    The actual or threatened abuse or molestation by anyone of any
>       person <u>while in the **care, custody or control**</u> of any **insured**, or
>
> 2.    The negligent:
>
>       a.    Employment;
>       b.    Investigation;
>       c.    Supervision
>       d.    Reporting to the proper authorities, or failure to so report;
>             or
>       e.    Retention;
>
>       of a person for whom any insured is or ever was legally
>       responsible <u>and</u> whose conduct would be excluded by Paragraph 1.
>       above.

[Ex. 7, at 27; Dkt 2-5, Tab 2, at 62.] The 1991-92 AME is limited to abuse that occurs in

the "care, custody or control" of an "insured." [*Id.*]

These policies define an "insured" as:

> 1.    If you are designated in the Declarations as:
>
>       ***
>
>       c.    An organization other than a partnership or joint venture, you are an
>             insured. Your executive officers and directors are insured. You executive
>             officers and directors are insureds, but only with respect to their duties as
>             your officers or directors. Your stockholders are also insureds, but only
>             with respect to their liability as stockholders.
>
> 2.    Each of the following is also an insured.
>
>       a.    Your employees, other than your executive officers, but only for acts

within the scope of their employment by you.

[Ex. 7, at 14; Dkt 2-5, Tab 2, at 44.]

The 1991 and 1992 Policies do not extend "insured" status to volunteers, such as Nassar. [Ex. 7, at 14; Dkt 2-5, Tab 2, at 44.] Employees are "insureds," but "only for acts within the scope of their employment by you." [Ex. 7, at 14; Dkt 2-5, Tab 2, at 44.]

### III.    LEGAL STANDARD

#### A.    Summary Judgment Standard.

A court must grant partial summary judgment to a party when there is no genuine dispute of material fact and the party is entitled to judgment as a matter of law on a specific issue. Fed. R. Civ. P. 56(a). Summary judgment is a particularly useful tool when confronting questions of law "because there are no genuine issues of material fact that must be resolved." *See Am. Nat'l Fire Ins. Co. v. Rose Acre Farms*, 846 F. Supp. 731, 735 (S.D. Ind. 1994). Contract-interpretation cases fit into this category. *Id.*

In Indiana, the meaning of an insurance policy is a pure issue of law. *See id.* If a policy is ambiguous, the court must construe it in favor of coverage rather than submitting the ambiguity to a jury. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 471 (Ind. 1985). Thus, it is particularly appropriate for a court to use summary judgment to rule on the meaning of terms in an insurance policy, as there are typically no factual issues to resolve. *Rose Acre Farms*, 846 F. Supp. at 735.

#### B.    Rules For Interpreting Insurance Policies.

Indiana has adopted a set of rules for interpreting insurance contracts. The most fundamental of these is that "[a]n insurance policy should be so construed as to effectuate indemnification . . . rather than to defeat it." *Masonic Acc. Ins. Co. v. Jackson*, 164 N.E. 628, 631

- 8 -

(Ind. 1929). Under Indiana law, an insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language. *Id.* The fact that policy terms have been accorded different meanings by different courts is itself important evidence of ambiguity. *Hartford Acc. & Indem. Co. v. Dana Corp.*, 690 N.E.2d 285, 295, 298 (Ind. Ct. App. 1997); *see also Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 938 (Ind. Ct. App. 1999). If there is any ambiguity in a policy term, Indiana law instructs that it be interpreted in favor of the policyholder and in favor of coverage. *Eli Lilly & Co.*, 482 N.E.2d at 470–71.

If a policyholder's interpretation of a term is reasonable, then the policyholder's construction governs as a matter of law. *Eli Lilly & Co.*, 482 N.E.2d at 471. The policyholder need not prove that its interpretation of a term is the only reasonable interpretation. *Id.* "Where *any* reasonable construction can be placed on a policy that will prevent the defeat of the insured's indemnification for a loss covered by general language, that construction will be given." *Am. Econ. Ins. Co. v. Liggett*, 426 N.E.2d 136, 144 (Ind. Ct. App. 1981) (emphasis supplied). Conversely, to defeat coverage, an insurer must prove that its construction of the insurance agreement is the *only* plausible or reasonable reading. *Id.*

Exclusions like TIG's AMEs are subject to especially strict scrutiny. *Kiger*, 662 N.E.2d at 947, 949; *Asbury v. Ind. Union Mut. Ins. Co.*, 441 N.E.2d 232, 242 (Ind. Ct. App. 1982). An exclusion can bar coverage only when its terms "clearly and unmistakably" apply. *Asbury*, 441 N.E.2d at 242; *Kiger*, 662 N.E.2d at 947, 949; *Masonic*, 164 N.E. at 631 (holding that coverage "will not be destroyed by language of exception, unless such exception shall be clear, and free from reasonable doubt."). TIG bears the burden of showing that an exclusion applies, *FLM, LLC v. Cincinnati Ins. Co.*, 27 N.E.3d 1141, 1143 (Ind. Ct. App. 2015). A court must resolve any uncertainty in the application of an exclusion in favor of coverage. *Kiger*, 662 N.E.2d at 947.

