# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>USA GYMNASTICS, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 18-09108-RLM-11<br><br>Adv. Proc. No. 1:19-ap-50012 |

USA GYMNASTICS, INC., )
 )
Plaintiff, )
 )
   vs. )
 )
ACE AMERICAN INSURANCE COMPANY f/k/a )
CIGNA INSURANCE COMPANY, GREAT AMERICAN )
ASSURANCE COMPANY, LIBERTY INSURANCE )
UNDERWRITERS INC., NATIONAL CASUALTY )
COMPANY, RSUI INDEMNITY COMPANY, TIG )
INSURANCE COMPANY, VIRGINIA SURETY )
COMPANY, INC. f/k/a COMBINED SPECIALTY )
INSURANCE COMPANY, WESTERN WORLD )
INSURANCE COMPANY, ENDURANCE AMERICAN )
INSURANCE COMPANY, AMERICAN )
INTERNATIONAL GROUP, INC., AMERICAN HOME )
ASSURANCE COMPANY, and DOE )
INSURERS, )
 )
Defendants. )
 )

## PLAINTIFF USA GYMNASTICS' BRIEF IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## <u>AGAINST TIG INSURANCE COMPANY ON LOST POLICIES</u>

TIG Insurance Company ("TIG") sold multiple policies of liability insurance to USA

Gymnastics ("USAG") between 1986 and 2001. The TIG policies, and the proceeds thereof, are

critical to USAG's ability to resolve claims asserted by individuals who allege that USAG is

legally responsible for sexual abuse committed by Larry Nassar or by other persons.

Despite clear evidence to the contrary, TIG disputes that it sold USAG policies in 1986, 1988, 1989, and 1990 (the "Lost Policies"). USAG has ample evidence to prove the existence of these policies and the relevant coverage terms and limits. Such evidence consists of secondary evidence from the other TIG policies, correspondence from TIG's underwriting agent, TIG's claims handlers, and the broker placing the coverage; and USAG's files. It also has the expert opinion of Marilyn Schultz, a TIG underwriter during this period. All support USAG's positions.

There is no genuine dispute of material fact that (1) TIG sold USAG these policies; (2) each policy provides standard ISO[1] bodily injury coverage; and (3) the policy limits in each are $1 million per occurrence with no aggregate limits. TIG has no evidence to the contrary—nothing.

Effectively conceding the existence of the Lost Policies, TIG claims that it can somehow prove these policies contained an Abuse or Molestation Exclusion ("AME"). But TIG has no evidence to meet its burden of proving it issued the Lost Policies with an AME.

- 1986 Policy: As Marilyn Schultz explains, the AME did not exist until 1987, so it could not be in the 1986 policy.

- 1988 and 1989 Policies: The 1987 policy—which USAG has, and is not at issue—does not contain an AME. The 1990 Policy does not either, as discussed below. The only plausible conclusion is that the 1988 and 1989 Policies likewise lack an AME.

- 1990 Policy: 1990 Policy:  The Declarations page of the 1990 policy does not list the AME form number on it (later policies do), providing affirmative proof that it did not contain one.

---

[1] ISO stands for Insurance Services Organization.

> ISO is an association of more than 1400 property and casualty insurers which provides a number of services to the insurance industry, including the drafting of advisory insurance policy forms and endorsements for use in writing policies. The close relationship and interdependence between ISO and its "member" and "subscriber" insurers are detailed in *In re Insurance Antitrust Litigation*, 723 F. Supp. 464, 468-70 (N.D. Cal. 1989), rev'd 938 F.2d 919, 923-924 (9th Cir. 1991). It is sufficient for the purposes of this decision to note that most if not all insurers use ISO standard-form language in their policies and that insurers are frequent participants in the drafting process.

*Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co.*, 623 A.2d 1128, 1129 (Del. Super. Ct. 1992)

2

Not only does TIG have no affirmative support for its position that the Disputed Policies were issued with AMEs, but its position also defies logic: TIG is suggesting that it added an AME to the 1986 Policy, took it off in 1987, added it back for 1988 and 1989, and then removed it again for 1990. This makes no sense.

For all these reasons, the Court should declare that TIG sold USAG primary policies in 1986, 1988, 1989, and 1990 and that these policies provide standard ISO form coverage without any AMEs with limits of $1 million per occurrence and no aggregate limits.

