**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re:<br><br>USA GYMNASTICS,[1]<br><br>           Debtor. | Chapter 11<br><br>Case No. 18-09108-RLM-11 |
| USA GYMNASTICS,<br><br>     Plaintiff,<br><br>v.<br><br>ACE AMERICAN INSURANCE COMPANY f/k/a CIGNA INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, LIBERTY INSURANCE UNDERWRITERS INC., NATIONAL CASUALTY COMPANY, RSUI INDEMNITY COMPANY, TIG INSURANCE COMPANY, VIRGINIA SURETY COMPANY, INC. f/k/a COMBINED SPECIALTY INSURANCE COMPANY, WESTERN WORLD INSURANCE COMPANY, ENDURANCE AMERICAN INSURANCE COMPANY, AMERICAN INTERNATIONAL GROUP, INC., AMERICAN HOME ASSURANCE COMPANY, and DOE INSURERS<br><br>     Defendants. | Adv. Proc. No. 19-50012<br>in 18-09108-RLM-11 |

**USA GYMNASTICS' RESPONSE TO ACE AMERICAN INSURANCE COMPANY AND TIG INSURANCE COMPANY'S RENEWED MOTION TO WITHDRAW THE REFERENCE OF THE ADVERSARY PROCEEDING**

---

[1] The last four digits of the Debtor's federal tax identification number are 7871. The location of the Debtor's principal office is 130 E. Washington Street, Suite 700, Indianapolis, Indiana 46204.

USA Gymnastics, as debtor and debtor-in-possession in the above-captioned chapter 11 case (the "**Debtor**" or "**USAG**"), responds to the *Renewed Motion To Withdraw The Reference Of The Adversary Proceeding* [Adv. Dkt. 192] (the "**Renewed Withdrawal Motion**"), filed by Ace American Insurance Company, f/k/a Cigna Insurance Company ("**Ace**") and TIG Insurance Company ("**TIG**" and, collectively with Ace American, the "**Movants**"), and states:

## INTRODUCTION

Less than three months ago, the District Court denied all of the defendants' initial motion to withdraw the reference of this adversary proceeding. (*See* Adv. Dkt. 166.) The District Court's decision was correct then, and it is still correct now. In fact, since the District Court's initial ruling, the case for maintaining this adversary proceeding in the Bankruptcy Court has only grown stronger.

Ace and TIG's explanation for why they have re-filed their Renewed Withdrawal Motion so quickly is that USAG allegedly reneged on an earlier representation that this adversary proceeding would be stayed pending a mediation. In making this claim, Ace and TIG ignore that the mediation is still on-going and, with the blessing of the mediator, USAG filed the pending summary judgment motions to resolve several discrete legal issues about the extent of its coverage under its TIG and Ace policies. The legal disputes with TIG and Ace have hampered USAG's ability to resolve the survivors' claims through the mediation and therefore an answer is needed to the question of how much insurance USAG has under the TIG and Ace policies. Preferring delay to an answer, TIG and Ace have renewed their withdrawal motion in the hope of preventing the bankruptcy court from answering these legal questions.

Allowing the Bankruptcy Court to address these legal issues in the first instance does not harm Movants. The issues the Bankruptcy Court will decide are legal questions, subject to the District Court's *de novo* review, should any party disagree with the ruling. Moreover, because the

pending summary judgment motions raise legal issues, allowing the Bankruptcy Court to decide them in the first instance will not deprive Ace or TIG of the jury trial they claim they will, but have not yet, demanded. Significantly, by filing a proof of claim against USAG, Ace in fact has no jury trial rights. *See, e.g., Katchen v. Landy*, 382 U.S. 323 (1966).

USAG, on the other hand, will be greatly harmed if the scheduled September 17 hearing on its summary judgment motions is delayed because the reference is withdrawn. Instead of obtaining a quick answer about the extent of USAG's coverage, Ace and TIG will continue to use the lack of any answer to stall progress in the mediation, threatening USAG's reorganization. The Bankruptcy Court, which is overseeing USAG's reorganization and the mediation and, as a result of that oversight, has developed significant knowledge about USAG's insurance and the survivors' claims, is in the best position to manage this adversary proceeding. It should be allowed to continue to do so.

But even if there were no mediation, Ace and TIG have failed to state a case for withdrawal of the reference at this early stage in this litigation. Movants' primary arguments in support of their Renewed Withdrawal Motion—that the Bankruptcy Court lacks the power to issue final judgments in non-core matters and that Movants may in the future demand a jury trial—could become moot depending on what happens pre-trial. For this reason, the overwhelming majority of courts refuse to withdraw the reference due to a jury demand until the case is ready for the jury trial to begin. Here, Movants have not made jury demands. And if no jury demands are made, allowing the Bankruptcy Court to issue a report and recommendation will greatly expedite the District Court's review of the legal issues.

