# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| USA GYMNASTICS, | ) | Case No. 18-09108-RLM-11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| USA GYMNASTICS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Case No. 19-50012 |
| | ) | |
| ACE AMERICAN INSURANCE | ) | |
| COMPANY f/k/a CIGNA INSURANCE | ) | |
| COMPANY, GREAT AMERICAN | ) | |
| ASSURANCE COMPANY, LIBERTY | ) | |
| INSURANCE UNDERWRITERS INC., | ) | |
| NATIONAL CASUALTY COMPANY, | ) | |
| RSUI INDEMNITY COMPANY, TIG | ) | |
| INSURANCE COMPANY, VIRGINIA | ) | |
| SURETY COMPANY, INC. f/k/a | ) | |
| COMBINED SPECIALTY INSURANCE | ) | |
| COMPANY, WESTERN WORLD | ) | |
| INSURANCE COMPANY, ENDURANCE | ) | |
| AMERICAN INSURANCE COMPANY, | ) | |
| AMERICAN INTERNATIONAL GROUP, | ) | |
| INC., AMERICAN HOME ASSURANCE | ) | |
| COMPANY, AND DOE INSURERS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT TIG INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF USA GYMNASTICS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
### (Pertaining to Abuse or Molestation Exclusions)

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE ........................... 2

   I.      THE SEXUAL ABUSE CLAIMS.................................................. 2

   II.     THE COVERAGE DISPUTE ..................................................... 2

   III.    THE TIG POLICIES AT ISSUE................................................... 4

         A.  The 1991 and 1992 Primary Policies ...................................... 4

         B.  The 2001 Policies................................................................. 5

         C.  The 1996 Excess Policy ........................................................ 8

STATEMENT OF MATERIAL FACTS IN DISPUTE ...................................... 8

ARGUMENT................................................................................................. 9

   I.      USAG IS NOT ENTITLED TO SUMMARY JUDGMENT ..................... 9

   II.     INDIANA INSURANCE CONTRACT INTERPRETATION
         PRINCIPLES ............................................................................. 10

   III.    USAG IS NOT ENTITLED TO COVERAGE UNDER THE
         2001 POLICIES ......................................................................... 11

         A.  The Abuse and Molestation Exclusion Applies to Participant
            Liability Coverage............................................................... 12

         B.  The Sexual Abuse or Molestation Liability Coverage Form................. 15

   IV.    USAG IS NOT ENTITLED TO COVERAGE UNDER THE
         1996 EXCESS POLICY.............................................................. 17

         A.  The Molestation Exclusion Precludes Coverage ................................... 17

         B.  Regardless of the Exclusion, Coverage Also is Limited to
            Five Discrete Events............................................................. 18

   V.     USAG IS NOT ENTITLED TO COVERAGE UNDER THE 1991
         AND 1992 POLICIES.................................................................. 19

         A.  The Care, Custody or Control Requirement ......................................... 20

## TABLE OF CONTENTS CONT'D.

**Page**

     B.  If the Claimants Were Not in the Care, Custody or Control
of USAG at the Time of Abuse, USAG Has Not Satisfied a
Requirement for Coverage Under The Policies ...................................... 23

CONCLUSION ................................................................................................................ 24

ii

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

Bedwell v. Sagamore Ins. Co., 753 N.E.2d 775 (Ind. App. 2001)..........................10, 11

Buckeye State Mut. Ins. Co. v. Carfield, 914 N.E.2d 315 (Ind. Ct. App. 2009)..........10, 11

Capitol Indemnity, Inc. v. Brown, 581 S.E.2d 339 (Ga. Ct. App. 2003) ............................ 13

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .................................................................. 9

Children's Aid Soc'y of Montgomery Cty. v. Great Am. Ins. Co., 1995 WL 251374
    (E.D. Pa. Apr. 28, 1995)................................................................................................. 21

Colonial Penn Ins. Co. v. Guzorek, 690 N.E.2d 664 (Ind. 1997)........................................ 18

CWC Builders, Inc. v. United Specialty Ins. Co., 134 F. Supp. 3d 589 (D. Mass. 2015) .... 14

FLM, LLC v. Cincinnati Ins. Co., 24 N.E.3d 444 (Ind. Ct. App. 2014)............................... 14

Gemini Ins. Co. v. Earth Treks, Inc., 260 F. Supp. 3d 467 (D. Md. 2017)........................... 21

Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co., 983 N.E.2d 574
    (Ind. 2013)...........................................................................................................11, 18, 20

McCormick v. Comm'r of Ind. DOC, 2019 WL 251249
    (S.D. Ind. Jan. 16, 2019)................................................................................................ 10

Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037
    (7th Cir. 1992)................................................................................................................. 14

Selective Ins. Co. of Am. v. Smiley Body Shop, Inc., 260 F. Supp. 3d 1023
    (S.D. Ind. 2017) ............................................................................................................... 9

TIG Ins. Co.  v. Merryland Childcare & Dev. Ctr., Inc., No. 04-266 B, 2007
    WL 316571 (W.D. Tenn., Jan. 31, 2005) ....................................................................... 16

TIG Insurance Company v. Smart School, 401 F. Supp. 2d 1334 (S.D. Fla. 2005)............. 16

Travelers Indemnity Co. v. Summit Corp. of America, 715 N.E.2d 926 (Ind.
    Ct. App. 1999)................................................................................................................ 14

Valley Forge Ins. Co. v. Field, 670 F.3d 93 (1st Cir. 2012)................................................ 21

## TABLE OF AUTHORITIES CONT'D.

**Cases**                                                                         **Page**

Westfield Insurance Co. v. TCFI Bell SPE III, LLC, 2019 WL 1434716 (S.D.
   Ind. Mar. 30, 2019)........................................................................................... 14

**Statutes and Rules**

FED. R. CIV. P. 56 ........................................................................................... 9

**Miscellaneous**

Black's Law Dictionary 350 (2d Ed. 2001)......................................................... 18

## PRELIMINARY STATEMENT

In bringing the current motion for partial summary judgment, Plaintiff USA Gymnastics ("USAG") violates the Court-ordered (and agreed) stay of this adversarial proceeding and improperly seeks to use premature motion practice as negotiating leverage in connection with ongoing mediation efforts. Despite the pending stay and the fact that TIG Insurance Company ("TIG") has neither filed a responsive pleading nor had the opportunity to conduct *any* discovery, USAG unilaterally decided that the issue of coverage under numerous policies should be heard at this time. USAG's motion is improper on these bases alone.

