**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| USA GYMNASTICS, INC., | Case No. 18-09108-RLM-11 |
| Debtor. | Adv. Proc. No. 1:19-ap-50012 |

| | |
|---|---|
| USA GYMNASTICS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ACE AMERICAN INSURANCE COMPANY f/k/a | ) |
| CIGNA INSURANCE COMPANY, GREAT | ) |
| AMERICAN ASSURANCE COMPANY, LIBERTY | ) |
| INSURANCE UNDERWRITERS INC., NATIONAL | ) |
| CASUALTY COMPANY, RSUI INDEMNITY | ) |
| COMPANY, TIG INSURANCE COMPANY, | ) |
| VIRGINIA SURETY COMPANY, INC. f/k/a | ) |
| COMBINED SPECIALTY INSURANCE | ) |
| COMPANY, WESTERN WORLD INSURANCE | ) |
| COMPANY, ENDURANCE AMERICAN | ) |
| INSURANCE COMPANY, AMERICAN | ) |
| INTERNATIONAL GROUP, INC., AMERICAN | ) |
| HOME ASSURANCE COMPANY, and DOE | ) |
| INSURERS, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF USA GYMNASTICS' COMBINED RESPONSE AND REPLY BRIEF IN
SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST
CHUBB AND IN OPPOSITION TO CHUBB'S CROSS-MOTION**

## I.    INTRODUCTION

Chubb's response arguments are weak. As to the excess policies, they are nearly sanctionable. Chubb cannot escape the dispositive fact that its excess policies expressly prohibit the inclusion of any terms that "relate to" the "limits of insurance" in the underlying policy. Despite this, Chubb attempts to incorporate a primary-policy term that Chubb itself chose to

- 1 -

label as a "Limit of Insurance." And, after arguing that its payment obligations under all three primary policies are limited to a single "Each Act" limit by the "Limit of Insurance" language in its first primary policy, Chubb turns around and asserts that only one of those three policies actually "pays" for purposes of excess coverage. The Court should reject Chubb's attempt to have its cake and eat it too.

In its opening brief, USAG showed how there are at least $33 million in collective limits available to resolve the Nassar claims under the three primary and three excess policies that Chubb sold to USAG. [Dkt. 175, at 9–15.] In its opposition brief, Chubb argues that those three years of policies collectively provide only a single year's worth of limits ($11 million) for the Nassar claims.

Chubb ignores that each policy represents a separate and independent contract that was issued for a one-year increment, after a separate underwriting process, for additional premium. Chubb also ignores that in exchange for receiving additional premium each year, it promised a separate set of "fresh" limits under each successive policy for losses that come within the scope of each policy's insuring language. USAG is entitled to full coverage under each of these six policies unless there is language in each one that clearly and unmistakably warns the limits would vanish under circumstances such as these.  No such language exists.

Turn first to the excess policies. The deemer clause at issue here is only found in a section of the primary policies that Chubb chose to label as "Limits of Insurance." The Chubb excess policies, however, expressly prohibit the incorporation of primary-policy terms if they "relate to . . . limits of insurance" or are "inconsistent with the terms of this policy." [*Id.* at 9–13; Dkt. 175-2, §I.A, at 1.] The deemer clauses, at a minimum, "relate to" the primary policies' limits of insurance both in form and substance. It also contradicts other terms of the excess

policies. [Dkt. 175, at 13–15.] Chubb has no sound answer to these points, and most of its brief is dedicated to avoiding the issue entirely. Its efforts are futile. They actually further reinforce the fact that USAG is correct.

Chubb is also wrong about the deemer clause in the three primary policies. That clause does not clearly and unmistakably provide that, under these circumstances, only a single year's worth of limits is available. Chubb leans heavily on the word "all" in the deemer clauses, construing it in isolation and claiming that it must encompass all abuse by Nassar, irrespective of whether that abuse took place before, during, or after that particular policy period. But unlike the cases upon which Chubb relies, Chubb's deemer clause does not say that. The deemer clauses here are silent about whether they apply beyond the temporal limits of their individual policy period. That silence alone is fatal to Chubb's position, as it chose not to include this language. *State Auto. Mut. Ins. Co. v. Flexdar*, 964 N.E.2d 845, 852 (Ind. 2012). What's more, when read in context with the other provisions in in that endorsement, it is clear that "all" refers to abuse covered under a single policy. It does not function as a stealth exclusion that makes the limits of two separate and additional policies vanish into thin air.

## II.    LEGAL STANDARD

A few points on how Indiana courts interpret insurance policies are worth repeating, as Chubb ignores them. The most essential principle of Indiana insurance law is that "[a]n insurance policy should be so construed as to effectuate indemnification . . . rather than to defeat it." *Masonic Acc. Ins. Co. v. Jackson*, 164 N.E. 628, 631 (Ind. 1929). All other canons of construction, to the extent they apply, are filtered through that lens—a recognition of the purpose of insurance, which is to protect the policyholder from unexpected loss. *See id.*; *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985).