# IV.    ARGUMENT

**A.    The 2001 AME Is Limited To Coverages A And B And Does Not Limit Any Other Coverage Under The 2001 Policy.**

By its terms, the 2001 AME is limited to Coverages A and B and does not apply to Coverage D (or any coverage other than A and B).

The 2001 AME modifies insurance provided under the Commercial General Liability Coverage Part in a specifically limited way:

> The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A   – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of      Section I – Coverage B – Personal and Advertising Injury Liability**

[*Id*. at 549.] The 2001 AME adds the exclusion to Coverages A and B only. The 2001 AME does not state that it is added to Coverages C, D, or to the sexual abuse or molestation liability coverage. The 2001 AME is a form TIG drafted. TIG could have easily added the exclusion to Coverage D or the other coverages. But it did not do so.

The fact that each coverage grant has its own exclusions further proves that the 2001 AME applies only to Coverages A and B. The 2001 AME cannot be used to limit Coverage D and the other coverages unless it is contained in those coverages' exclusion sections. *C.f. Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 940 (Ind. Ct. App. 1999) ("As Coverages A, B and C stand independent of each other for the purposes of each insuring agreement and exclusion, we conclude that a plain reading of these unambiguously indicates that there is no pollution exclusion for the personal injury coverage.") The Seventh Circuit's opinion in *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037 (7th Cir. 1992) is instructive.  There, the Seventh Circuit rejected an insurer's attempt to extend an exclusion clause applicable to one type of coverage to another type of coverage under the same policy. It

found that the insurer's "attempts to circumvent the plain language of [an] exclusion [by having it apply to a different coverage part of the policy]" were "disingenuous and misleading—indeed, they are nearly sanctionable." *Id.* at 1042.

The same is true here. Because the 2001 AME is not listed in the Coverage C, D, or sexual abuse or molestation coverage exclusions, it does not apply to those coverages. TIG cannot circumvent the "plain language" of the endorsement by extending the exclusion to coverages which, by its own terms, it does not apply. Especially in light of the Indiana Supreme Court's strict scrutiny of exclusions, TIG's argument fails as a matter of law. *Eli Lilly*, 482 N.E.2d at 470–71. The Court should grant USAG's request for a declaration that the 2001 AME applies only to Coverages A and B and does not apply to other coverage under the 2001 Policy.

TIG may argue that because there is a separate abuse or molestation coverage endorsement, the AME somehow should magically apply to other coverages such as Coverage D. But the policy, including the abuse or molestation endorsement itself, lacks any language preventing USAG from recovering for the same claim under multiple coverage parts. Both our state and federal courts recognize that the same claim can be covered under multiple coverage grants of a liability insurance policy. *See Westfield Ins. Co. v. TCFI Bell SPE III, LLC*, No. 1:16-cv-002269-TWP-MJD, 2019 U.S. Dist. LEXIS 54899, *17 (S.D. Ind. Mar. 30, 2019) (noting that "some claims may be covered under more than one coverage grant."); *FLM, LLC v. Cincinnati Ins. Co.*, 24 N.E.3d 444, 456–58 (Ind. Ct. App. 2014) (holding that a liability is covered under both Coverage A and Coverage B).

If TIG intended to limit coverage for certain claims to one coverage part it needed to include specific language in an exclusion to that effect. TIG did not do this. It cannot infer or imply an exclusion into coverage where it did not insert the exclusion.

- 11 -

At the very least, USAG's narrow construction of this exclusion is a reasonable one. *Eli Lilly & Co.*, 482 N.E.2d at 471. That reasonable position proves an ambiguity that must be construed in favor of coverage. *Liggett*, 426 N.E.2d at 144.