## I.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

**A.    Substantial Evidence Exists Supporting the Existence
of the Policies and Their Key Terms and Conditions.**

   1.   *Insurance Expert Marilyn Schultz.*

Marilyn Schultz is an insurance expert with over forty years of insurance industry experience—primarily in underwriting. (Decl. of M. Schultz at ¶ 3 and Attch. A p. 2 thereto.)[2] She worked for TIG for sixteen years. (*Id.*) Expert Schultz was even in underwriting at TIG during the relevant period of the Lost Policies. (*Id.*) She has testified as an insurance expert multiple times. (*Id.* ¶ 4.) In additional to other insurance specific training and certifications, she completed six exams of the Certified Property Casualty Underwriter ("CPCU"), an industry leading designation that requires extensive credentialing. (*Id.*)

Expert Schultz has reviewed USAG's policies during and around this time. (*Id.* ¶ 5.) She has reviewed correspondence from TIG's underwriting and claims agents (K&K and Riverstone), the broker, and USAG. (*Id.*) She consulted industry treatises and Insurance Services Organization ("ISO") forms. (*Id.*)

Given her knowledge, skill, experience, training, and education, Expert Schultz opines

---

[2] This Declaration is attached as Exhibit A.

3

that:

    (1)    TIG sold USAG primary policies in 1986, 1988, 1989, and 1990
    (2)    Each of the Lost Policies provided ISO standard form language coverage grants;
    (3)    These policies have $1M per occurrence limits with no aggregate limits; and
    (4)    None of these policies contain AMEs.

(*Id.* ¶ 6 and Attach. A pp 9–12 thereto.)

    2.  *The Secondary Evidence Establishes TIG Issued the Policies*.

In addition to Expert Schultz's testimony, additional evidence supports her sound conclusions. As to the 1986 policy, TIG's 1987 policy notes that it is a "renewal" policy—not a new policy. (Decl. B. Barron at ¶ 4, attached as Exhibit B; Dkt. 2-5 at 2.) Additionally, USAG's "Membership History" (a chronology of its insurance program prior to 1990) shows that on June 1, 1986, K&K became the managing general agent and that TIG (through its predecessor International Insurance)[3] issued the coverage. (*Id.* at ¶ 7 and Ex. 5 p. 4 thereto.)

This same chronology notes that TIG continued to issue the primary coverage through 1990. (*Id.* at ¶ 7 and Ex. 5 pp 4–5 thereto.) Additionally, an email exchange between the broker Pat O'Connor, TIG's claims handling service Riverstone, and TIG's underwriting agent K&K provides further evidence of the TIG coverage. (Barron Decl. at ¶ 6 and Ex. 4 pp 3–4 thereto.) For example, it notes that TIG had found the 1988 policy. (*Id.* at Ex. 4 p. 4)  This exchange even provides the TIG policy numbers for the lost policies, which contain TIG policy number prefixes. (*Id.* at Ex. 4 p. 3; Schultz Decl. at Attach. A p. 9.)

All of the TIG policies that have been produced rely on ISO form coverage grants. (Schultz Decl. at ¶ 7 and Attach. A pp 9–10.) They also all provide a $1 million per occurrence with no aggregate limits. (*Id.*) The 1990 Declaration page confirms these for that policy as well.

---

[3] *See e.g., TIG Ins. Co. v. Century Indem. Co.*, 2009 U.S. Dist. LEXIS 30011, at *1 (S.D.N.Y. Apr. 8, 2009); *AIU Ins. Co. v. TIG Ins. Co.,* 2008 U.S. Dist. LEXIS 66370, at *2 (S.D.N.Y. Aug. 28, 2008); *Bd. of Educ. v. TIG Ins. Co.,* 881 N.E.2d 957, 958 (Ill. Ct. App. 2007).

(*Id.*; Barron Decl. at ¶ 4 and Ex. 2 p. 3.)

None of the secondary evidence suggests that the Lost Policies contained an AME. For example, the 1987 TIG policy lacks the AME. (Barron Decl. at ¶ 4; Dkt. 2-5 at 2–26.) The Declaration page for the 1990 policy lists all the forms applicable to the policy. (Barron Decl. at ¶ 4 and Ex. 2 p.3.) But it lacks any reference to an AME form. (Schultz Decl. at ¶ 8.) In contrast, TIG included the AME form number on the Declaration pages in the 1992 and 1993 policies. (*Id.*)

## II.   LEGAL STANDARD

A court must grant partial summary judgment to a party when there is no genuine dispute of material fact and the party is entitled to judgment as a matter of law on a specific issue. Fed. R. Civ. P. 56(a). "The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the trier of fact could reasonably find for the non-moving party.  In short, summary judgment is warranted if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Johnson v. Doughty*, 433 F.3d 1001, 1009–10 (7th Cir. 2006) (internal quotations and citations omitted).