Simply put, allowing the Bankruptcy Court to guide the parties through the pre-trial process is the most efficient use of judicial resources and will promote uniformity of bankruptcy

administration, foster economical use of debtor and creditor resources, and accelerate the bankruptcy process. USAG respectfully requests that the District Court deny the Renewed Withdrawal Motion without prejudice to the rights of Movants to refile the Renewed Withdrawal Motion *if* the case ever becomes trial ready and *if* Movants have in fact properly demanded a jury trial.

## BACKGROUND

### A.    The Bankruptcy Case.

On December 5, 2018, USAG filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. At the time it filed its case, hundreds of lawsuits were pending against USAG, most arising out of sexual abuse committed by Lawrence Nassar. USAG determined that the Bankruptcy Court provided the most efficient and equitable forum in which to determine the rights of the hundreds of plaintiffs making claims and to distribute its limited insurance to those holding allowed claims (the "**Survivors**").

USAG has maintained various comprehensive general liability and directors' and officers' primary, excess, and umbrella insurance policies. USAG's insurance policies are the single greatest asset of its estate, and the coverage under those policies will fund recoveries to Survivors holding allowed claims against USAG. *See, e.g., Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 748 (7th Cir. 1989) ("A policy of insurance is an asset of the estate"); *In re Stinnett*, 321 B.R. 477, 483-85 (S.D. Ind. 2005) (holding that insurance policy and proceeds were property of estate), *aff'd*, 465 F.3d 309, 312-13 (7th Cir. 2006) (same).

USAG's insurance policies have various coverage periods and terms. TIG and Ace have wrongfully argued that certain policy exclusions or misconstructions of policy language limit the amount of coverage that they must provide to USAG to cover the claims of the Survivors. It is

critical that USAG determine the amount of coverage under its insurance policies so that it may move forward in its bankruptcy case and bring resolution to the sexual abuse claims.

To that end, USAG commenced a court-approved mediation with the Additional Tort Claimants Committee of Sexual Abuse Survivors, individual Survivors, USAG's insurers, and other parties in interest. The goal of the mediation is to achieve "the resolution of the sexual abuse claims; the resolution of any disputes relating to the applicability of [USAG's] insurance coverage to the sexual abuse claims and [USAG's] insurance carriers' obligations to fund distributions on the sexual abuse claims, and related defense costs; and the resolution of any other matters necessary to equitably determine the rights of, and allocate recoveries to, survivors holding allowed sexual abuse claims." (Bankr. Dkt. 514, at ¶2; Bankr. Dkt. 452, at ¶8.).

### B.    This Adversary Proceeding.

USAG filed this adversary proceeding on February 1, 2019 against nine of its insurers, including TIG and Ace. On March 5, 2019, all of the defendants filed a *Joint Motion To Withdraw The Reference Of The Adversary Proceeding* [Adv. Dkt. 37] (the "**Original Withdrawal Motion**") and a *Motion For Stay Of The Adversary Proceeding* [Adv. Dkt. 38] (the "**Stay Motion**"). Ultimately only Liberty Insurance Underwriters, Inc. ("**LIU**") pressed the Stay Motion. On May 23, 2019, the Bankruptcy Court entered an order denying the Stay Motion with respect to LIU. (Adv. Dkt. 147.)

On June 7, 2019, the Bankruptcy Court entered an agreed order staying the adversary proceeding with respect to all of the defendants other than LIU through the date of the September omnibus hearing, which at that time was scheduled for September 18, 2019, but has now been moved to September 17. (Adv. Dkt. 155.) TIG and Ace characterize the June 7 Order as imposing a "court-ordered Mediation Stay" (Renewed Withdrawal Motion, at 4), but that is not accurate.

The June 7 Order did not stay the adversary proceeding pending the outcome of the mediation, nor did it even reference the mediation. Rather, the Order was entered in connection with USAG's motion to approve debtor-in-possession financing from Great American Assurance Company and Combined Specialty Insurance Company, which asked for this stay as a condition to making their loans. (*See* Bankr. Dkt. 479 at Ex. C, § 3.2(b), Ex. D, § 3.2(b); Bankr. Dkt. 513.) Neither Ace nor TIG agreed to loan USAG money, and the two carriers who did offer these loans have not joined the Renewed Withdrawal Motion. USAG also has not drawn on the loan.

On June 10, 2019, the District Court conducted a status conference on the Original Withdrawal Motion. During that conference, the District Court noted, among other things, its busy docket and the efficiencies of having the Bankruptcy Court preside over this adversary proceeding. The very next day, on June 11, 2019, the District Court denied the Original Withdrawal Motion, noting that defendants could renew the Motion "if the case does not settle." (Dist. Dkt. 18-cv-1306, ECF No. 101.) The District Court also denied LIU's request for an emergency stay. (*Id*.)