USAG fares no better with respect to the merits of its arguments. USAG acknowledges that the five policies at issue in its motion each contain (or incorporate) an exclusion expressly precluding coverage for sexual abuse or molestation. In an attempt to create coverage that was not bargained for, USAG seeks to dissect the policies and apply unreasonable interpretations contrary to the language and overall intent of the policies as well as fundamental contract interpretation principles under Indiana law. The Indiana Supreme Court, and courts throughout the country, have enforced the abuse or molestation exclusions as clear and unambiguous. Accordingly, the abuse or molestation exclusions in the TIG policies must be enforced as written here to bar coverage for the sexual abuse claims pending against USAG, a risk for which USAG did not pay a premium. USAG's efforts to concoct "loopholes" in the TIG policies to avoid application of these clear exclusions and rewrite more favorable contract terms should not be tolerated.

TIG respectfully requests that this Court deny USAG's motion for partial summary judgment and grant TIG's cross-motion for summary judgment enforcing the abuse or molestation exclusions as written.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### I.   THE SEXUAL ABUSE CLAIMS

Beginning in 2017, USAG has been sued by several hundred former and current gymnasts claiming sexual abuse or molestation by former USAG athletic trainer/physician, Women's National Team doctor and National Medical Director, Larry Nassar, under the guise of medical treatment (the "Sexual Abuse Claims").  See, e.g., Dkt. No. 2-1; Ex. 1 at ¶ 9; Ex. 2 at ¶ 9.  The Sexual Abuse Claims generally assert that from 1986 to approximately 2015 Nassar "worked for USAG in various positions and capacities" and that USAG "regularly recommended . . . Nassar to its members."  See Ex. 1 at ¶¶ 6-7; 211; 1415; Ex. 2 at ¶ 195.  The allegations of sexual abuse by Nassar date back to the late 1980's through 2016.  See, e.g., Ex. 2 at ¶¶ 897; 449-456.

The Sexual Abuse Claims assert various causes of action arising from the sexual abuse including negligence, vicarious liability, express/implied agency, negligent supervision, negligent failure to warn or protect, negligent failure to train or educate, negligent retention, intentional infliction of emotional distress and fraud/misrepresentation.  See Ex.1 at  ¶¶ 1512-1596; Ex. 2 at ¶¶ 1298-1384.[1]   On December 5, 2018, USAG filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, resulting in an automatic stay of the underlying lawsuits.  Subsequently, the Sexual Abuse Claims (which now also allege abuse by more than 50 perpetrators) have been submitted as Proofs of Claim in the bankruptcy action.

### II.   THE COVERAGE DISPUTE

On April 6, 2018, USAG filed a lawsuit in Marion County Superior Court against TIG and several other of its insurers seeking a determination of the parties' respective rights and obligations under the policies.   The insurers removed the case to the United States District

---

[1] By citing to the allegations of the underlying lawsuits, TIG does not accept their veracity.  However, to the extent that USAG has forced substantive motion practice at this early juncture prior to resolution of the underlying claims, TIG must rely upon the allegations in responding to the motion and defending its coverage positions.

Court for the Southern District of Indiana, and the case was voluntarily stayed while USAG and the insurers sought to resolve the Sexual Abuse Claims in mediation.  On November 5, 2018, after mediation proved unsuccessful, the District Court lifted the stay and the parties proposed a case management order.

On December 5, 2018, USAG filed a bankruptcy petition in this Court and a "Notice of Stay Due to Bankruptcy" in the District Court.  The District Court action was administratively terminated subject to the parties' right to re-open the case within 60 days after the conclusion of the bankruptcy proceedings.  On February 1, 2019, USAG commenced this Adversary Proceeding against the insurers seeking to litigate the same coverage issues as the previously-filed lawsuit.

On March 5, 2019, the insurers filed a Joint Motion to Withdraw the Reference of the Adversary Proceeding and a Motion for Stay Pending Withdrawal.  See Dkt. No. 37.  On June 3, 2019, USAG, TIG and all other insurers but one submitted a Notice of Submission of Agreed Order Granting Motion for Stay on an Interim Basis with Respect to Non-LIU Defendants.  See Dkt. No. 150.  The Bankruptcy Court approved that order on June 7, 2019, staying the case pending mediation efforts until September 18, 2019, on which date the Court would hold a hearing on the motion to stay.  See Dkt. No. 155.  In light of the anticipated mediation efforts and stay entered by the Bankruptcy Court, the District Court denied the Motion to Withdraw the Reference without prejudice to renewal if the case did not settle at mediation.  The mediation efforts are ongoing and have not terminated.

Despite agreeing to the Court-ordered stay until September 18, 2019 and the lack of any discovery (or even a responsive pleading filed by TIG), on August 7, 2019, USAG filed a motion for partial summary judgment against TIG and a separate motion for partial summary judgment against co-defendant Ace American Insurance Company ("AAIC").  In its motion,

USAG foreshadowed that it had another summary judgment motion against TIG in the works, which it has since filed.[2]

On August 20, 2019, TIG and AAIC filed a Renewed Motion to Withdraw the Reference of the Adversary Proceeding, which subsequently was joined by Liberty International Underwriters ("LIU").  See Dkt. No. 192 & 208.  Briefing on that motion remains ongoing, and no hearing date has been set.  TIG, AAIC and LIU assert that the forum issue should be determined prior to a hearing on the pending summary judgment motions.

## III.  THE TIG POLICIES AT ISSUE

USAG's motion seeks rulings with respect to five liability policies USAG purchased from TIG (collectively, the "TIG Policies").  TIG provides a brief overview and attaches complete copies of the relevant TIG policies as exhibits for ease of reference for the Court.

### A.  The 1991 and 1992 Primary Policies

TIG issued general liability policy number SSP-02719412 to United States Gymnastics Federation (n/k/a USA Gymnastics) for the policy period August 1, 1991 to August 1, 1992 (the "1991 Policy") and general liability policy number SSP35038808 for the policy period August 1, 1992 to August 1, 1993 (the "1992 Policy").  See Ex. 3 and 4.  The 1991 Policy and the 1992 Policy contain an Abuse or Molestation Exclusion (ISO Form CG 21 46 01 87) precluding coverage as follows:

**ABUSE OR MOLESTATION EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:

---

[2] USAG's more recent motion for partial summary judgment filed on August 27, 2019 seeks to confirm the existence and scope of coverage under several "lost policies" allegedly issued by TIG and relies upon a purported "expert report" to do so.  See Dkt. No. 204 and 205.  USAG's second motion (involving a fact-intensive issue) also violates the stay and further highlights the prematurity of these motions prior to discovery.

(a)     the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

(b)     the negligent:

    a.  employment;
    b.  investigation;
    c.  supervision;
    d.  reporting to the proper authorities, or failure to so report; or
    e.  retention;

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

See Ex. 3 at 27; Ex. 4 at MP-000062.