- 3 -

Chubb also tries to frame this case in terms of "mutual intent," when the Indiana Supreme Court has repeatedly acknowledged that this is a fiction. *See Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996) (holding that insurance-policy construction is "driven by the fact that the insurer drafts the policy and foists its terms upon the customer. . . . [W]e buy their forms or we do not buy insurance."). The insurer's intent in writing the policy is what matters, not the policyholder's intent, since the policyholder has no say in the language used. Thus, if the insurer's intent to limit its liability is not stated <u>clearly</u> and <u>unmistakably</u> in the <u>text</u> of the <u>four corners</u> of the policy, then it loses the case. *Flexdar*, 964 N.E.2d at 852 (holding that an pollution exclusion that did not list TCE as a "pollutant" was ambiguous as applied to coverage for TCE contamination, even in the face of the insurer's argument that "any reasonable person would expect the release of chemical solvents into the soil [to constitute] pollution."). Indiana follows a strict clear-statement rule, and that rule has real teeth. *Id.* (Although "[i]nsurers are free to limit the coverage of their policies . . . such limitations must be <u>clearly expressed</u> to be enforceable.") (emphasis added). *Id.* Chubb ignores these basic cannons of interpretation. As discussed below, Chubb's purported "limitations" are not clearly expressed, and therefore are not enforceable. *Id.*

Chubb acknowledges—but then ignores—the long held rule that a policyholder only needs to presents a reasonable construction of the policy to win. *Eli Lilly & Co.*, 482 N.E.2d at 471. It does not have to the "best" construction—only a reasonable one. *Am. Econ. Ins. Co. v. Liggett*, 426 N.E.2d 136, 144 (Ind. Ct. App. 1981) ("Where <u>any</u> reasonable construction can be placed on a policy that will prevent the defeat of the insured's indemnification for a loss covered by general language, that construction will be given." (emphasis supplied).) While USAG's construction of the primary policies <u>is</u> the most reasonable—separate limits for each separate policy—Chubb fails to even argue, much less show, that USAG's position is unreasonable.

- 4 -

Finally, Chubb improperly suggests that the Court should look at all the policies collectively when analyzing these issues. [Dkt. 217 at 13.] Indiana has long held that an insurer cannot introduce extrinsic evidence of what an ambiguous policy means. *Eli Lilly & Co.*, 482 N.E.2d at 471. Such evidence would be admissible only if the text of the policy was ambiguous; and if the text of the policy is ambiguous, then it must be construed against the insurer. *Id.* Thus, although courts may construe policy terms in light of other clauses within the <u>same</u> policy, the insurer may not interpret <u>one</u> policy by reference to what <u>another</u> policy says. *Id.* The extrinsic-evidence rule requires that each policy stands on its own. *Id.* Chubb's response violates all of these guiding principles.

### III.    ARGUMENT

In its opening brief, USAG showed how there are at least $33 million in collective limits available to resolve the Nassar claims under the three primary and three excess policies that Chubb sold to USAG. [Dkt. 175, at 9–15.] This conclusion is mandated by the fact that the deemer clause at issue here is <u>only</u> found in a section of the primary policies that Chubb chose to label as "Limits of Insurance," and the Chubb excess policies expressly prohibit the incorporation of primary policy terms if they "relate to . . . limits of insurance" <u>or</u> "are inconsistent with the terms of the policy." [*Id.* at 9–13; Dkt. 175-2, §I.A, at 1.] The deemer clauses, at a minimum, "relate to" the primary policies' limits of insurance.

**A.    Chubb cannot avoid the fact that its excess policy ignores things that "relate to" the primary policies' limits of insurance.**

Chubb <u>chose</u> to label the deemer clauses here as "Limits of Insurance." [Dkt. 175-1, §3, at 1.] This is not a standard ISO form—Chubb admits that the form was a "manuscript" drafted by the company. [*See* Dkt. 217, 10.] But the excess policies require the policyholder to disregard <u>anything</u> in the primary policies that "relate to" that policy's Limit of Insurance. [Dkt.

175-2, §I.A, at 1.] This necessarily includes the deemer clause. That Chubb may now regret this drafting choice is no basis to deny coverage. As the Seventh Circuit reminded Chubb five years ago: "Although the Chubb defendants undoubtedly would prefer [coverage-limiting terms] under the Policy, when they have failed to do so in the insurance contract itself, this court will not rewrite the contract . . . to release the insurer from a risk it could have avoided through a more foresighted drafting of the policy." *Strauss v. Chubb. Indem. Co.*, 771 F.3d 1026, 1033 (7th Cir. 2014).