**B.    The 1996 Excess Policy AME Does Not Apply To Sexual Abuse Claims.**

The 1996 Excess Policy AME (the "1996 AME") is similarly limited and does not does not apply to exclude coverage for Sexual Abuse Claims. [Dkt. 2-5; Tab 12, at 456.] It provides: "This insurance does not apply to **Personal Injury** arising out of or contributed to by the molestation of anyone." (emphasis in the original). [*Id.*]

The phrase "Personal Injury" is capitalized and bolded. This signifies that it is a defined term in any contract and especially so in standard insurance industry practice.[12] The 1996 Excess Policy does not define "Personal Injury" [Dkt. 2-5; Tab 12, at 456], but instead incorporates the definitions found in the underlying primary insurance policy, including its definition of "Personal Injury." [Dkt. 2-5; Tab 12, at 448 ("The Definitions . . . of the UNDERLYING INSURANCE . . . apply to this coverage unless they are inconsistent with provision of this policy . . . .").]

The underlying policy defines "Personal Injury" as:

injury, **other than "bodily injury"**, arising out of one or more of the following offenses:

---

[12] *Lafayette Life Ins. Co. v. Arch Ins. Co*., 784 F. Supp. 2d 1034, 1043 (N.D. Ind. 2011) ("'Related Claims' is a defined term, and like other defined terms in the Policy, 'Related Claims' appears in bold and capital letters when used."); *See also*, *Auto-Owners Ins. Co. v. Kammerer*, No. 18-cv-02143 (ECT/SER), 2019 U.S. Dist. LEXIS 70881, at *6-7 (D. Minn. Apr. 26, 2019) (using bolded words to signify they are defined terms); *Tedla v. Metro. Grp. Prop. & Cas. Ins. Co.*, No. C06-108Z, 2006 U.S. Dist. LEXIS 64285, at *14 (W.D. Wash. Sep. 8, 2006) (same); *Progressive Preferred Ins. Co. v. Reece*, 498 S.W.3d 498, 503-04 (Mo. Ct. App. 2016) (same); *Long v. Shelter Ins. Cos*., 351 S.W.3d 692, 703 (Mo. Ct. App. 2011) ("[T]he ordinary insured will observe that the word "Declarations" is in bold, and is thus a defined term.") *C.f. Gov't Emples. Ins. Co. v. Gordon*, 725 F. App'x 919, 921 (11th Cir. 2018) (using bold and italics for defined terms); *Marentes v. State Farm Mut. Auto. Ins. Co.,* 224 F. Supp. 3d 891, 911 (N.D. Cal. 2016) (using bold and italics for defined terms).

a.      False arrest, detention or imprisonment;

b.      Malicious prosecution;

c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d.      Oral or written publication of material that slanders a person or organization or disparages a person's or organization's goods, productions or services; or

e.      Oral or written publication that violates a person's right of privacy.

[Dkt. 2-5; Tab 11, at 410 (emphasis added).] Put simply, "Personal Injury," as used in this AME, does not include "bodily injury." Therefore, this "Personal Injury" AME does not impact bodily injury coverage.

The 1996 excess policy covers damages covered by the underlying insurance, unless excluded or inconsistent with the excess policy's terms. [Dkt. 2-5; Tab 12, at 448 ("This insurance . . . applies to injury or damage covered by the UNDERLYING INSURANCE.")] The underlying primary insurance lacks any AME. It covers damages arising from bodily injury. [Dkt. 2-5; Tab 11, at 392, 397, 399, 417 (emphasis added).]  Therefore, the 1996 Excess Policy, since its AME does not bar "bodily injury," provides coverage for "bodily injury."

Both the physical and emotional effects of sexual abuse constitute "bodily injury" under Indiana law. Courts applying Indiana law have found that emotional distress sustained after experiencing sexual abuse by bodily touching constitutes "bodily injury" as defined by a commercial general liability policy. *See State Farm Mut. Auto. Ins. Co. v. Jakupko*, 881 N.E.2d 654, 658 (Ind. 2008); *Westfield Ins. Co. v. Hill*, 790 F. Supp. 2d 855, 861 (N.D. Ind. 2011); *Wayne Township Bd. of Sch. Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205 (Ind. Ct. App. 1995). Because the Sexual Abuse Claims assert claims for bodily injury, the 1996 AME does not impact coverage for the Sexual Abuse Claims.

If TIG wished to expand the 1996 AME's definition of "Personal Injury" to include

- 13 -

bodily injury, it needed to be explicit. *Flexdar*, 964 N.E.2d at 848, 852. In Indiana, exclusions are strictly construed in favor of coverage. *Kiger*, 662 N.E.2d at 947, 949. USAG's construction of the 1996 AME, which tracks the defined terms selected by TIG for its policies, is reasonable and therefore requires a ruling in USAG's favor. *Eli Lilly & Co.*, 482 N.E.2d at 471. The Court should grant USAG's request for a declaration that the 1996 Excess Policy does not exclude the Sexual Abuse Claims.