"Moreover, more than mere conclusory allegations are required to defeat a motion for summary judgment. Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1002 (7th Cir. 1998) (internal quotations and citations omitted).

"The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." *Skinner v. Ambrose*, 556 F. Supp. 2d 921, 924 (N.D. Ind. 2008). "[T]he party with the burden of proof on

5

an issue must show that there is enough evidence to support a jury verdict in its favor." *Id.* Summary judgement is the "put up or shut up" moment in litigation. *Goodman v. NSA, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### III.  ARGUMENT

**A.  TIG Sold USAG Primary Policies Covering Bodily Injuries with $1M per Occurrence/No Aggregate Limits in 1986 through 1990.**

USAG has ample evidence establishing the existence of the Lost Policies and their key terms and their limits. TIG sold to USAG policies in the years 1986 and 1988 through 1990. These policies were on standard ISO forms that cover bodily injuries. These policies have a $1 million per occurrence limit, but no aggregate limit. TIG cannot fairly dispute this. It has no evidence to the contrary.

*PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 717–22 (Ind. Ct. App. 2004), *trans denied* is the seminal case on the issue of lost policies in Indiana. There, the Court held that policyholders have the burden to prove "the substance of the relevant policy provisions" by only a preponderance of the evidence. *Id* at 722. That is, the policyholder need only show the basics to show a claim is covered: the limits, the period, the coverage grant. *Id.* at 718–20 (discussing "instructive" out-of-state cases). The Court noted that the policyholder does not need to prove every term of the policy, only those relevant terms for coverage. *Id.* at 718 n.10 (quoting *Dart Indus., Inc. v. Commercial Union Ins. Co*., 52 P.3d 79 (Cal. 2002) (noting that "the insurer has the burden of proving the substance of any policy provision essential to the defense, *i.e.*, any provision that functions to defeat the insured's claim.")) *PSI* also held that expert testimony and secondary evidence like broker correspondence and the policyholder's historical records can establish the relevant terms. *Id.*

Here, USAG has more than met its burden of proving the substance of the relevant policy

6

provisions. Expert Schultz, a former TIG underwriter, has reviewed the relevant evidence and called upon her four decades of knowledge and experience in the insurance industry (as well her other training, skill, and education) to opine that: (1) TIG sold the lost policies to USAG; (2) they cover bodily injury claims using standard ISO forms; (3) they have $1 million in per occurrence limits, but no aggregate limits. (Schultz Decl. at ¶ 6 and Attach. A pp 9–10 thereto.) Expert Schultz is uniquely qualified. She worked for TIG during the relevant timeframe (1986–2001) as an underwriter, which gives her personal knowledge of TIG operations as well. (*Id.* at ¶ 3.) She has reviewed USAG's insurance program, historic ISO forms, insurance treaties, and correspondence from the brokers, TIG's claims agent (Riverstone), TIG's underwriting agent (K&K) and USAG. (*Id.* at ¶ 5.) All of this evidence supports Expert Schultz's opinions.

None of the evidence contradicts her opinions. All of the located TIG policies rely on ISO form coverage grants and provide $1 million per occurrence limits with no aggregate limits. (*Id.* at ¶ 7 and Attach. A pp 9–10.) The 1990 Declaration page confirms these terms for that policy as well. (*Id.*; Barron Decl. at ¶ 4 and Ex. 2 p. 3.)  This consistency in the program further supports Expert Schultz's opinions concerning the ISO forms and the limits. (*Id.* at  ¶ 7.)

Besides Expert Shultz's opinions, the relevant secondary evidence also demonstrates that TIG issued the lost policies with coverage for bodily injuries with a limit of $1 million per occurrence and no aggregate limits or AME. The 1987 policy is a renewal. (Barron Decl. at ¶ 4; Dkt. 2-5 at 2.)  This evinces TIG wrote the policy in 1986. If an unrelated company had issued the coverage in 1986 (or there was no coverage), then the 1987 Policy would not have been called a renewal. USAG's 1990 insurance chronology noted that in June 1986 K&K took over as managing general agent and TIG's predecessor issued the general liability coverage. (*Id.* at ¶ 7 and Ex. 5 p. 4 thereto.) This history also confirms TIG continued to issue the policies through

7

1990. (*Id.* at ¶ 7 and Ex. 5 pp 4–5 thereto.)