On August 7, 2019, USAG filed its *Motion For Partial Summary Judgment Against TIG Insurance Company* [Adv. Dkt. 173] (the "**First TIG Motion**") and its *Motion For Partial Summary Judgment Against Chubb* [Adv. Dkt. 174] (the "**Chubb Motion**"). On August 27, 2019, USAG filed its *Motion For Partial Summary Judgment Against TIG Insurance Company On Lost Policies* [Adv. Dkt. 204] (the "**Second TIG Motion**" and, collectively with the TIG and Chubb Motions, the "**Partial Summary Judgment Motions**"). The Partial Summary Judgment Motions ask the Bankruptcy Court resolve three discrete legal issues: (1) whether certain abuse and molestation exclusions in TIG's insurance policies apply to the Survivors' claims; (2) whether TIG supplied USAG with coverage for certain years where USAG cannot locate the complete policies; and (3) whether USAG is entitled to coverage under each policy year for which it has evidence of

Chubb insurance policies. (First TIG Motion, at ¶¶1-5; Second TIG Motion at ¶¶1-5; Chubb Motion, at ¶¶1-6.) The Bankruptcy Court has set a briefing schedule on the Partial Summary Judgment Motions and will hear argument on September 17, 2019.

As of the date of this Response, neither of the Movants has answered USAG's complaint or demanded a jury trial. Ace, however, has filed a proof of claim in USAG's case. Ace's proof of claim states that Ace holds an unliquidated claim arising from "certain insurance policies" Ace issued "to the Debtor as named insured." (Claim 294, Ex. A, attached hereto, at ¶3.) These policies are the same insurance policies at issue in this adversary proceeding. (*Id.* at ¶4.)

## RESPONSE

### I.    Standard For Permissive Withdrawal Of The Reference.

The District Court has original, but not exclusive, jurisdiction over all bankruptcy proceedings. 28 U.S.C. § 1334(b). The Bankruptcy Court exercises such jurisdiction under a standing order of reference, as provided by 28 U.S.C. § 157(a); *see also* S. Dist. Ind. Local R. 83-8 (providing for automatic referral of bankruptcy cases to the Bankruptcy Court for the Southern District of Indiana). Once a title 11 proceeding has been referred to the Bankruptcy Court, the District Court's authority to withdraw the reference is governed by 28 U.S.C. § 157, which provides for both mandatory and permissive withdrawal. Only permissive withdrawal is at issue here. (Renewed Withdrawal Motion, at 10-12.) Permissive withdrawal is appropriate "for cause shown." 28 U.S.C. § 157(d). As the movants, Ace and TIG bear the burden to show cause. *In re Stein*, No. 17-CV-00561-TWP-MJD, 2017 WL 2418325, at *1 (S.D. Ind. Jun. 2, 2017) (denying motion to withdraw reference).

"A district court has broad discretion in determining whether to withdraw a reference based on cause, but permissive withdrawal is the exception, rather than the rule." *Gecker v. Marathon Fin. Ins. Co.*, 391 B.R. 613, 614-15 (N.D. Ill. 2008) (internal quotations and citations omitted). As

the Supreme Court recognized in its seminal decision, *Stern v. Marshall*, 564 U.S. 462 (2011), under the "division of labor" envisioned by §157 of the Judicial Code, bankruptcy courts will hear most adversary proceedings and contested matters in the first instance, even those in which they may not issue judgments. *Id.* at 502. As one district court in the Seventh Circuit explained, "[a]lthough withdrawal is an important component of [the statutory] scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of the bankruptcy court." *STC, Inc. v. Global Traffic Technologies, LLC*, No. 15-CV-0037, 2015 WL 1042431, at *4 (S.D. Ill. Mar. 6, 2015) (quoting *In re Enron Corp.*, 295 B.R. 21, 28 (S.D.N.Y. 2003)).

Section 157(d) does not define cause. When making a determination whether cause exists for permissive withdrawal, a court may consider:

a.  judicial economy, convenience, and the particular court's knowledge of the facts;

b.  the promotion of uniformity and efficiency of bankruptcy administration;

c.  the reduction of forum shopping and confusion;

d.  the conservation of debtor and creditor resources;

e.  whether the proceeding is core or non-core; and,

f.  whether the parties have requested a jury trial.

*Gecker*, 391 B.R. at 615 (applying above factors and denying motion to withdraw reference).

## II.   Permissive Withdrawal Is Still Not Appropriate In This Adversary Proceeding.

Ace and TIG cannot satisfy their burden of establishing cause, particularly at this stage in the adversary proceeding.

### A.   The Core/Non-Core Determination And Movants' Expectation That They Will Assert A Jury Demand Do Not Require Withdrawal Of The Reference.

As they did in the Original Withdrawal Motion, Movants focus primarily on two of the "cause" factors: whether the Bankruptcy Court may enter a judgment or only a proposed ruling

(*i.e.*, whether the case is core or non-core) and whether the parties have requested a jury trial. (Renewed Withdrawal Motion, at 12-15.)