**B.  The 2001 Policies**

TIG issued general liability policy number T7 3921762800 to USAG for the policy period August 1, 2001 to August 1, 2002 (the "2001 Primary Policy")[3] and an excess liability policy for the period August 1, 2001 to August 1, 2002, which incorporates the terms of the 2001 Primary Policy unless otherwise stated or inconsistent (the "2001 Excess Policy" and, collectively, the "2001 Policies").  See Ex. 5 and 6.

The 2001 Primary Policy contains an Abuse or Molestation Exclusion (ISO Form CG 21 46 07 98) with substantially the same language as the exclusions in the 1991 and 1992 Policies.  See Ex. 5 at MP-000549.  The 2001 Primary Policy also contains a Legal Liability to Participants endorsement, which provides in relevant part as follows:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

* * *

A.  Additional Exclusions

1.  The following is added to SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions:

---

[3] Although originally issued with an expiration date of August 1, 2004, the policy was cancelled in its entirety effective August 1, 2002.

> This insurance does not apply to:
>
> "Bodily injury" to a "participant".
>
> * * *
>
> B. Insuring Agreement
>
> The following is added to SECTION I – COVERAGES:
>
> COVERAGE D – LIABILITY TO "PARTICIPANTS"
>
> 1. Insuring Agreement.
>
>> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to any "participant". . .
>>
>> * * *
>>
>> b. This insurance applies to "bodily injury" only if:
>>
>>> (1) The "bodily injury" is caused by an "occurrence" that takes place in the "coverage territory"; and
>>>
>>> (2) The "bodily injury" occurs during the policy period.

See Ex. 5 at MP-000539-40.

The Legal Liability to Participants endorsement shifts coverage for bodily injury to participants from Coverage A to Coverage D of the CGL Coverage Part with certain additional conditions placed upon such coverage, including that USAG purchase and maintain participant accident insurance on behalf of each participant. Id. No additional premium was charged for the Legal Liability to Participants coverage section. Id. at MP-000499.

In addition, the 2001 Primary Policy contains a Sexual Abuse or Molestation Liability Coverage Form endorsement (the "Abuse Coverage Form"). Id. at MP-000563-70. USAG

paid an additional premium of $3,520 for the Abuse Coverage Form to be included in the 2001

Primary Policy.  Id. at MP-000499.  The Abuse Coverage Form provides as follows, in relevant

part:

### SEXUAL ABUSE OR MOLESTATION LIABILITY

**A.    Insuring Agreement**

1.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" caused by a "sexual abuse occurrence".  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any "sexual abuse occurrence" and settle any claim or "suit" that may result.

\* \* \*

2.   This insurance applies to a "sexual abuse occurrence" only if it:

a.   Takes place in the "coverage territory"; and

b.   During the policy period.  If the "sexual abuse occurrence" consists of a series of related acts of sexual abuse or molestation, the "sexual abuse occurrence" shall be deemed to have taken place on the date of the first of such series of acts. No coverage is afforded under this policy if the first act of a "sexual abuse occurrence" took place outside the policy period.

See Ex. 5 at MP-000565.

The term "sexual abuse occurrence" is defined as follows:

1.   A single act, or multiple, continuous, sporadic, or related acts of sexual abuse or molestation caused by one perpetrator, or by two or more perpetrators acting together. "Sexual abuse occurrence" includes "negligent employment" of any person accused or involved in such sexual abuse or molestation.  A "sexual abuse occurrence" must occur while the claimant is in the care, custody or control of an insured, or a person or entity indemnified under an insured contract pursuant to which the Named Insured has legal responsibility for the person or entity.

2.   All acts of "sexual abuse occurrence" by an actual or alleged perpetrator or perpetrators, including "negligent employment" of such perpetrator or perpetrators, shall be deemed and construed as one occurrence which takes place when the first act of sexual abuse or molestation occurs, regardless of the number of persons involved, or the number of incidents or locations involved, or the

7

> period of time during which the acts of sexual abuse or molestation took place.

Id. at MP-000570.   The Abuse Coverage Form contains several other conditions and exclusions, which are not necessary to the current motion and, therefore, not quoted here.

### C. The 1996 Excess Policy

TIG issued excess liability policy number KLB-37498134 to USAG for the policy period September 16, 1996 to August 1, 1997 (the "1996 Excess Policy").  See Ex. 7.  The 1996 Excess Policy contains a Molestation Exclusion providing as follows:

> This insurance does not apply to Personal Injury arising out of or contributed to by the molestation of anyone. The term molestation as used here includes, but is not limited to:
>
> 1. any actual, alleged or threatened sexual conduct or misconduct;
>
> 2. any actual, alleged or threatened mental or physical abuse;
>
> 3. any negligent screening, hiring, employment, training or supervision related to paragraphs 1. or 2. above; or
>
> 4. any investigation, failure to investigate, or failure to report to proper authorities which is related to paragraphs 1. or 2. above.
>
> for which any insured may be legally liable or for which any insured may have assumed the liability of others.

Id. at MP-000456.

The 1996 Excess Policy also contains a Schedule of Events endorsement limiting coverage to only those events and dates specified in the policy.  Id. at MP-000458; 444-46.

### STATEMENT OF MATERIAL FACTS IN DISPUTE

At this juncture, no fact discovery has been conducted in the coverage action.  Other than the underlying complaints and limited information provided on a confidential basis in connection with the mediation, TIG is not in possession of information regarding the Sexual Abuse Claims and, therefore, cannot state which facts are in dispute at this time.  Consideration

of TIG's potential obligations to indemnify USAG under the policies must be based upon the actual facts of the Sexual Abuse Claims, not simply allegations. TIG reserves all rights to dispute facts presented by USAG once it has been granted an opportunity to conduct discovery.

By way of example, USAG argues that the majority of claimants were not in the "care, custody or control" of USAG as required under the Abuse or Molestation Exclusion in the 1991 and 1992 Policies. USAG has not presented any evidence to support that proposition, which TIG disputes. Discovery is necessary to determine the circumstances of the alleged abuse. Likewise, USAG challenges TIG's intent in underwriting certain provisions of the TIG Policies, but no discovery has been done on those issues. Therefore, USAG cannot meet its burden on summary judgment without a factual record, which has yet to be developed in discovery and presented to the Court.