**1.      Chubb <u>decided</u> to label the deemer clauses here as "Limits of Insurance," and the excess policies explicitly ignore things that "relate to" the primary policy's Limits of Insurance.**

The primary policies' deemer clause is found in a three-paragraph section that Chubb chose to label as "Limits of Insurance." [Dkt. 175-1, §3, at 1.] Chubb's excess policies disregard terms in the primary policy if they are "inconsistent with provisions of this policy, or relate to . . . limits of insurance." [Dkt. 175-2, §I.A, at 1 (emphasis added).] Chubb never analyzes the crucial phrase "relate to"—and never quotes the full passage—in response to USAG argument, even though that phrase is at the core of USAG's position. [Dkt. 217, at 16–17; Dkt. 175, at 3, 12.] Neither does Chubb cite any cases to support its claim that "relate to" somehow unambiguously refers <u>only</u> to the numerical dollar limit ($10 million instead of $1 million). If it wanted to accomplish this narrow result, then it could have, and should have, said so in the excess policies.

The cases it does cite are distinguishable. Critically, none of them addressed the term "relate to" present in Chubb's policy. *Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 1999 WL 244642, at *3 (Conn. Super. Ct. Apr. 16, 1999) (stating that the follow-form clause applied "except with respect to limits of liability"); *Union Carbide Corp. v. Affiliated FM Ins. Co.*, 891 N.Y.S.2d 347, 349–50 (N.Y. App. Div. 2009) (observing that the terms of the instant excess

insurance followed form "except for limits of insurance") (citing *Md. Cas. Co. v. W.R. Grace & Co.*, 1996 U.S. Dist. LEXIS 4500, *9–10);[1] *Air & Liquid Sys. Corp. v. Allianz Underwriters Ins. Co.*, 2013 U.S. Dist. LEXIS 142359, *159, 163 (W.D. Pa. 2013) (observing that the underlying terms applied "except as regards the . . . the amount and limits of liability").

The term "relate to" is indisputably much broader than the terms "with respect to" or "as regards." It encompasses not only the limits, but all terms that are "specifically described . . . as a functional piece of the 'Limits of Insurance'" and that "as a matter of logic, operate[] that way in all cases." *Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1104 (N.J. 2004). Though *Benjamin Moore* did not involve an excess policy, its description of the nature of "limits" in an insurance policy is a reasonable and persuasive way to interpret the term "relate to" in Chubb's excess policies.

Chubb decided to label its deemer clause as "Limits of Insurance." It does not and cannot dispute that in its brief. "Courts must interpret an insurance policy as written, not as the insurance company wishes it were written." *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 707 (Mo. 2011). Chubb cannot rewrite the policy now just because it dislikes the outcome. *Id.*; *Strauss*, 711 F.3d at 1033. Its efforts to avoid this result are meritless, and the Court should reject them. This is not a close case.[2] All $30 million in excess limits are available for the Nassar

---

[1] *Union Carbide* is further distinguishable because it involved one three-year primary policy and a dispute over how the limits from that policy were incorporated into two co-excess policies at the fifth layer of insurance. *Union Carbide Corp. v. Affiliated FM Ins. Co.*, 947 N.E.2d 111, 112–13 (N.Y. 2011). In contrast, this case involves three individual one-year primary policies and three individual one-year excess policies.

[2] USAG's reference to *Hickman* was not a "personal attack" against Chubb—it was, and is, a statement of black-letter Indiana law on bad faith. Chubb's position on the excess policies has no "rational, principled basis" because it contravenes the plain text of those excess policies. Mere disagreement does not result in bad faith, but neither can Chubb avoid such penalties simply by

claims.

> **B.** **All three of Chubb's primary policies "pay," even under Chubb's unpersuasive attempt to get around the "relate to" argument.**

Chubb's only defense to USAG's "relate to" argument is to claim that "each excess policy only pays if the underlying primary policy pays." [Dkt. 217, at 15.] That is true, so far as it goes. But it does not go very far in this case. Chubb cannot avoid the fact that, under its own primary-policy argument, all three policies <u>do</u> pay—the payments are simply limited to one cross-policy "Each Act" limit. That limit gets exhausted, even under Chubb's view of its own primary policy. Thus, all three excess policy limits are available.

Chubb's "all-means-all" argument runs like this: Each of the three primary policies are triggered,[3] but the deemer clause takes Nassar-related claims from all three policies and lumps them all under one cross-policy "Each Act" limit of insurance. [Dkt. 217, at 11–14.] Stated differently, Chubb argues that the survivors first abused by Nassar in 1998, 1999, and 2000,

---

claiming that its position is reasonable without any policy language or case law to support it. [Dkt. 217, at 21.]

Indiana courts have imposed frivolous-litigation penalties on insurers for taking similarly unreasonable positions about coverage-limiting terms. *See* [Dkt. 175-4.] Though the standard is not identical to Indiana bad-faith law or to federal Rule 11 law, they are similar enough to inform each other. A different point in *Cefali* was disapproved in *Thomson v. Ins. Co. of N. Am.*, 11 N.E.3d 982, 1019–20 (Ind. Ct. App. 2014)—namely, pro-rata versus joint-and-several indemnity allocation. *Cefali* and the other cases USAG cited all imposed penalties on insurers for persisting in claims that had no legal foundation. That accurately describes Chubb's position here. Chubb's unreasonableness is even more damaging for USAG, a non-profit organization in bankruptcy, because USAG lacks the resources to fend off a "war of attrition" waged by well-heeled insurers.