### C.    The 1991 and 1992 Policies' AMEs Do Not Apply To Sexual Abuse Claims Where The Claimant Was Not In USAG's "Care, Custody or Control."

The 1991 and 1992 Policies contain identical "care, custody or control" AMEs (the "1991-92 AMES") that limit their effect to claims made by individuals who assert that sexual abuse occurred while they were in the "care, custody or control" of an "insured." The 1991-92 AMEs state:

> This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:
>
> (a)    the actual or threatened abuse or molestation by anyone of any person while in the **care, custody or control** of **any insured**, or
>
> (b)    the negligent:
>     (i)    employment;
>     (ii)    investigation;
>     (iii)    supervision;
>     (iv)    reporting to the proper authorities, or failure to so report; or
>     (v)    retention;
>
> of a person for whom any insured is or ever was legally responsible *and* whose conduct would be excluded by (a) above.

[*Id.* (emphasis added).]

This exclusion applies to damages that arise out of either the act of abuse itself or negligent conduct related to the person who committed the act of abuse. Section (a) bars coverage for the actual act of abuse of any person while in the "care, custody or control" of any

- 14 -

insured. Section (b) bars coverage for certain types of negligent conduct related to a person for whom the insured was legally responsible.

Section (b) only applies, however, if the "conduct would be excluded by (a) above." In other words, under either clause, the abuse must have occurred while in the care, custody or control of an insured. *See Conn. Ins. Guar. Ass'n v. Daigle,* No. CV054013240S, 2007 Conn. Super. LEXIS 546, at *12 (Super. Ct. Feb. 21, 2007) ("Paragraph (2) refers to conduct which would be excluded by paragraph (1). Therefore the exclusion in paragraph (2) is dependent upon the exclusion in paragraph (1)."); *See also 12th St. Gym, Inc. v. Phila. Indem. Ins. Co., No. 03393*, 2006 Phila. Ct. Com. Pl. LEXIS 239, at *8 (C.P. June 12, 2006) (noting that paragraph (b), "excludes from coverage the (i) insured's negligent employment, investigation, supervision, reporting or failure to report, or retention (ii) of a person for whom the insured is legally responsible, (iii) whose conduct amounts to abuse or molestation of any person *under the care, custody and control of the insured*.") (emphasis added).

The limitation in the 1991-92 AME is significant in this case. The overwhelming majority of Sexual Abuse Claims allege abuse at locations where the claimant was not within USAG's "care, custody or control," such as Michigan State University or Nassar's home.[13] TIG should not be permitted to use the 1991-92 AME to deny coverage for these claims. USAG is entitled to a declaration that the 1991-92 AME only applies to the extent that the abuse or

---

[13] Nassar was not an insured under the 1991 and 1992 Policies. Nassar was only a volunteer for USAG. He was not an employee. Volunteers are not insureds under these policies. [Ex. 3, at 14; Dkt 2-5, Tab 2, at 44.] Even if he was an employee, he still would not qualify as an insured. The policy limits insured status to employees "only for acts within the scope of their employment by you." [*Id.*] There is no claim that Nassar's abuse was within his scope of employment—even if he were a USAG employee—which he was not. *See, e.g., Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, n.3 (Ind. 2013) (noting that in the underlying case employee was found to have been acting outside the course and scope of his employment when he molested minor); *Sanchez by Rivera v. Montanez*, 165 Pa. Commw. 381, 645 A.2d 383, 391 (Pa. Commw. Ct. 1994) (holding that if an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment) (internal quotation omitted).

threatened abuse or molestation occurred while the claimant was in the care, custody or control of USAG or another insured.

## V.    CONCLUSION

The TIG policies' various AMEs either do not apply or apply to only a portion of the claims against USAG. USAG respectfully requests entry of a partial summary judgment order declaring that: (1) the AME in the 2001 TIG policy applies only to Coverages A and B and does not limit other coverages applicable to the Sexual Abuse Claims, including Coverage D, Legal Liability to Participants; (2) the AME in the 1996 TIG excess policy does not apply to "bodily injury" claims such as the Sexual Abuse Claims; and (3) the AME in the 1991 and 1992 TIG policies does not apply unless the claimant was in the "care, custody or control" of USAG or another insured at the time of abuse.