Correspondence between TIG's claims handler and it underwriting agent reinforces all of this. For example, TIG's claims agent (Riverstone) states that it had records between K&K (TIG's underwriting agent) and TIG that the 1988 policy had been found. (Barron Decl. at ¶ 6 and Ex. 4 pp 4 thereto.) The same email concedes that TIG issued the coverage from at least 1987. (*Id.*)

The broker involved in placing these policies also pulled its available electronic records. (*Id.* at ¶ 6 and Ex. 4 p. 3.) He was able to identify the TIG policies and their policy numbers. (*Id.*) These facts further buttress Expert Schultz's opinions.

TIG has provided nothing to the contrary. Any claim USAG bought no insurance during this time period lacks support and makes no sense. (Schultz Decl. at ¶ 11.) Absent its ability to put provide sufficient contrary evidence—more than a scintilla of evidence or conclusory statements—USAG is entitled to partial summary judgment. *Johnson*, 433 F.3d at 1009–10; *Nowak*, 142 F.3d at 1002.

B. **The "Lost Policies" Did Not Contain an Abuse or Molestation Exclusion.**

If TIG concedes the existence of the Lost Policies (which it should), it may claim they included an AME. They do not. TIG has no viable evidence supporting such a position.

While the policyholder has the burden to establish the basics for coverage, the insurer bears the burden of proof on exclusions. *PSI*, 801 N.E.2d at 718 (quoting *Dart's holding* that "the insurer has the burden of proving the substance of any policy provision essential to the defense, i.e., any provision that functions to defeat the insured's claim.")) TIG lacks any evidence that the "lost policies" contain an AME.

This is the "put up or shut up" moment for TIG. *Goodman*, 621 F.3d at 654. TIG must

8

come forward with evidence to support its position. "[T]he party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. *Id.* "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden of proof at trial." *Nowak*, 142 F.3d at 1002.

It is not just that TIG lacks evidence; all of the available evidence disproves its position. First, the ISO form AME was not even developed until 1987, so it could not have been part of the 1986 policy. (Schultz Decl. at ¶ 9 and Attach. A pp 11–12.) *See also Valley Forge Ins. Co. v. Field*, 670 F. 3d 93, 97-98 (1st Cir. 2012).

Second, although the ISO form AME was available by 1987, there is no dispute that TIG issued the 1987 Policy without an AME. (Schultz Decl. at ¶ 9; Dkt. 2-5 at 2–26.)

Third, TIG produced the 1990 Policy's Declaration page, and it lists all the forms that apply to the policy. (*Id.* at ¶ 10.) The AME form is not listed. (*Id.*; Barron Decl. at 4 and Ex. 2 p. 3.) Thus, it is clear that the 1990 Policy also lacked an AME.

Fourth and finally, as for the 1988 and 1989 Policies, Expert Schultz explains that TIG would not have included an AME on any of these early policies. (Schultz Decl. at ¶ 11 and Attach. A pp 11–12.) This is because insurers such as TIG generally added exclusions to policies as a matter of course after they incur significant losses. (*Id.*) Furthermore, these policies are "sandwiched" by policies without an AME. (*Id.*) That is, the 1987 policy lacks an AME and the 1990 policy does as well. It would be unusual to add the AME for the 1988 and 1989 Policies, then remove it for the 1990 Policy, only to add it back again in 1991–92. (*Id.*) Such a practice would make no sense. (*Id.*) Without evidence showing that TIG engaged in this unusual practice, USAG is entitled to summary judgment on the issue.

9

## IV. CONCLUSION

TIG sold USAG primary policies in 1986, 1988, 1989, and 1990. These policies contain standard ISO form coverage for liabilities arising from bodily injuries. Each of these policies provides $1 million per occurrence limits with no aggregate limits. None of them have AMEs. USAG is entitled to partial summary judgement on these issues.