### 1. Ace Has Waived Its Jury Trial Rights And The Bankruptcy Court Can Enter Judgment Against Ace.

By filing a proof of claim against USAG which raises the same issue as this adversary proceeding, Ace has forfeited both its right to a jury trial and its right to assert that the Bankruptcy Court may not constitutionally enter a judgment in this adversary proceeding. With respect to any future jury demand, the United States Supreme Court held in a trilogy of decisions—*Katchen v. Landy*, 382 U.S. 323 (1966), *Langenkamp v. Culp*, 498 U.S. 42 (1990), and *Granfinanciera, S.A v. Nordberg*, 492 U.S. 33 (1989)—that, by filing a proof of claim, a creditor waives its right to a jury trial in actions brought by the bankruptcy estate against that creditor. Thus, when Ace filed its proof of claim, Ace waived its right to trial by jury in this adversary proceeding. *Id.*; *accord Vlastelica v. Novoselsky*, No. 15-CV-0910, 2015 WL 6393968, at *3 (Bankr. E.D. Wis. Oct. 21, 2015); *see also Matter of Peachtree Lane Associates, Ltd.*, 150 F.3d 788, 798 (7th Cir. 1998) ("Those creditors who had filed proofs of claim ... were not entitled to a jury trial because by filing a claim, those creditors had brought themselves within the equitable jurisdiction of the bankruptcy court").

By filing its proof of claim, Ace also forfeited its right to argue that the Bankruptcy Court may not constitutionally enter judgment in this adversary proceeding. In *Stern v. Marshall*, the Supreme Court acknowledged that principles of *res judicata* and collateral estoppel apply in bankruptcy cases and therefore, bankruptcy courts may constitutionally enter judgments when deciding the bankruptcy estate's claim against the creditor also decides the creditor's proof of claim. 564 U.S. at 496-98. Here, Ace argues that it is not responsible to provide coverage to USAG for certain policy years and it makes the same argument in its proof of claim. Because USAG's

claims against Ace "bear[] directly on the allowance of [Ace's] claim" against USAG, this Adversary Proceeding "is integrally related to the equitable reordering of debtor-creditor and creditor-creditor relations" and the bankruptcy court may enter judgment. *Picard for Liquidation of Bernard L. Madoff Inv. Secs. LLC v. Saren-Lawrence*, No. 17 Civ. 5157 (GBD), 2018 WL 2383141, at *4 (S.D.N.Y. May 15, 2018) (refusing to withdraw reference over adversary proceeding where defendant demanded jury trial because defendant had filed related claim against estate).

Because Ace has no right to a trial by jury and in fact, the Bankruptcy Court may enter a judgment in this adversary proceeding against Ace, there is no cause for the District Court to withdraw the reference.

### 2. Even If Ace Had Not Filed A Proof Of Claim, There Would Still Be No Basis To Withdraw The Reference.

But even if Ace retained its jury trial rights, that would not be a reason to withdraw the reference now with respect to the claims against Ace or TIG. As one court explained, "judicial economy will be served by allowing the claims to be considered by the bankruptcy court first. The bankruptcy court has great expertise in dealing with claims that are, like these, deeply entangled in the underlying bankruptcy proceedings. The bankruptcy court also has much greater familiarity with the facts of this case." *Official Comm. Of Unsecured Creditors of Country Stone Holdings, Inc. v. First Midwest Bank & Ronald Bjustrom*, No. 15-CV-04063-SLD, 2016 WL 1259378, at *3 (C.D. Ill. Mar. 30, 2016) Thus, "[w]here a proceeding is in a preliminary stage, the bankruptcy judge is presiding over other actions that rely on the same factual and legal grounds and discovery is yet to be conducted, the bankruptcy judge is in a better position to preside over the proceeding efficiently, and permissive withdrawal of the reference is not warranted." *STC, Inc.*, 2015 WL 1042431, at *4.

"Of the courts that have considered the issue of an early withdrawal of a reference to the bankruptcy court, the overwhelming majority have declined, post-*Stern*, to withdraw the reference, recognizing the value of the bankruptcy judge's familiarity with relevant law and the facts of the cases before them." *Mason v. Klarchek*, No. 12-CV-9971, 2013 WL 1869098, at *2 (N.D. Ill. May 2, 2013) (internal citation omitted); *see also In re E & S Facilities, Inc.*, 181 B.R. 369, 373-74 (S.D. Ind. 1995) (refusing to permissively withdraw reference early in RICO adversary proceeding because "the interests of judicial economy and efficient case management weigh in favor of continued litigation at the bankruptcy court level").