## ARGUMENT

### I. USAG IS NOT ENTITLED TO SUMMARY JUDGMENT

Summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden is upon the moving party to establish the lack of any disputes of material fact, and courts will view all evidence and reasonable inferences in a light most favorable to the non-moving party, with all doubts resolved against the moving party. A court "cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder." Selective Ins. Co. of Am. v. Smiley Body Shop, Inc., 260 F. Supp. 3d 1023, 1028-29 (S.D. Ind. 2017). Motions for summary judgment are improper where, as here, they are filed during the pendency of a court-ordered stay and prior to the commencement of discovery. See McCormick v. Comm'r of Ind. DOC, 2019 WL 251249, at *4 (S.D. Ind. Jan. 16, 2019) (denying summary judgment where motion was filed during pendency of a stay and no discovery was conducted).

Here, USAG improperly filed a motion for partial summary judgment during the pendency of the mediation stay and prior to the filing of responsive pleadings or the commencement of discovery. USAG desired to proceed with a global mediation of the underlying claims and coverage issues, and the insurers agreed to do so while putting the litigation on hold. USAG's procedural gamesmanship has forced TIG to dedicate significant time and resources in responding to premature motion practice instead of focusing upon settlement efforts (as agreed by the parties and approved by this Court) and also seeks to side-step substantive consideration of the Motion to Withdraw the Reference, which logically should be resolved *prior* to motion practice going forward on the coverage issues. For these reasons alone, USAG's motion should be denied.

In addition to the procedural infirmities of USAG's motion, USAG cannot satisfy its burden as a matter of law. As set forth herein, the clear language of the abuse or molestation exclusions precludes any obligation to USAG for the underlying Sexual Abuse Claims, and judgment should be entered in favor of TIG as requested in its cross-motion. To the extent the Court has any doubts regarding the interpretation or intent of the TIG Policies, a proper opportunity to conduct discovery must be afforded. Therefore, USAG's motion should be denied in its entirety.

## II.   INDIANA INSURANCE CONTRACT INTERPRETATION PRINCIPLES

Under Indiana law, contracts of insurance are subject to the same rules of interpretation as other contracts. Bedwell v. Sagamore Ins. Co., 753 N.E.2d 775, 779 (Ind. App. 2001). If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning. Buckeye State Mut. Ins. Co. v. Carfield, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009). The goal of a court interpreting an insurance policy is to "ascertain and enforce the parties' intent as manifested in the insurance contract." Id. Courts must "construe the insurance policy

as a whole and consider all of the provisions of the contract and not just the individual words, phrases or paragraphs." Id.

An ambiguity exists "where a provision is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning." Bedwell, 753 N.E.2d at 779. Importantly, however, an ambiguity "does not exist merely because the parties proffer differing interpretations of the policy language" or "because a controversy exists." Id.; Carfield, 914 N.E.2d at 318. Although ambiguities generally are resolved in favor of the insured, a court "will not do so if such an interpretation fails to harmonize the provisions of the contract as a whole." Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co., 983 N.E.2d 574, 578 (Ind. 2013). A court "may not extend insurance coverage beyond that provided in the contract, nor may [it] rewrite the clear and unambiguous language of an insurance contract." Bedwell, 753 N.E.2d at 779.

USAG's approach in pursuing summary judgment is contrary to Indiana contract interpretation principles. Instead of considering the policies as a whole, USAG has focused its arguments upon only fragments of the TIG Policies. In addition, USAG submits unreasonable interpretations of the abuse or molestation exclusions in the TIG Policies in an attempt to create an ambiguity and, thus, a windfall of coverage that was not purchased by USAG. Indiana law provides that a court must construe an insurance policy as a whole according to its plain and ordinary meaning and that it cannot rewrite the terms of the policy to create coverage.

## III.   USAG IS NOT ENTITLED TO COVERAGE UNDER THE 2001 POLICIES

Citing only to cherry-picked portions of the 2001 Primary Policy (and ignoring others), USAG asks this Court to create coverage for the Sexual Abuse Claims beyond what was negotiated and paid for by USAG. When looking at the policy as whole, as this Court must, any potential coverage for sexual abuse or molestation injuries under the 2001 Policies is limited to those satisfying the requirements of the Abuse Coverage Form. The terms of the

11

Abuse Coverage Form are not satisfied here, and USAG is not entitled to coverage under the 2001 Policies.

### A. The Abuse and Molestation Exclusion Applies to Participant Liability Coverage

There is no dispute that 2001 Primary Policy contains an Abuse or Molestation Exclusion. This exclusion is a standard form endorsement promulgated by the Insurance Services Office ("ISO") under form number CG 21 46 07 98. Thus, USAG's statement that TIG "drafted" the exclusion is not accurate. See Moving Br. at 10. This is not the only misleading statement in USAG's argument. In quoting the language of the exclusion in its brief, USAG omits the entire prefatory language, which sets forth the intent and scope of the exclusion:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

2. The negligent:
   a. Employment;
   b. Investigation;
   c. Supervision;
   d. Reporting to the proper authorities, or failure to so report; or
   e. Retention;

   of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph **1.** above.

See Ex. 5 at MP-000549.

USAG ignores this express statement setting forth the section of the policy modified by the exclusion—the entire Commercial General Liability Coverage Part ("CGL Part"). Review of the Legal Liability to Participants endorsement establishes that Coverage D – Liability to Participants is added to Section I of the CGL Part, the same as Coverage A and Coverage B:

## LEGAL LIABILITY TO PARTICIPANTS

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\*       \*       \*

**B.  Insuring Agreement.**
The following is added to SECTION I – COVERAGES:
COVERAGE D - LIABILITY TO "PARTICIPANTS"

Id. at MP-000539.

It is clear that the Abuse or Molestation modifies the entirety of the CGL Part, including Coverage D, which was added to the policy by a separate endorsement.  Coverage D was not specifically identified by name in the Abuse or Molestation Exclusion because standard ISO CGL forms do not contain a Coverage D.  Nevertheless, the language of the exclusion makes clear that it modifies the CGL Part.  The fact that Coverage D is not separately referenced by name does not create an ambiguity or render the exclusion inapplicable here.

While it appears that Indiana appellate courts have not confronted this specific issue, courts in other jurisdictions have applied exclusions under similar circumstances.  In Capitol Indemnity, Inc. v. Brown, 581 S.E.2d 339 (Ga. Ct. App. 2003), the general liability policy at issue contained an Assault or Battery Exclusion that applied to the "Commercial General Liability Coverage Part."  The policy also contained an errors and omissions endorsement providing coverage for damages arising from professional services in the performance of detective or security guard operations (the "E&O Endorsement").  There was no reference to the Assault or Battery Exclusion in the E&O Endorsement.  Like USAG here, the insured argued that the Assault or Battery Exclusion was inapplicable to the separate coverage part available under the E&O Endorsement.  The court rejected the insured's argument, reading the policy as a whole and concluding that the Assault or Battery Exclusion applied to the E&O Endorsement:

13

> Simply put, there is no conflict between the contract terms. The assault or battery exclusion limits the Commercial General Liability Part, which *includes* the E&O coverage. And, although the E&O endorsement establishes coverage for professional liability, it is subject to the same exclusions as other coverage in the Commercial General Liability Coverage Part. To conclude otherwise violates the rules of contract construction and finds ambiguity where there is none.