Contrary to Chubb's claim, Indiana permits trial court opinions to be cited "for their persuasive value." *Ind. High Sch. Athletic Ass'n v. Durham*, 748 N.E.2d 404, 413 n.5 (Ind. Ct. App. 2001). The *United Minerals* case Chubb relies on for the contrary position simply reiterated the truism that trial court opinions are not binding <u>precedent.</u> *Ind. Dep't of Nat. Res. v. United Minerals, Inc.*, 686 N.E.2d 851, 857 & n.1 (Ind. Ct. App. 1997).

[3] Chubb does not dispute USAG's contention that all three primary policies are triggered. [Dkt. 217, at 12.]

respectively, were abused by a "single act," and that act is "subject to the Each Act limit of insurance." [*Id.*; Dkt. 175-1, §3.a, at 2.]

Even if this reading were correct, (and it is not) this argument fails to produce the result Chubb desires as to the excess policies. Chubb relies on language in the excess policies stating that they do not pay if the underlying insurance "does not pay" a loss. [Dkt. 217, at 15.] But even under Chubb's theory the underlying policies do cover and will pay the losses here. They only stop paying, under Chubb's theory, because the three primary policies' ostensible cross-policy "Each Act" limit of $1 million has been paid and reduced to zero. That is entirely distinct from a situation in which two of the three primary policies are not even triggered. And, of course, Chubb does not contend, nor can it contend, that all three primary policies' insuring agreements are not triggered by the facts of this case. [Dkt. 175-1, §1.b, at 1]; *see Eli Lilly & Co.*, 482 N.E.2d at 471 (Indiana follows the triple-trigger theory under CGL policies). Chubb's argument is, instead, that a cross-policy "Each Act" limit of insurance "cap[s] the risk underwritten with respect to a catastrophic series of related incidents." [Dkt. 217, at 10.] But even under Chubb's argument the primary policies still "cover" all the claims—they just pay until the claims exceed a single $1 million limit, rather than the three $1 million primary limits that USAG argues are available.

Contrast this with claims that the primary policies actually do not cover or "pay." Nassar abused other claimants after Chubb's policies expired. Those claims do not trigger Chubb's insuring agreements because "the 'bodily injury' or 'personal injury'" is not "caused by an act of 'physical abuse' or 'sexual misconduct' first committed during the policy period." [Dkt. 175-1 §1.b(2), at 1 (emphasis added).] The primary policy does not cover, nor will it pay, such claims. But the claims allegedly grouped by the deemer clause are covered claims. They simply hit

Chubb's ostensible cross-policy "Each Act" limits under the primary policies' lower total amount. Claims above the primary policies' limits are what the excess policies pay.

This is exactly how excess policies work. As the Indiana Supreme Court explained in *Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1063 n.10 (Ind. 2001), excess insurance covers liability above the limits of the primary policy, without regard to whether the primary insurer actually paid that sum. This is what Chubb's excess policies actually say. [Dkt. 217-5 §I(B) at 8. The excess policies state that if the underlying "limit has been reduced or exhausted solely by reason of losses paid thereunder," then the excess policy pays. [*Id.*] There can be no doubt that the underlying limit has been "exhausted" by reason of losses paid, even on Chubb's view of the three primary policies. Therefore, the excess policies kick in. At the very least, this is a plausible, reasonable way to construe how the deemer clauses interact with the excess policies. Since USAG's argument only needs to be reasonable, it controls as a matter of law. *Eli Lilly & Co.*, 482 N.E.2d at 471; *Asbury v. Ind. Union Mut. Ins. Co.*, 441 N.E.2d 232, 242 (Ind. Ct. App. 1982).

Chubb's distorted conception of limits and excess insurance is not a reasonable interpretation of the policies, and it would destroy virtually all coverage under every excess policy. Excess policies are triggered when underlying limits are exhausted. If the "does not pay" language means what Chubb contends—that the application of a single cross-policy "Each Act" "limit of insurance" to all three underlying policies means that the other two policies are not exhausted—then <u>no excess policy would ever provide coverage</u> for amounts in excess of the primary policy's limit, because the primary policy would not technically be "paying" those claims. That cannot be, and is not, the law.

- 10 -

## II.    Chubb cannot point to any clear text in its endorsement that applies the "deemer" language across multiple primary policy periods.

Chubb goes to great lengths to diminish the fact that it sold <u>three</u> separate primary policies to USAG.[4] Its argument that only one "Each Act" limit applies across all <u>three</u> policies rests on the mistaken assumption that a policy's terms must be interpreted by reference to <u>another</u> policy's terms. That is incorrect.