Dated: August 7, 2019            Respectfully submitted,

                                   /s/ *Gregory M. Gotwald*        /
George M. Plews (#6274-49)
Gregory M. Gotwald (#24911-49)
Tonya J. Bond (#24802-49)
Steven A. Baldwin (#34498-49)
Christopher E. Kozak (#35554-49)
PLEWS SHADLEY RACHER & BRAUN LLP
1346 N. Delaware St.
Indianapolis, IN 46202-2415
(317) 637-0700
*Attorneys for USA Gymnastics*
gplews@psrb.com
ggotwald@psrb.com
tbond@psrb.com
sbaldwin@psrb.com
ckozak@psrb.com

-and-

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Dean N. Panos (admitted *pro hac vice*)
Melissa M. Root (#24230-49)
353 N. Clark Street
Chicago, Illinois 60654
(312) 923-2952
csteege@jenner.com
dpanos@jenner.com
mroot@jenner.com

*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

| | |
|---|---|
| Scott P. Fisher<br>Drewry Simmons Vornehm, LLP<br>sfisher@DSVlaw.com<br><br>George R. Calhoun V<br>Ifrah PLLC<br>george@ifrahlaw.com<br><br>Heather E. Simpson<br>Kennedys CMK LLP<br>heather.simpson@kennedyslaw.com<br>*Counsel for TIG Insurance Company* | James P. Moloy<br>Bose McKinney & Evans LLP<br>jmoloy@boselaw.com<br><br>Kevin P. Kamraczewski<br>Law Offices of Kevin P. Kamraczewski<br>kevin@kevinklaw.com<br><br>Robert B. Millner<br>Ronald D. Kent<br>Susan M. Walker<br>Dentons US LLP<br>robert.millner@dentons.com<br>ronald.kent@dentons.com<br>susan.walker@dentons.com<br>*Counsel for Virginia Surety Company Inc.,*<br>*f/k/a Combined Specialty Insurance Company* |
| Jeffrey B. Fecht<br>Riley Bennett Egloff LLP<br>jfecht@rbelaw.com<br><br>Cassandra L. Jones<br>Walker Wilcox Matousek LLP<br>cjones@wwmlawyers.com<br>*Counsel for RSUI Indemnity Company* | Wendy D. Brewer<br>Phillip A. Martin<br>Fultz Maddox Dickens PLC<br>wbrewer@fmdlegal.com<br>pmartin@fmdlegal.com<br><br>Abigail E. Rocap<br>Bates Carey LLP<br>arocap@batescarey.com<br>*Counsel for Endurance American Insurance*<br>*Company* |
| Harley K. Means<br>Stephen J. Peters<br>Kroger Gardis & Regas, LLP<br>hmeans@kgrlaw.com<br>speters@kgrlaw.com<br><br>Eric D. Freed<br>Cozen & O'Connor<br>efreed@cozen.com<br>*Counsel for ACE American Insurance*<br>*Company f/k/a CIGNA Insurance Company* | Bruce L. Kamplain<br>Cynthia E. Lasher<br>Norris Choplin Schroeder LLP<br>bkamplain@ncs-law.com<br>clasher@ncs-law.com<br>*Counsel for Western World Insurance*<br>*Company* |
| Ginny L. Peterson | Hans H. J. Pijls |

| | |
|---|---|
| Casey R. Stafford<br>Kightlinger & Gray, LLP<br>gpeterson@k-glaw.com<br>cstafford@k-glaw.com<br><br>Nancy D. Adams<br>Mathilda S. McGee-Tubb<br>Laura Bange Stephens<br>Mintz Levin Cohn Ferris Glovsky & Popeo, PC<br>nadams@mintz.com<br>msmcgee-tubb@mintz.com<br>lbstephens@mintz.com<br>*Counsel for Liberty Insurance Underwriters, Inc.* | Dinsmore & Shohl LLP<br>Hans.pijls@dinsmore.com<br>*Counsel for National Casualty Company* |
| Susan N.K. Gummow<br>Igor Shleypak<br>Foran Glennon Palandech Ponzi & Rudloff PC<br>sgummow@fgppr.com<br>ishleypak@fgppr.com<br>*Counsel for American International Group, Inc. & American Home Assurance Company* | Karen M. Dixon<br>Michael M. Marick<br>Skarzynski Marick & Black LLP<br>kdixon@skarzynski.com<br>mmarick@skarzynski.com<br><br>Joshua D. Weinberg<br>Katherine M. Hance<br>Shipman & Goodwin LLP<br>jweinberg@goodwin.com<br>khance@goodwin.com<br>*Counsel for Great American Assurance Company* |
| U.S. Trustee<br>Office of U.S. Trustee<br>ustpregion10.in.ecf@usdoj.gov | Catherine L. Steege<br>Melissa M. Root<br>Jenner & Block LLP<br>csteege@jenner.com<br>mroot@jenner.com<br>*Counsel for Debtor USA Gymnastics* |

/s/ *Gregory M. Gotwald            /*
Gregory M. Gotwald