Dated: August 27, 2019

Respectfully submitted,

/s/ *Gregory M. Gotwald*
George M. Plews (#6274-49)
Gregory M. Gotwald (#24911-49)
Tonya J. Bond (#24802-49)
Christopher E. Kozak (#35554-49)
PLEWS SHADLEY RACHER & BRAUN LLP
1346 N. Delaware St.
Indianapolis, IN 46202-2415
(317) 637-0700
*Attorneys for USA Gymnastics*
gplews@psrb.com
ggotwald@psrb.com
tbond@psrb.com
sbaldwin@psrb.com
ckozak@psrb.com

-and-

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Dean N. Panos (admitted *pro hac vice*)
Melissa M. Root (#24230-49)
353 N. Clark Street
Chicago, Illinois 60654
(312) 923-2952
csteege@jenner.com
dpanos@jenner.com
mroot@jenner.com

*Counsel for the Debtor*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | |
|---|---|
| Scott P. Fisher<br>Drewry Simmons Vornehm, LLP<br>sfisher@DSVlaw.com<br><br>George R. Calhoun V<br>Ifrah PLLC<br>george@ifrahlaw.com<br><br>Heather E. Simpson<br>Kennedys CMK LLP<br>heather.simpson@kennedyslaw.com<br>*Counsel for TIG Insurance Company* | James P. Moloy<br>Bose McKinney & Evans LLP<br>jmoloy@boselaw.com<br><br>Kevin P. Kamraczewski<br>Law Offices of Kevin P. Kamraczewski<br>kevin@kevinklaw.com<br><br>Robert B. Millner<br>Ronald D. Kent<br>Susan M. Walker<br>Dentons US LLP<br>robert.millner@dentons.com<br>ronald.kent@dentons.com<br>susan.walker@dentons.com<br>*Counsel for Virginia Surety Company Inc., f/k/a Combined Specialty Insurance Company* |
| Jeffrey B. Fecht<br>Riley Bennett Egloff LLP<br>jfecht@rbelaw.com<br><br>Cassandra L. Jones<br>Walker Wilcox Matousek LLP<br>cjones@wwmlawyers.com<br>*Counsel for RSUI Indemnity Company* | Wendy D. Brewer<br>Phillip A. Martin<br>Fultz Maddox Dickens PLC<br>wbrewer@fmdlegal.com<br>pmartin@fmdlegal.com<br><br>Abigail E. Rocap<br>Bates Carey LLP<br>arocap@batescarey.com<br>*Counsel for Endurance American Insurance Company* |
| Harley K. Means<br>Stephen J. Peters<br>Kroger Gardis & Regas, LLP<br>hmeans@kgrlaw.com<br>speters@kgrlaw.com<br><br>Eric D. Freed<br>Cozen & O'Connor<br>efreed@cozen.com<br>*Counsel for ACE American Insurance Company f/k/a CIGNA Insurance Company* | Bruce L. Kamplain<br>Cynthia E. Lasher<br>Norris Choplin Schroeder LLP<br>bkamplain@ncs-law.com<br>clasher@ncs-law.com<br>*Counsel for Western World Insurance Company* |
| Ginny L. Peterson<br>Casey R. Stafford<br>Kightlinger & Gray, LLP<br>gpeterson@k-glaw.com<br>cstafford@k-glaw.com | Hans H. J. Pijls<br>Dinsmore & Shohl LLP<br>Hans.pijls@dinsmore.com<br>*Counsel for National Casualty Company* |

| | |
|---|---|
| Nancy D. Adams<br>Mathilda S. McGee-Tubb<br>Laura Bange Stephens<br>Mintz Levin Cohn Ferris Glovsky & Popeo, PC<br>nadams@mintz.com<br>msmcgee-tubb@mintz.com<br>lbstephens@mintz.com<br>*Counsel for Liberty Insurance Underwriters, Inc.* | |
| Susan N.K. Gummow<br>Igor Shleypak<br>Foran Glennon Palandech Ponzi & Rudloff PC<br>sgummow@fgppr.com<br>ishleypak@fgppr.com<br>*Counsel for American International Group, Inc. & American Home Assurance Company* | Karen M. Dixon<br>Michael M. Marick<br>Skarzynski Marick & Black LLP<br>kdixon@skarzynski.com<br>mmarick@skarzynski.com<br><br>Joshua D. Weinberg<br>Katherine M. Hance<br>Shipman & Goodwin LLP<br>jweinberg@goodwin.com<br>khance@goodwin.com<br>*Counsel for Great American Assurance Company* |
| U.S. Trustee<br>Office of U.S. Trustee<br>ustpregion10.in.ecf@usdoj.gov | Catherine L. Steege<br>Melissa M. Root<br>Jenner & Block LLP<br>csteege@jenner.com<br>mroot@jenner.com<br>*Counsel for Debtor USA Gymnastics* |

                                            /s/ *Gregory M. Gotwald*
                                            Gregory M. Gotwald