In addition, the "mere request for a jury trial is not sufficient cause for immediate withdrawal." *In re Stein*, 2017 WL 2418325, at *2. It is possible that "judicial efficiency is best served by allowing necessary pretrial issues, some of which may obviate the need for a jury trial altogether, to proceed in bankruptcy court." *Kemp v. Nelson*, No. 16-CV-1546-JPS, 2016 WL 7177508, at *3 (E.D. Wis. Dec. 9, 2016). Accordingly, courts consistently refuse to withdraw the reference in the early stages of an adversary proceeding, even where defendants demand a jury trial and refuse to consent to a jury trial in the bankruptcy court. *See, e.g., In re Stein*, 2017 WL 2418325, at *2; *Kemp*, 2016 WL 7177508, at *3; *Abrams v. DLA Piper (US) LLP*, No. 12-CV-19-TLS, 2012 WL 1714591, at *4 (N.D. Ind. May 15, 2012); *Southern Elec. Coil, LLC v. FirstMerit Bank, N.A.*, No. 11-C-6135, 2011 WL 6318963, at *4 (N.D. Ill. Dec. 16, 2011); *In re Neumann Homes, Inc.*, 414 B.R. 383, 386-87 (N.D. Ill. 2009); *Gecker*, 391 B.R. at 616; *CDX Liquidating Trust v. Venrock Associates*, No. 04-CV-7236, 2005 WL 3953895, at *4 (N.D. Ill. Aug. 10, 2005); *In re Conseco Fin. Corp.*, 324 B.R. 50, 55-56 (N.D. Ill. 2005); *ABC-NACO, Inc. v. Klos Trucking, Inc.*, No. 04-C-0033, 2004 WL 728190, at *2 (N.D. Ill. Mar. 31, 2004); *In re Dreis & Krump Manufacturing Co.*, No. 94-C-4281, 1995 WL 41416, at *3 (N.D. Ill. Jan. 31, 1995); *Vista Metals*

*Corp. v. Metal Brokers Int'l Inc.*, 161 B.R. 454, 458-59 (E.D. Wis. 1993); *Bus. Commc'ns, Inc. v. Freeman*, 129 B.R. 165, 166 (N.D. Ill. 1991); *In re Petters Co., Inc.*, 440 B.R. 805, 810-11 (Bankr. D. Minn. 2010).

*Wellman Thermal Sys. Corp. v. Columbia Casualty Co.*, No. 05-CV-1191, 2005 WL 4880619 (S.D. Ind. Oct. 5, 2005), a case Movants rely upon, is not to the contrary. There, a district court withdrew the reference of the non-core claims, finding that "there is no indication that withdrawal of reference will increase delay and costs to the parties." *Id.* at *3. That is hardly the case here. The Bankruptcy Court will hear three of the Partial Summary Judgment Motions *in two weeks.* There is no indication that the District Court will be able to move as quickly to adjudicate this case, given its busy docket and its comparative lack of familiarity with the parties and issues in this case. In addition, the *Wellman* court withdrew the reference because one of the defendants asserted a cross-claim over which the bankruptcy court had *no* jurisdiction, but which the district court could adjudicate under its supplemental jurisdiction. *Id.* at *4. It therefore made good sense to withdraw the reference in *Wellman*, where doing so did not impose delay and extra costs and where it was necessary to allow the cross-claim to be heard at all. All of these factors are absent here.

Movants' other authority, *Adelsperger v. 3D Holographics Medical Imaging Inc.*, 16-CV-759-HAB, 2019 WL 2206091 (N.D. Ind. May 21, 2019), is similarly inapposite. Again, a district court withdrew the reference for non-core claims subject to jury demands. Critical to the district court's analysis, though, was that the bankruptcy court itself recommended withdrawal of the reference. *Id.* at *3; *see also* Bankr. S.D. Ind. Local R. 5011-1(b) (permitting the Bankruptcy Court to recommend to the District Court that the reference to any case or proceeding be withdrawn). Here, the Bankruptcy Court has not issued such a recommendation and is instead presiding over

the matters arising in this Adversary Proceeding. Further, the bankruptcy court in *Adelsperger* recommended withdrawal because there was related civil litigation between the parties that was already pending in the district court and which had proceeded through discovery. *Id.* at *3-4. The parties even included discovery material from the district court litigation in their designations of record on the motion to withdraw the reference. That is not the case here. While Movants make much of the pre-petition litigation USAG initiated in the District Court, no discovery occurred in that litigation and it did not advance to the point where the District Court gained any familiarity with it. *Adelsperger* does not support withdrawal of the reference in this case.

In short, courts refuse to mechanically withdraw the reference every time an adversary proceeding asserts a claim where the bankruptcy court can only enter a proposed ruling or when parties demand a jury trial. Instead, the inquiry focuses on whether withdrawing the reference also promotes judicial efficiency, uniformity of bankruptcy administration, the economical use of debtor and creditor resources, and the expeditious resolution of the underlying bankruptcy case. *See First Midwest Bank*, 2016 WL 1259378, at *3. Those factors do not support withdrawal here.