Id. at 342; see also CWC Builders, Inc. v. United Specialty Ins. Co., 134 F. Supp. 3d 589 (D. Mass. 2015) (rejecting policyholder's argument that exclusion applied only to products-completed operations coverage part rather than entire CGL coverage part).

The Indiana cases cited by USAG are neither analogous nor instructive. The holdings of Travelers Indemnity Co v. Summit Corp. of America, 715 N.E.2d 926 (Ind. Ct. App. 1999), and Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F.2d 1037 (7th Cir. 1992), simply stand for the proposition that an exclusion may apply to one section of an insurance policy but not apply to another section of the policy. TIG does not dispute that possibility. But that is not the situation presented here. The Abuse or Molestation Exclusion expressly states that it modifies the CGL Part. Coverage D is a section of the CGL Part. No leap of logic is necessary to conclude that the Abuse or Molestation Exclusion applies to Coverage D.

Likewise, FLM, LLC v. Cincinnati Ins. Co., 24 N.E.3d 444 (Ind. Ct. App. 2014), and Westfield Insurance Co. v. TCFI Bell SPE III, LLC, 2019 WL 1434716 (S.D. Ind. Mar. 30, 2019), conclude that coverage for a particular claim may possibly exist under two coverage parts of an insurance policy. Again, this is not the situation at hand. There is no possibility of overlapping coverage because USAG is not entitled to coverage under *any* section of the 2001 Policies.

The Abuse or Molestation Exclusion expressly precludes coverage for abuse claims under the CGL Part. As a result, USAG bargained for a separate Abuse Coverage Form under the 2001 Policies. As discussed in more detail in section III.B. below, USAG cannot satisfy the requirements to obtain coverage for the pending Sexual Abuse Claims under the Abuse

Coverage Form.  USAG cannot be permitted to retroactively modify the terms of the CGL Part so as to resurrect coverage that was expressly excluded under the policies.  USAG's interpretation—that USAG is entitled to broad abuse or molestation coverage for athletes under Coverage D for no extra premium despite negotiating a separate Abuse Coverage Form for an added premium—is not logical or reasonable and does not harmonize the provisions of the policy as a whole.  Accordingly, the Abuse or Molestation Exclusion must be enforced as written to apply to the CGL Part of the 2001 Policies, including Coverage D.[4]

## B. The Sexual Abuse or Molestation Liability Coverage Form

In a single sentence in its moving brief, USAG glosses over the fact that the 2001 Primary Policy contains a separate Abuse Coverage Form, which served as the sole source of coverage for claims arising from sexual abuse or molestation.[5]  USAG does not provide a copy of the endorsement as an exhibit to its motion, and it does not request a declaration of coverage under the Abuse Coverage Form.  USAG's implicit admission that no coverage exists under the Abuse Coverage Form is correct.

The Abuse Coverage Form provides coverage for damages because of bodily injury caused by a "sexual abuse occurrence."  See Ex. 5 at MP-000563.  The term "sexual abuse occurrence" is defined to include all acts of sexual abuse or molestation "caused by one perpetrator, or by two or more perpetrators acting together" and also any negligent employment, investigation, supervision, training or retention of an employee or volunteer of the insured.  In addition:

> **All acts of "sexual abuse occurrence"** by an actual or alleged perpetrator or perpetrators, including "negligence employment" of such perpetrator or perpetrators, **shall be deemed and construed as one occurrence which takes place when the first act of sexual abuse or molestation occurs**, regardless of the number of persons involved, or the number of incidents or locations

---

[4] TIG notes that, to the extent this Court finds that the Abuse or Molestation Exclusion does not apply to Coverage D, other potential defenses exist thereunder, including whether USAG purchased and maintained participant accident insurance for each of the claimants.  TIG reserves all rights with respect to these defenses, which would require fact discovery and separate motion practice.

[5] As noted by USAG, the 2001 Excess Policy follows form to the terms of the 2001 Primary Policy.

involved, or the period of time during which the acts of sexual abuse or molestation took place."

Id. at MP-000570 (the "Deemer Clause"). The Insuring Agreement of the Abuse Coverage Form also requires that the "sexual abuse occurrence" take place during the policy period and expressly states: "***No coverage is afforded under this policy if the first act of a 'sexual abuse occurrence' took place outside the policy period***." Id. at MP-000565.

The timing requirement and Deemer Clause in the Abuse Coverage Form has been enforced as clear and unambiguous. See TIG Insurance Company v. Smart School, 401 F. Supp. 2d 1334, 1342-43 (S.D. Fla. 2005) ("This language is straightforward, comprehensive, and susceptible of only one reasonable interpretation: that the definition of 'sexual abuse occurrence' encompasses all of [the perpetrator's] acts of sexual misconduct . . . regardless of the individual circumstances pertaining to each act comprising a "sexual abuse occurrence."); TIG Ins. Co. v. Merryland Childcare & Dev. Ctr., Inc., No. 04-2666 B, 2007 WL 316571 (W.D. Tenn., Jan. 31, 2005) (holding that Deemer Clause was valid and enforceable such that all of the teacher's acts of sexual abuse "related back" to the first act of sexual abuse).

Here, it is undisputed that Larry Nassar's alleged abuse and molestation of athletes commenced many years before 2001. See, e.g., Ex. 1 at ¶ 9 ("From 1996 to 1999, under the guise of treatment, Defendant Nassar sexually assaulted, abused, and molested dozens of Plaintiffs . . . ."); Ex. 2 at ¶ 897 ("From approximately 1988 to 1991, under the guise of treatment, Nassar sexually assaulted, battered, abused, and molested Jane C35."). As the first act of a "sexual abuse occurrence" did not during the TIG policy period, there can be no coverage for the Nassar abuse claims (or other perpetrators committing abuse prior to 2001)

under the 2001 Policies.[6]  USAG seeks to circumvent this clear result by injecting sexual abuse coverage into the CGL Part, a risk that was excluded in the policy USAG purchased.