1.    *Chubb sold three separate primary policies to USAG, and it cannot restrict coverage under any of those three policies by looking to facts outside each individual contract.*

The Indiana Supreme Court has imposed a categorical prohibition on insurers offering extrinsic evidence to interpret the terms of an insurance policy. *Eli Lilly & Co.*, 482 N.E.2d at 471. An insurer must satisfy Indiana's clear-statement rule from the text written within the four corners of the policy before it can bar coverage. *Id.*; *Flexdar*, 964 N.E.2d at 848, 852. Chubb concedes that this is the law, stating in its brief that courts examine "the language used to express [the parties'] rights and duties". [Dkt. 217, at 7.] The meaning of policy terms can be informed only by the other terms <u>in that policy</u>, as it was in the case Chubb cites. *E.g.*, *Allstate Ins. Co. v. United Farm Bureau Mut. Ins. Co.*, 618 N.E.2d 31, 33 (Ind. Ct. App. 1993) (disagreeing with appellant insurer based in part on this rule).

But it does not follow that the terms in one policy can govern the meaning of those in

---

[4] While the primary policies had a consistent policy number, they are each separate and distinct policies. USAG paid separate premiums for each. [Dkt. 217-2 at 2; Dkt 217-3 at 3; Dkt. 217-4 at 2.] Each policy had separate policy periods. [Dkt. 217-2 at 2; Dkt 217-3 at 3; Dkt. 217-4 at 2.] The policies used different forms. [*Compare* Dkt. No. 217-2 at 7–9, *with* Dkt. No. 217-3 at 7–9 (deleting fifty-six forms/endorsements and adding sixty-eight forms/endorsements from the prior year), *and with* Dkt. No. 217-4 at 7–9 (deleting six forms/endorsements and adding twenty-five new forms/endorsements from the prior your). They were even issued by different companies. [*Compare* Dkt. 217-2 at 2; Dkt 217-3 at 3 (both issued by CIGNA Insurance Company), *with* Dkt. 217-4 at 2 (issued by ACE American Insurance Company).]  This is not a single policy as Chubb implies.

- 11 -

another. If the insurer wants to incorporate limitations on coverage from a separate policy, it can—but it <u>must</u> say so in express terms. *Flexdar*, 964 N.E.2d at 848, 852 (limitations must be "clearly expressed to be enforceable"). As the Indiana Supreme Court has held, "[f]or incorporation to occur, the incorporating contract must include a <u>clear and explicit</u> expression of intent to be bound by the auxiliary contract." *Care Grp. Heart Hosp. v. Sawyer*, 93 N.E.3d 745, 754–55 (Ind. 2018)) (emphasis added).[5] None of the Chubb policies incorporate, consolidate, or even refer to the separate "Each Act" limit present in the other policies. [Dkt. 175-1, §3.a, at 2.] Such silence does not satisfy the clear-statement rule required to create a limitation on coverage, *Flexdar*, 964 N.E.2d at 848, and it does not count as a "clear and explicit" incorporation or consolidation of the other policies' separate "Each Act" limit, *Sawyer*, 93 N.E.3d at 754–55.

This is the answer to Chubb's argument that the use of "the same policy period" in §3.c of the endorsement implies §3.a <u>must</u> restrict coverage under all policy periods. [Dkt. 217, at 13–14.] Even if this were a permissible inference[6] from the text—which it is not—given the explicit time-specific phrases used in §1.b(3)(b) and in §3.c, it is not the only reasonable interpretation. [*See* Dkt. 175-1, §§1.b(3)(b), 3.c, at 1–2.] By choosing not to include any time-specific phrases (expansive or restrictive) in § 3.a, while at the same time doing that very thing in other parts of the policy, Chubb chose to leave the deemer ambiguous. This is especially problematic considering that Chubb is trying to <u>restrict</u> coverage by implying language that it

---

[5] The same is true even if an insurer cites to coverage limitations from another coverage in the <u>same</u> policy. *Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 938–40 (Ind. Ct. App. 1999). In *Summit*, the Court of Appeals prohibited the insurer from inferring a pollution exclusion (located in Coverage A) into Coverage B, which did not contain the exclusion. *Id.*; *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1042 (7th Cir. 1992) (holding that such an attempt by an insurer is "nearly sanctionable").

[6] This is not actually a permissible reading of the insuring agreement, which provides an <u>expansion of</u> coverage for abuse that takes place after the policy period expires. [*See id.*, at §1.b(3)(b).] An insurer cannot read a coverage expansion to imply a hidden exclusion.

chose not to use when writing the endorsement. *Flexdar*, 964 N.E.2d at 848; *Kiger*, 662 N.E.2d at 947; *Summit*, 715 N.E.2d at 938–40. That is impermissible under Indiana law. *Id.*; *Indiana Ins. Companies v. Granite State Ins. Co.*, 649 F. Supp. 1549, 1557 (S.D. Ind. 1988) (Indiana law) (holding that unless allegedly restrictive language "clearly and unmistakably brings within its scope the particular [issue] that will bring it into play, the [language] will be ineffective to exclude or destroy coverage.").

In short, nothing in any given primary policy states that amounts paid under a different policy will reduce the limits available under that policy. Chubb cannot imply this result by lumping three different policies into one bucket and treating them as one policy.