### B. Withdrawing The Reference Will Not Promote Judicial Economy Or Uniformity Of Bankruptcy Administration.

Maintaining the adversary proceeding in the Bankruptcy Court at this time will promote judicial economy and uniformity of bankruptcy administration. The Bankruptcy Court has gained extensive experience with USAG, its operations, and all of its stakeholders during the nine months in which USAG's chapter 11 case has been pending.[2] The Bankruptcy Court's expertise with respect to USAG has only increased further in the months since the Original Withdrawal Motion was denied. It is therefore well-equipped to promptly hear the Partial Summary Judgment Motions,

---

[2] USAG's main case already contains more than 740 docket entries. USAG's *Additional Designation Of Record*, filed contemporaneously herewith, identifies certain of the key filings in the Bankruptcy Court.

a factor the District Court noted and emphasized when it conducted its June 10, 2019 status conference.

Nevertheless, Movants now suggest that withdrawing the reference somehow benefits USAG's estate and creditors. (Renewed Withdrawal Motion, at 15-17.) Not so. Withdrawing the reference before the Bankruptcy Court can consider and rule on the Partial Summary Judgment Motions—even if the District Court ultimately elects to treat those rulings as reports and recommendations—will prolong USAG's bankruptcy case and stall USAG's efforts to reach agreement about a plan of reorganization and settlement.

*Gecker v. Marathon Financial Insurance Company*, 391 B.R. 613, 615-16 (N.D. Ill. 2008), is instructive. There, the district court declined to withdraw the reference even though the defendants had demanded a jury trial and the bankruptcy court could only enter a proposed ruling because doing so would not promote judicial economy. The district court found that the bankruptcy court "has gained substantial familiarity with the parties, their counsel, and the background issues of the case" and "has a significant base of knowledge from which to manage the next steps of the adversary proceeding." 391 B.R. at 615-16. The district court also noted that a "jury trial remains a distant and speculative prospect." *Id.* at 616. Accordingly, it refused to withdraw the reference because doing so would negate the work the bankruptcy court had already devoted to the bankruptcy case and the adversary proceeding and would force the district court to familiarize itself with the parties, their claims, and their defenses, all without an assurance that a jury trial and final judgment would actually be necessary. *Id.*

The same is true here. As in *Gecker*, the likelihood of an actual jury trial and a final judgment in this adversary proceeding is still "speculative" at best. 391 B.R. at 616. Under Indiana law, "[t]he interpretation of an insurance policy is primarily a question of law for the court, and it

is therefore a question which is particularly suited for summary judgment." *Wagner v. Yates*, 912 N.E.2d 805, 808 (Ind. 2009); *accord Berkshire Hathaway Homestate Ins. Co. v. Basham*, 113 N.E.3d 630, 635 (Ind. Ct. App. 2018) (interpreting insurance contract and affirming grant of summary judgment in favor of policyholder). Given that fact, it is very unlikely that this adversary proceeding will ever go to trial before a jury; instead the most likely outcome is a summary judgment determination.

The Partial Summary Judgment Motions which precipitated the Renewed Withdrawal Motion present only legal questions. USAG expects that the Bankruptcy Court's rulings on these issues will precipitate more productive settlement negotiations, eliminating the need for a trial. Regardless, if a settlement is not reached, the most likely outcome of this adversary proceeding is a summary judgment ruling, which the District Court would review *de novo* regardless of whether the ruling is characterized as a judgment and reviewed by the District Court on appeal, or as a proposed ruling and reviewed based upon an objection to that proposed ruling.

To this point, Movants argue that judicial economy is not served when a Bankruptcy Court decides non-core issues because a district court must review the bankruptcy court's orders *de novo*. (Renewed Withdrawal Motion, at 15-17.) They rely on language from *Gecker* suggesting that the reference should be withdrawn to "avoid the inefficiency of two different judges ruling on essentially the same" dispositive motions. 391 B.R. at 616. But if the District Court withdraws the reference at this stage in the adversary proceeding, before discovery has commenced, "the case would be referred to a magistrate judge for discovery purposes, requiring yet another new phase of familiarization with the facts of this case" by a *third* judicial officer. *STC, Inc.*, 2015 WL 1042431, at *4. "It is therefore not an efficient use of judicial resources to withdraw the reference at this time." *Id.*

More importantly, the logical result of Movants' argument is that the reference should be withdrawn in every case where the matter is non-core. But this cannot be and is not the case. If it were, Congress would not have explicitly instructed bankruptcy courts to consider non-core claims in the first instance and propose findings of fact and conclusions of law, subject to *de novo* review in the district court. *See* 28 U.S.C. § 157(c). Further, the Supreme Court in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014), which post-dates both *Stern* and *Gecker*, would not have approved this very procedure. *Id.* at 2172-73. This Court should therefore reject Movants' argument that judicial economy supports withdrawing this adversary proceeding over which the Bankruptcy Court already has substantial familiarity. Otherwise, "the exception [*i.e.*, withdrawal of the reference] would swallow the rule because judicial economy and efficiency would then never be promoted when a bankruptcy court hears a non-core issue." *In re HA 2003, Inc.*, No. 03-C-9008, 2004 WL 609799, at *3 (N.D. Ill. Mar. 24, 2004) (denying motion to withdraw reference early in non-core adversary proceeding concerning insurance coverage).