**IV.**    **U**SAG **IS** **N**OT **E**NTITLED **T**O **C**OVERAGE **U**NDER THE **1996 E**XCESS **P**OLICY

USAG next claims that an exclusion in the 1996 Excess Policy titled "Molestation Exclusion" does not apply to bar the sexual molestation claims pending against it.  Again, USAG seeks to parse the language of the exclusion in a manner that is contrary to its plain meaning and common sense.

**A.  The Molestation Exclusion Precludes Coverage**

The Molestation Exclusion states, "This insurance does not apply to Personal Injury arising out of or contributed to by the molestation of anyone."  See Ex. 7 at MP-000456.  The term "molestation" includes sexual conduct or misconduct, negligent hiring, employment, training or supervision, and any failure to investigate or report to authorities.  Id.  USAG correctly notes that the term "Personal Injury" is not defined in the 1996 Excess Policy.

USAG asserts that, because the term "Personal Injury" is bolded and capitalized, it should be attributed the definition of "Personal injury" in the underlying 1996 Primary Policy. USAG's argument fails.  First, while bolded language may signify a defined term in certain insurance policies, it is clear from the coverage form of the 1996 Excess Policy that defined terms are *not* bolded, but rather, identified in ALL CAPS.  See Ex. 7 at MP-000450.   Thus, Personal Injury should not be considered a "defined term" in the 1996 Excess Policy Molestation Exclusion and should be given its plain meaning.  Second, even if one were to consider the terms of the 1996 Primary Policy, defined terms in the 1996 Primary Policy are denoted by quotation marks, not bold font.  See Ex.8 at MP-000399 (explaining that "words and phrases that appear in quotation marks have special meaning.  Refer to DEFINITIONS

---

[6] Given USAG's failure to satisfy the threshold requirements of the Insuring Agreement, TIG does not address any other defenses to coverage under the Abuse Coverage Form but reserves all rights to do so to the extent further litigation proceeds on the issue.

(SECTION IV)").  Given these distinctions, USAG cannot establish as a matter of law that the two policies contemplated use of the same definition of "personal injury."

Under Indiana law, the "failure to define a contractual term does not necessarily make that term ambiguous."  Colonial Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind. 1997). In the absence of a definition of "personal injury" in the 1996 Excess Policy, the Court should "look to the usual and common meaning" of the term.  Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co., 983 N.E.2d 574, 579 (Ind. 2013).  Black's Law Dictionary defines "personal injury" as "any harm that is caused to a person, such as a broken bone, a cut, or a bruise; bodily injury" as well as "any invasion of a personal right, including mental suffering and false imprisonment."  Black's Law Dictionary 350 (2d Ed. 2001).

In sum, USAG's attack of the Molestation Exclusion based solely upon typography is not consistent with the definition format of the 1996 Excess Policy or the 1996 Primary Policy and does not constitute a reasonable interpretation of the provision.  Therefore, this Court should apply the Molestation Exclusion according to its plain and ordinary meaning to preclude coverage for bodily injury arising from molestation claims.

### B.  Regardless of the Exclusion, Coverage Also is Limited to Five Discrete Events

For the reasons discussed above, the Molestation Exclusion bars any potential coverage to USAG for the abuse claims.  Even to the extent that the policy did ***not*** contain a Molestation Exclusion, USAG still has not satisfied its burden to establish a right to coverage thereunder. USAG did not provide the full 1996 Excess Policy to the Court as an exhibit.  In a portion of the 1996 Excess Policy omitted by USAG, the policy provides that coverage is limited to specified events and dates ***only***:

```
                    SCHEDULE OF EVENT(S)
IT IS HEREBY UNDERSTOOD AND AGREED THAT COVERAGES PROVIDED BY THIS
POLICY APPLY ONLY TO THE EVENT(S) LISTED BELOW, AND ONLY FOR THE
SPECIFIED DATE(S) OF SAID EVENT(S):

JOHN HANCOCK 1996 GYMNASTICS TOUR
LOCATION: VARIOUS (ON FILE WITH COMPANY)
EVENT DATES: SEPTEMBER 16, 1996 TO NOVEMBER 18, 1996
```

18

<u>See</u> Ex. 7 at MP-000458.  Consistent with the event-based nature of the coverage, the inception date of the policy (September 16, 1996) coincided with the start date of the John Hancock gymnastics tour, as opposed to the traditional August 1 inception date of the other policies.

The 1996 Excess Policy contains three additional "Changes" endorsements, which add the following four events to the scope of coverage for certain additional premiums:

- 1997 John Hancock Tour of World Champions (1/6/97 to 2/10/97)

- 1997 International Team Championships (3/18/97 to 3/22/97)

- Women's Junior Olympic Championships (5/1/97 to 5/4/97)

- Men's Junior Olympic Championships (5/16/97 to 5/18/97)

<u>Id.</u> at MP-000444-446.

The clear and unambiguous language of the 1996 Excess Policy limits the potential scope of coverage to any claims alleging bodily injury at one of the five events listed above. USAG bears the burden of establishing that any particular claim arises from abuse during any of these five events.  Thus, even putting aside the Molestation Exclusion, TIG cannot be called upon to pay any claim arising from abuse or bodily injury taking place outside of these five discrete events.  USAG has not provided any evidence to satisfy this requirement, which would necessarily require discovery and a full factual record that is lacking at this time.

## V.    USAG IS NOT ENTITLED TO COVERAGE UNDER THE 1991 AND 1992 POLICIES

USAG does not dispute that the 1991 and 1992 Policies contain an Abuse or Molestation Exclusion.  Despite seeking coverage from TIG (and several other insurers) for the claims of hundreds of sexual abuse survivors, USAG remarkably takes the position that the Abuse or Molestation Exclusion does not apply to the "overwhelming majority" of these claims.  USAG's reasoning is without merit.

### A. The Care, Custody or Control Requirement

As a threshold matter, USAG does not contend that the Abuse or Molestation Exclusion is ambiguous. Nor could it. The Indiana Supreme Court, and other courts throughout the country, have enforced the Abuse or Molestation Exclusions to unambiguously preclude coverage for sexual abuse claims. See, e.g., Holiday Hospitality Franchising, Inc. v. AMCO Ins. Company, 983 N.E.2d 574 (Ind. 2013) (affirming summary judgment to the insurer under Abuse or Molestation Exclusion where motel employee molested guest).

USAG rests its argument upon a narrow and overly simplistic reading of the "care, custody or control" language of the exclusion. In particular, USAG asserts (without any evidentiary support) that the "overwhelming majority" of sexual abuse claims allege abuse at locations such as Michigan State University or Nassar's home such that the Abuse or Molestation Exclusion does not apply. See Moving Br. at 15. USAG's interpretation of "care, custody or control" in the context of this exclusion is contrary to the wealth of case law, including from Indiana.