2.    *Nothing in the three individual policies expands the deemer clause beyond the inception and termination date of __that__ particular policy*

With no Indiana law and no policy terms to support its argument, Chubb resorts to pummeling a straw man. [Dkt. 217, at 12 ("USAG argues that 'all' does not really mean 'all.'").] Search as Chubb may, that argument does not appear in USAG's brief. USAG agrees that "all means all" under the terms of <u>each policy</u>. If Nassar first abused ten survivors during a single Chubb policy year, "all" of that abuse is considered a "single act, subject to the Each Act limit of insurance." [Dkt. 175-1, §3.a, at 2 (emphasis added).] Without further explanation, however, this language is reasonably interpreted as applying only to the individual policy—especially since it appears, separately, in each successive policy. If all claims were "channeled" under a single policy's limits, there would be no need to describe a new "Each Act" limit in both successive endorsements. The later endorsements would have just referred back to the first policy.

Chubb's reliance on other cases to construe its deemer clause is unpersuasive. Chubb's deemer clause—again, located in the "Limits of Insurance" section of each of the three primary policies, states:

> All acts or omissions which cause or contribute to 'physical abuse' or 'sexual misconduct' by a single individual . . . shall be considered a single act, subject to the Each Act limit of insurance, regardless of the number of acts or omissions, number of persons injured, number of insureds responsible or number of locations involved.

[Dkt. 175-1, § 3.a, at 2 (emphasis added).] This clause is critically different from the facts in the cases Chubb cites.

Several of these cases explicitly slotted abuse occurring under any policy under the first policy sold by that insurer. For example, in *Church Mut. Ins. Co. v. First United Pentecostal Church of Parma*, No. 1:11CV2201, 2012 U.S. Dist. LEXIS 117607 (N.D. Ohio Aug. 21, 2012), the deemer clause specified that "all injury arising out of all acts of 'sexual misconduct or sexual molestation' by the same person . . . will be considered one claim, subject to the 'each claim' Limit of Insurance in force at the time the first act covered by this or any other policy issued by us occurred." *Id.* at *3 (emphasis added); *see also TIG Ins. Co. v. Smart Sch.*, 401 F. Supp. 2d 1334, 1339 (S.D. Fla. 2005) (construing a policy that provided that "[n]o coverage is afforded under this policy if the first act of 'sexual abuse occurrence' took place outside the policy period.") (emphasis added); *TIG Ins. Co. v. Merryland Childcare and Development Ctr., Inc.*, 2007 U.S. Dist. LEXIS 8190, *7–9 (W.D. Tenn. 2007) (same); *TIG Insurance Co. v. San Antonio YMCA*, 172 S.W.3d 652 (Tex. App. 2005) (same).[7]

These cases also contain deemer clauses that explicitly extend the deemer beyond the policy period. *San Antonio YMCA*, 172 S.W.3d at 657 ("All acts of 'Sexual Abuse Occurrence'

---

[7] Moreover, the deemer clause in these policies was in the coverage grant, not in a "Limits of Insurance" section—a structural fact that Indiana courts consider when analyzing insurance policies. *Masten v. AMCO Ins. Co.*, 953 N.E.2d 556, 572 (Ind. Ct. App. 2011) ("[B]ecause we construe insurance policies as a whole in each case, prior cases that focus upon similar or identical language in a policy are not necessarily determinative of later cases because the insurance policies as a whole are likely to differ.") (reversing judgment for insurer because the language structure was different than in a previous case).

by an actual or alleged perpetrator . . . shall be deemed and construed as one occurrence . . . regardless of . . . the period of time during which the acts of sexual abuse took place."); *Merryland Childcare*, 2007 U.S. Dist. LEXIS 8190, at *7–9 (same); *Smart Sch.*, 401 F. Supp. 2d at 1340 (same); *First United Pentecostal Church of Parma*, 2012 U.S. Dist. LEXIS 117607, at *10 ("Regardless of the number of acts of 'sexual misconduct or sexual molestation,' period of time over which such acts occur . . . all injury arising out of all acts of 'sexual misconduct or sexual molestation . . . will be considered one claim, subject to the 'each claim' Limit of insurance."). Chubb's policies lack the very "period of time" phrase upon which these decisions turn.

Chubb's further reliance on *Guide One* and the remainder of these cases is misplaced. In *GuideOne*, the parties actually agreed that the policyholder was entitled to one limit per policy period. *GuideOne Spec. Mut. Ins. Co. v. Doe*, 2008 U.S. Dist. LEXIS 119141, *2–3 (W.D. Mo. 2008). Other cases only involved one policy to begin with and are unhelpful where, as here, the Court is presented with three separate policies. *Preferred Risk Mut. Ins. Co. v. Watson*, 937 S.W.2d 148, 148–49 (Tex. Ct. App. 1997); *U.S. Underwriters Ins. Co. v. Hands of Our Future, LLC*, 2016 Del. Super. LEXIS 439, *2–3 (Del. Super. Ct. Aug. 19, 2016) (single non-sexual-abuse incident under a single policy); *Knowledge Learning Corp. v. Nat'l Union Fire Ins. Co.*, 2010 U.S. Dist. LEXIS 127506, *2 (D. Or. 2010) (single primary and single excess policy; issue in dispute involved whether the insured was obligated to pay multiple retentions).[8]