Simply put, "the bankruptcy court is familiar with the facts of this case and better equipped to manage all pretrial matters and issues arising out of [USAG's] bankruptcy estate." *In re Stein*, 2017 WL 2418325, at *2; *accord E & S Facilities*, 181 B.R. at 374 (denying motion to withdraw reference because "the interests of judicial economy and efficient case management weigh in favor of continued litigation at the bankruptcy court level"). Judicial economy weighs in favor of denying the Renewed Withdrawal Motion.

### C.   Withdrawing The Reference Will Not Conserve Debtor And Creditor Resources.

Withdrawing the reference will not conserve debtor and creditor resources and in fact will do just the opposite. USAG is a not-for-profit entity with no significant assets other than the insurance policies that are the subject of this adversary proceeding. It cannot afford for its chapter

11 case to be further prolonged. USAG is harmed every day that Ace and TIG persist in their dilatory negotiation and litigation strategies. Moreover, USAG's creditors, and in particular the Survivors, are entitled to an efficient resolution of their claims. Keeping this adversary proceeding in the Bankruptcy Court and on a parallel track with the chapter 11 case and the mediation will promote efficiency, avoid duplication, and conserve creditor and debtor resources. Shifting it to the District Court will do just the opposite.

Even if a final adjudication of this adversary proceeding by the District Court becomes necessary, it will be more efficient to have the District Court review a report and recommendation prepared by the Bankruptcy Court, rather than have the District Court independently duplicate work that the Bankruptcy Court will also do to resolve the underlying bankruptcy case. Indeed, "experience strongly suggests that having the benefit of a report and recommendation from the Bankruptcy Court will save the District Court and the parties an *immense* amount of time." *Lehman Brothers Holdings Inc. v. Standard Pacific Mortgage, Inc., et al.*, No. 19-CV-4080, 2019 U.S. Dist. LEXIS 143871, at *10 (S.D.N.Y. Aug. 23, 2019) (denying motion to withdraw reference on non-core claims on which parties were entitled to jury trial) (emphasis added); *accord 880 S. Rohlwing Road, LLC v. T&C Gymnastics, LLC*, No. 16-CV-07650, 2017 WL 264504, at *10 (N.D. Ill. Jan. 19, 2017) ("the bankruptcy court's ability to handle pre-trial matters and to issue, as necessary, proposed findings of fact and conclusions of law promotes judicial economy and weighs against early withdrawal"). For that reason, the adversary proceeding should be maintained in the Bankruptcy Court to conserve the resources of everyone involved.

### D.   USAG Has Not Engaged In Impermissible Forum Shopping.

Last, Ace and TIG argue that the reference should be withdrawn as a sanction for USAG's alleged forum shopping. (Renewed Withdrawal Motion, at 17-21.) They contend that USAG

improperly filed this adversary proceeding in the Bankruptcy Court after the District Court closed the pre-petition litigation (an argument the District Court did not find persuasive when considering the Original Withdrawal Motion), and improperly filed the Partial Summary Judgment Motions. Both arguments lack merit.

The focus of the forum shopping inquiry is whether a party acted with impermissible motivations in moving litigation from one court to another. *See Conseco Fin. Corp.*, 324 B.R. at 54-55; *In re Bolen*, No. 15-CV-44, 2015 WL 685869, at *2 (N.D. Ind. Feb. 18, 2015). Ace and TIG insinuate that USAG is now prosecuting this litigation in the Bankruptcy Court rather than the District Court on the expectation that the Bankruptcy Court is friendlier to USAG than the District Court. (Renewed Withdrawal Motion, at 17-18.) But nothing supports that conclusion. All the District Court had done prior to closing the pre-petition litigation was set a case management schedule. (*Id.* at 18.) No defendant had filed an answer, no discovery had been conducted, and only one defendant had filed a motion to dismiss that was unresolved at the time USAG filed its chapter 11 case. The District Court had not ruled on any merits issue in favor of or against USAG. Without any "adverse ruling" from the District Court, USAG had no reason to seek out a purportedly friendlier forum. *Bolen*, 2015 WL 685869, at *2 (finding that party engaged in forum shopping when it sought to move litigation between bankruptcy court and district court after receiving adverse ruling).[3]

USAG also had no reason to suspect that the Bankruptcy Court would unduly favor it in