In Holiday Hospitality, the Indiana Supreme Court explained that "[n]othing in the terms of [the policy] indicates that the phrase 'care, custody or control' is meant to have anything other than a plain and ordinary meaning" and that the "lack of ambiguity also negates any need to construe the clause against the drafting party." Id. at 579. The Court also instructed that the terms "care, custody or control" are used in the disjunctive, thus "not requiring all three to be satisfied for coverage to be excluded." Id. In addition, the concept of "care, custody or control" is not mutually exclusive, meaning that a person may be in the "care, custody or control" of multiple persons or entities. Id. at 580-81. The determination of whether a person was in the insured's "care, custody or control" is a "fact-sensitive inquiry." Id.

Contrary to USAG's suggestion, it is not necessary for a claimant to have been abused on USAG's premises to be deemed in its "care, custody or control" for insurance coverage

purposes.  See Valley Forge Ins. Co. v. Field, 670 F.3d 93 (1st Cir. 2012) (rejecting reliance upon definitions of "care, custody or control" from property context and explaining that "it is not a prerequisite to the application of the Abuse or Molestation Exclusion that an insured be the abuser, nor is it necessary that the abuse occur on the insured's premises"); Gemini Ins. Co. v. Earth Treks, Inc., 260 F. Supp. 3d 467 (D. Md. 2017) (concluding that claimant was in the "care, custody or control" of insured rock climbing gym even though abuse by coaches occurred away from the insured's facilities and in the claimant's home); Children's Aid Soc'y of Montgomery Cty. v. Great Am. Ins. Co., 1995 WL 251374 (E.D. Pa. Apr. 28, 1995) (applying dictionary definitions of "care" to mean "charge, supervision management: responsibility for or attention to safety and well-being" and "control" to mean "power or authority to guide or manage" and concluding that abused child was in Children's Aid Society's "care, custody or control" despite being placed with foster parents at the time of abuse).

In Earth Treks, the court gave special consideration to the fact that the alleged abusers were the victim's coaches.  Likening a coach to a teacher, whose "duty of care and custody extends beyond the confines of the schoolyard," the court concluded that the coaches were "able to exert influence" over the claimant by way of their positions of authority and trust as coaches of a minor.  Earth Treks, 160 F. Supp. 3d at 481.  The same can be said of Larry Nassar, a (previously) renowned USAG-affiliated trainer and physician, and other USAG coaches accused of abusing minor athletes.

The Sexual Abuse Claims assert that from 1986 to approximately 2015, Nassar "worked for USAG in various positions and capacities" and that USAG "regularly recommended . . . Nassar to its members as a reputable physician."[7]  See Ex. 1 at ¶¶ 6-7; 211; 1415.  It is alleged that USAG's website touted Nassar as being instrumental to the success of USAG and a

---

[7] TIG again notes that, due to the premature timing of USAG's motion, it is forced to rely upon allegations of the underlying lawsuits rather than actual facts developed in litigation or determined at trial as is customary in determining an insured's potential indemnity obligations.  TIG's argument is limited strictly to the scope of potential insurance coverage and not to any potential liability faced by USAG in defending the underlying claims.

recipient of distinguished awards. Id. ¶ 1536. The claimants further allege that they "relied on the recommendations" of USAG and USAG coach John Geddert and "continually sought treatment from . . . Nassar." Id. at ¶ 217. Claimants assert that they were "often under the direct supervision and control of USAG or its agents and were in fact *loco parentis* with USAG while receiving 'treatment' from . . . Nassar." Id. at ¶ 1412; Ex. 2 at ¶ 985. They further allege that they often were away from their parents and "in ***complete care, custody, and control*** of USAG." Id. at ¶ 1413; Ex 2. at ¶ 986 (emphasis added). Claimants allege that USAG owed them a "duty to use due care to ensure their safety . . . while interacting with their employees, representatives and/or agents" and that they had a "reasonable expectation that USAG was recommending competent and ethical physicians and trainers for medical treatment who would carry out said treatment without sexual assault, abuse, and molestation." See Ex. 1 at ¶¶ 1513, 1525. Claimants contend that they were "injured because they relied on Defendant USAG to provide employees or agents who would exercise reasonable skill and care." Id. at ¶ 1545.

Accordingly, USAG cannot satisfy its burden on summary judgment to show that any particular claimant was not in the "care, custody or control" of USAG or any other insured at the time of abuse simply by stating, generically and without any evidentiary support, that the majority of abuse occurred at other locations. It is undisputed that alleged abuse occurred at facilities owned or leased by USAG, at events sponsored by USAG, and at gyms that are members of USAG. It is also undisputed that athletes were referred to Nassar for medical treatment (regardless of location) by USAG and its coaches. Importantly, the definition of "named insured" under the policies includes "individuals performing the functions and/or duties of officials, directors, chairmen, spotters, and coaches" of USAG. See Ex. 3 at 03; Ex. 4 at MP-000031. Thus, a claimant need not be in the physical care, custody or control of USAG as a corporate entity, but could also be within the care, custody or control of any of its coaches or other representatives. Moreover, even if an alleged act of abuse occurred at Michigan State

22

University or another off-site location, the existing case law discussed above indicates that the claimants still may be deemed in the "care, custody or control" of USAG or its coaches and/or officials for purposes of the exclusion.

TIG submits that the Abuse or Molestation Exclusion in the 1991 and 1992 Policies applies on its face to preclude coverage for the Sexual Abuse Claims. However, TIG recognizes that discovery regarding the circumstances of the alleged abuse and a more complete record is necessary before the Court can determine whether any particular claimant was in the "care, custody or control" of USAG at the time of the abuse. USAG's request for summary judgment declaring that the Abuse or Molestation Exclusion "does not apply unless the claimant was in the care, custody or control of USAG or another insured at the time of abuse" is completely unhelpful as it simply reiterates the language of the exclusion and achieves nothing in terms of identifying the available scope of coverage. TIG could likewise cite other portions of the policies upon which to seek a "declaration." Therefore, USAG's request for relief under the 1991 and 1992 policies is not a proper basis for summary judgment and should be denied.