---

[8] *Knowledge Learning* is further unhelpful in predicting how the Indiana courts would construe the Chubb language here, because its holding rested on the conclusion that the insurer's argument was "the best reading" of the policy. *Id.* at *7. In contrast, under Indiana law, the insurer can prevail only if its reading is the only reasonable one. *Am. Econ. Ins. Co. v. Liggett*, 426 N.E.2d 136, 144 (Ind. Ct. App. 1981); *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 471 (Ind. 1985). The Seventh Circuit recently vacated an opinion that made this mistake while

Chubb's citation to *GuideOne* is particularly meritless. That court was only asked to decide "whether multiple acts of molestation of different persons by one minister during a policy year constitute a single occurrence." *GuideOne*, 2008 U.S. Dist. LEXIS 119141, at *3. The court emphasized that this was "[t]he only issue before the Court," and that the parties had already agreed that there was one limit for "each" of the three policies sold by the insurer. *Id.* at *2–3. The court held that there was only one occurrence per policy period, regardless of the number of survivors. *Id.* at *8–9. But this is no more than what USAG already has conceded here—that Chubb's policies consolidate "all" abuse that is first committed during each of the three policy periods, and thus, that there are only three primary limits available.

Chubb cannot twist *GuideOne*, the other cases, or its own policy language into an unambiguous mandate that one policy's limit governs three separate policies sold to USAG. It claims that the "period of time" clause in these other cases is "redundant" because "[a]ny abuse involving multiple acts, multiple victims and multiple locations is bound to involve an extensive period of time." [Dkt. 217, at 12.] That claim fails to prove Chubb's point. Abuse may recur multiple times during a policy period, or it may span multiple policy periods. Chubb's own cited cases establish that fact. *E.g.*, *Watson*, 937 S.W.2d at 148–49. But without an express statement that a deemer applies "regardless of the period of time" that the abuse occurs, the policyholder reasonably interprets the deemer as being restricted by the inception and termination dates of the policy itself.

Chubb's policy indisputably is missing language that expressly expands its scope beyond the temporal limits of the policy period. [Dkt. 175-1, §3.a, at 2 ("regardless of the number of acts

---

applying Indiana law. *Emmis Communs. Corp. v. Ill. Nat'l Ins. Co.*, 929 F.3d 441 (7th Cir. 2019), *vacated, op'n withdrawn*, 2019 U.S. App. LEXIS 24930 (7th Cir., Aug. 21, 2019).

or omissions, number of persons injured, number of insureds responsible or number of locations involved.").] As reflected by *Smart School*, *San Antonio YMCA*, and *Merryland Childcare*, had it wanted to extend the deemer clause beyond the temporal limits of the policy period, it could have done so in express terms. Chubb chose not to, and that fact is fatal to Chubb's coverage position. *Flexdar*, 964 N.E.2d at 851 (recognizing that under "basic contract principles, our decisions have consistently held that the insurer can (and should) specify what falls within [an] exclusion." Where an "insurer's failure to be more specific renders its policy ambiguous, [Indiana courts] construe the policy in favor of coverage." *Id.*

Chubb accuses USAG of trying to read a temporal element into the deemer clause. [Dkt. 217, at 12.] But that is exactly what <u>Chubb</u>, not USAG, is doing—Chubb wants to insert the phrase "regardless of the period of time" or "regardless of the policy period" into the deemer clause because Chubb elected not to include that language when it wrote the policy. [Dkt. 175-1, §3.a.] Under Indiana law, an insurer is not permitted to limit coverage by inferring the existence of terms that it chose not to write in the policy. *Flexdar*, 964 N.E.2d at 848; *Summit*, 715 N.E.2d at 938–40. USAG is simply reading the deemer clause as Chubb wrote it—and as written, it contains no temporal language. [Dkt. 175-1, §3.a, at 2.] At the very least, it is reasonable for USAG to read this clause and conclude that the limit is bounded by the policy period itself, rather than extending across multiple, unreferenced policy periods. That reasonable, coverage-preserving interpretation governs as a matter of law. *Eli Lilly & Co.*, 482 N.E.2d at 471; *Liggett*, 426 N.E.2d at 144.

## CONCLUSION

The U.S. Supreme Court often remarks that "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001). Chubb is attempting to stuff a $22 million coverage elephant into a mousehole, and the elephant clearly does not fit. Indiana does not permit an insurer to do this. *Nat'l Mut. Ins. Co. v. Curtis*, 867 N.E.2d 631, 635–37 (Ind. Ct. App. 2007). This Court should not allow it either.

In sum, Chubb's arguments fail. The Court should **GRANT** USAG's motion and **DENY** Chubb's cross-motion. The Court should declare that: (1) all three of Chubb's excess limits are available for the Nassar-related claims, as well as for claims related to other perpetrators, and (2) Chubb must provide one "Each Act" limit for each separate perpetrator in each of its primary policy periods (up to its aggregate limit).