_____

[3] USAG also disagrees with Movants' contention that USAG filed an erroneous notice of stay and that the District Court erred when it administratively closed the case. (Renewed Withdrawal Motion, at 17-18.) The insurers' opposition to the declaratory judgment complaint would have constituted an act to exercise control over property of the estate—USAG's insurance policies—and therefore the case was appropriately stayed under 11 U.S.C. § 362(a)(3). *See In re Mid-City Parking, Inc.*, 332 B.R. 798, 807 n.7 (Bankr. N.D. Ill. 2005). Movants do nothing to rebut this argument, focusing exclusively instead on 11 U.S.C. § 362(a)(1). (Renewed Withdrawal Motion, at 17-18.)

this litigation. When USAG filed this adversary proceeding, the Bankruptcy Court had not ruled on the merits of any dispute between USAG and its insurers. Instead, the reason USAG filed the Adversary Proceeding in the Bankruptcy Court was to promote judicial efficiency by having one court administer both its bankruptcy case and this insurance coverage dispute, which proceedings are inextricably interwoven. One cannot move forward without resolution of the other.

Ace and TIG also complain that USAG engaged in "procedural gamesmanship" by moving in the Bankruptcy Court for partial summary judgment on some issues against some insurers, one by one. (*Id.* at 21.) But, again, Ace and TIG fail to show how the Bankruptcy Court's consideration of the Partial Summary Judgment Motions prejudices them. Despite their suggestion that their due process rights are being violated (*id.* at 20), the Bankruptcy Court denied USAG's request to have the Partial Summary Judgment Motions heard on shortened notice and gave Ace and TIG nearly a month to brief their responses to the Motions and will permit both them both to be fully heard at the hearing in September. (Adv. Dkt. 182, at ¶5; Adv. Dkt 183, at ¶5.)

Further, USAG did not file summary judgment motions piecemeal and on an expedited basis as part of a strategy to preclude Movants from arguing that the disputes should be withdrawn to the District Court. (Renewed Withdrawal Motion, at 20-21.) Instead, USAG filed the Partial Summary Judgment Motions and the requests to expedite because the parties have reached impasse on a discrete set of insurance coverage issues, which is now jeopardizing progress in the mediation. Those issues need to be resolved as soon as practicable for the benefit of USAG and all parties in interest, including Ace and TIG. Just because Ace and TIG disagree with the merits of USAG's positions does not mean that USAG has sought out an undue advantage that is the focus of the forum shopping inquiry. *Conseco Fin. Corp.*, 324 B.R. at 54-55.

Movants' attacks on the Partial Summary Judgment Motions also show that they

misapprehend the effect of withdrawing the reference. If the reference is withdrawn, nothing will preclude USAG (or any other party) from moving for partial summary judgment on specific issues and against specific parties one by one, and potentially on an expedited basis. Withdrawing the reference will simply change the forum for those disputes to the District Court. To the extent Movants still have genuine concerns about the procedure and timeline for litigating the Partial Summary Judgment Motions, those concerns can be addressed through appropriate case management orders in the Bankruptcy Court, where considerations of judicial economy favor maintaining this adversary proceeding.[4]

******

In the end, Movants' Renewed Withdrawal Motion overlooks Ace's and TIG's own improper negotiating tactics that have single-handedly delayed the resolution of USAG's chapter 11 case, causing direct and substantial harm to USAG, its estate, and Survivors who deserve to be compensated *now*. The Renewed Withdrawal Motion should be denied so that the Bankruptcy Court can promptly hear and adjudicate the Partial Summary Judgment Motions, directing USAG's chapter 11 case to resolution.

---

[4] In support of their forum shopping arguments, Ace and TIG also cite authorities dismissing chapter 11 cases that were filed in bad faith. (Renewed Withdrawal Motion, at 21.) These cases are irrelevant because, regardless of Movants' complaints about USAG's prosecution of this Adversary Proceeding, they do not articulate any facts showing that USAG filed its chapter 11 *case* in bad faith. Those facts do not exist.

## CONCLUSION

For all of the foregoing reasons, USAG respectfully requests the Court deny, without prejudice, the Renewed Withdrawal Motion and grant such other relief as may be just.

Dated: September 3, 2019

Respectfully submitted,

**JENNER & BLOCK LLP**

By: */s/ Catherine L. Steege*

One of its Attorneys

Catherine L. Steege (admitted *pro hac vice*)
Melissa M. Root
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350
csteege@jenner.com
mroot@jenner.com

-and-

**PLEWS SHADLEY RACHER & BRAUN LLP**
George M. Plews
Gregory M. Gotwald
Tonya J. Bond
1346 North Delaware Street
Indianapolis, Indiana 46202
(317) 637-0700
gplews@psrb.com
ggotwald@prsb.com
tbond@prsb.com

*Counsel for the Debtor*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing *USA Gymnastics' Response To Ace American Insurance Company & TIG Insurance Company's Renewed Motion To Withdraw The Reference Of The Adversary Proceeding* was originally filed electronically on September 3, 2019 and re-filed electronically on September 4, 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

*/s/  Catherine L. Steege*

*Counsel for the Debtor*