### B. If the Claimants Were Not in the Care, Custody or Control of USAG at the Time of Abuse, USAG Has Not Satisfied a Requirement for Coverage Under the Policies

To the extent that USAG is correct that that the "overwhelming majority of Sexual Abuse Claims allege abuse at locations where the claimants was *not* within USAG's 'care, custody or control,'" such as MSU or Nassar's home, USAG is not entitled to coverage under the TIG Policies for a separate reason. As a threshold matter, if the claimant was not in the care, custody or control of USAG at the time of the abuse, USAG has a strong defense to liability for such a claim. But even if some liability was attributable to USAG for such a claim, there would be no coverage under the TIG Policies. Each of the TIG Policies, including the 1991 and 1992 Primary Policies, contains language limiting the scope of "covered activities"

under the policies to the following (or substantially similar language): "All gymnastics events duly sanctioned by the United States Gymnastics Federation, and all gymnastics activities associated with those events such as clinics, warm-ups, demonstrations, etc., including travel to and from events." See Ex. 3 at 30; Ex. 4 at MP-000064. This language is clear and unambiguous. Therefore, TIG can have no obligation to provide coverage to USAG for any alleged abuse that took place outside of specific USAG sanctioned events or any activities or travel leading up to or following such events. Due to the undeveloped record before this Court, TIG does not move for summary judgment on this issue at this time but notes its relevance to USAG's claim for coverage under the policies.

## CONCLUSION

Under Indiana contract law, the abuse or molestation exclusions in the TIG Policies must be enforced as written to preclude coverage for Sexual Abuse Claims. USAG has not presented any other *reasonable* interpretation of the exclusions so as to create an ambiguity or to construe them against TIG. This Court cannot rewrite the terms of the TIG Policies to provide coverage that was not bargained for under the contracts. Therefore, it is respectfully requested that the Court deny USAG's motion for partial summary judgment in its entirety and grant TIG's cross-motion seeking declarations that: 1) the Abuse or Molestation Exclusion in the 2001 Primary Policy applies to Coverage D, Legal Liability to Participants; and 2) the Molestation Exclusion in the 1996 Excess Policy applies to bodily injury. Alternatively, if the Court is not inclined to grant TIG's cross-motion, genuine issues of material fact exist, which require discovery and preclude the entry of summary judgment in favor of USAG.

Dated: September 5, 2019            KENNEDYS CMK LLP

                                     /s/ Heather E. Simpson
                                    Heather E. Simpson (admitted *pro hac vice*)
                                    120 Mountain View Boulevard
                                    P.O. Box 650

Basking Ridge, NJ 07920
(908) 848-6300
heather.simpson@kennedyslaw.com

Scott P. Fisher, Attorney No. 26813-49
DREWRY SIMMONS VORNEHM, LLP
736 Hanover Place, Suite 200
Carmel, IN 46032
(317) 580-4848
(317) 580-4855 (Fax)
sfisher@dsvlaw.com

George R. Calhoun (admitted *pro hac vice*)
IFRAH LAW
1717 Pennsylvania Avenue NW, Suite 650
Washington, DC 20006
(202) 524-4147
george@ifrahlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | |
|---|---|
| George M. Plews<br>Gregory M. Gotwald<br>Tonya J. Bond<br>Christopher E. Kozak<br>Plews Shadley Racher & Braun LLP<br>gplews@psrb.com<br>ggotwald@psrb.com<br>tbond@psrb.com<br>ckozak@psrb.com<br><br>Catherine L. Steege<br>Melissa M. Root<br>Jenner & Block LLP<br>csteege@jenner.com<br>mroot@jenner.com<br><br>*Counsel for the Debtor USA Gymnastics* | James P. Moloy<br>Bose McKinney & Evans, LLP<br>jmoloy@boselaw.com<br><br>Kevin P. Kamraczewski<br>Law Offices of Kevin P. Kamraczewski<br>kevin@kevinklaw.com<br><br>Robert B. Millner<br>Ronald D. Kent<br>Susan M. Walker<br>Dentons US LLP<br>Robert.millner@dentons.com<br>Ronald.kent@dentons.com<br>Susan.walker@dentons.com<br>*Counsel for Virginia Surety Company, Inc.*<br>*f/k/a Combined Specialty Insurance Company* |
| Jeffrey B. Fecht<br>Riley Bennett Egloff LLP<br>jfecht@rbelaw.com<br><br>Cassandra L. Jones<br>Walker Wilcox Matousek LLP<br>cjones@wwmlawyers.com<br>*Counsel for RSUI Indemnity Company* | Wendy D. Brewer<br>Phillip A. martin<br>Fultz Maddox Dickens PLC<br>wbrewer@fmdlegal.com<br>pmartin@fmdlegal.com<br><br>Abigail E. Rocap<br>Bates Carey LLP<br>arocap@batescarey.com<br>*Counsel for Endurance American Insurance*<br>*Company* |
| Harley K. Means<br>Stephen J. Peters<br>Kroger Gardis & Regas, LLP<br>hmeans@kgrlaw.com<br>speters@kgrlaw.com<br><br>Eric D. Freed<br>Jonathan Toren<br>Cozen & O'Connor<br>efreed@cozen.com<br>jtoren@cozen.com<br>*Counsel for ACE American Insurance*<br>*Company f/k/a CIGNA Insurance Company* | Bruce L. Kamplain<br>Cynthia E. Lasher<br>Norris Choplin Schroeder, LLP<br>bkamplain@ncs-law.com<br>clasher@ncs-law.com<br>*Counsel for Western World Insurance*<br>*Company* |
| Ginny L. Peterson<br>Casey R. Stafford<br>Kightliner & Gray, LLP | Hans H. J. Pijls<br>Dinsomre & Stohl, LLP<br>Hans.pijls@dinsomre.com |

| | |
|---|---|
| gpeterson@k-glaw.com<br>cstafford@k-glaw.com<br><br>Nancy D. Adams<br>Mathilda S. McGee-Tubb<br>Laura Bange Stephens<br>Mintz Levin Cohn Ferris Glovsky & Popeo, PC<br>madams@mintz.com<br>msmcgree-tubb@mintz.com<br>lbstephens@mintz.com<br>*Counsel for Liberty Insurance Underwriters, Inc.* | *Counsel for National Casualty* |
| Susan N.K. Gummow<br>Igor Shleypak<br>Foran Glennon Palandeck Ponzi & Rudloff PC<br>Sgummow.fgppr.com<br>ishleypak@fgppr.com<br>*Counsel for American International Group, Inc. & American Home Assurance Company* | Karen M. Dixon<br>Michael M. Marick<br>Skarzynski Marick & Black LLP<br>Kdixon@skarzynski.com<br>mmarick@skarzynski.com<br><br>Joshua D. Weinberg<br>Katherine M. Hance<br>Shipman & Goodwin, LL)P<br>Jweinberg@goodwin.com<br>Khance&Goodwin.com<br>*Counsel for Great American Assurance Company* |
| U.S. Trustee<br>Office of U.S. Trustee<br>Ustpregion10.in.ecf@usdoj.gov | |

  /s/ Heather E. Simpson
Heather E. Simpson