September 12, 2019

Respectfully Submitted,

/s/ *Christopher E. Kozak*
George M. Plews (#6274-49)
Gregory M. Gotwald (#24911-49)
Tonya J. Bond (#24802-49)
Christopher E. Kozak (#35554-49)
PLEWS SHADLEY RACHER & BRAUN LLP
1346 N. Delaware St.
Indianapolis, IN 46202-2415
(317) 637-0700
gplews@psrb.com
ggotwald@psrb.com
tbond@psrb.com
ckozak@psrb.com

-and-

JENNER & BLOCK LLP
Catherine L. Steege (admitted *pro hac vice*)
Dean N. Panos (admitted *pro hac vice*)
Melissa M. Root (#24230-49)
353 N. Clark Street
Chicago, Illinois 60654
(312) 923-2952
csteege@jenner.com
dpanos@jenner.com
mroot@jenner.com

*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2019, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System.  Parties may access this filing through the Court's system.

| | |
|---|---|
| Scott P. Fisher<br>Drewry Simmons Vornehm, LLP<br>sfisher@DSVlaw.com<br><br>George R. Calhoun V<br>Ifrah PLLC<br>george@ifrahlaw.com<br>*Counsel for TIG Insurance Company* | James P. Moloy<br>Bose McKinney & Evans LLP<br>jmoloy@boselaw.com<br><br>Kevin P. Kamraczewski<br>Law Offices of Kevin P. Kamraczewski<br>kevin@kevinklaw.com<br><br>Robert B. Millner<br>Ronald D. Kent<br>Susan M. Walker<br>Dentons US LLP<br>robert.millner@dentons.com<br>ronald.kent@dentons.com<br>susan.walker@dentons.com<br>*Counsel for Virginia Surety Company Inc.,*<br>*f/k/a Combined Specialty Insurance Company* |
| Jeffrey B. Fecht<br>Riley Bennett Egloff LLP<br>jfecht@rbelaw.com<br><br>Cassandra L. Jones<br>Walker Wilcox Matousek LLP<br>cjones@wwmlawyers.com<br>*Counsel for RSUI Indemnity Company* | Wendy D. Brewer<br>Phillip A. Martin<br>Fultz Maddox Dickens PLC<br>wbrewer@fmdlegal.com<br>pmartin@fmdlegal.com<br><br>Abigail E. Rocap<br>Bates Carey LLP<br>arocap@batescarey.com<br>*Counsel for Endurance American Insurance*<br>*Company* |
| Harley K. Means<br>Stephen J. Peters<br>Kroger Gardis & Regas, LLP<br>hmeans@kgrlaw.com<br>speters@kgrlaw.com<br><br>Eric D. Freed<br>Cozen & O'Connor<br>efreed@cozen.com<br>*Counsel for ACE American Insurance*<br>*Company f/k/a CIGNA Insurance Company* | Bruce L. Kamplain<br>Cynthia E. Lasher<br>Norris Choplin Schroeder LLP<br>bkamplain@ncs-law.com<br>clasher@ncs-law.com<br>*Counsel for Western World Insurance*<br>*Company* |

| | |
|---|---|
| Ginny L. Peterson<br>Casey R. Stafford<br>Kightlinger & Gray, LLP<br>gpeterson@k-glaw.com<br>cstafford@k-glaw.com<br><br>Nancy D. Adams<br>Mathilda S. McGee-Tubb<br>Laura Bange Stephens<br>Mintz Levin Cohn Ferris Glovsky & Popeo, PC<br>nadams@mintz.com<br>msmcgee-tubb@mintz.com<br>lbstephens@mintz.com<br>*Counsel for Liberty Insurance Underwriters, Inc.* | Hans H. J. Pijls<br>Dinsmore & Shohl LLP<br>Hans.pijls@dinsmore.com<br>*Counsel for National Casualty Company* |
| Susan N.K. Gummow<br>Igor Shleypak<br>Foran Glennon Palandech Ponzi & Rudloff PC<br>sgummow@fgppr.com<br>ishleypak@fgppr.com<br>*Counsel for American International Group, Inc. & American Home Assurance Company* | Karen M. Dixon<br>Michael M. Marick<br>Skarzynski Marick & Black LLP<br>kdixon@skarzynski.com<br>mmarick@skarzynski.com<br><br>Joshua D. Weinberg<br>Katherine M. Hance<br>Shipman & Goodwin LLP<br>jweinberg@goodwin.com<br>khance@goodwin.com<br>*Counsel for Great American Assurance Company* |
| U.S. Trustee<br>Office of U.S. Trustee<br>ustpregion10.in.ecf@usdoj.gov | Catherine L. Steege<br>Melissa M. Root<br>Jenner & Block LLP<br>csteege@jenner.com<br>mroot@jenner.com<br>*Counsel for Debtor USA Gymnastics* |

/s/ *Christopher E. Kozak*
Christopher E. Kozak