# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>USA GYMNASTICS, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 18-09108-RLM-11<br><br>Adv. Proc. No. 1:19-ap-50012 |

USA GYMNASTICS, INC., )
)
Plaintiff, )
)
vs. )
)
ACE AMERICAN INSURANCE COMPANY f/k/a )
CIGNA INSURANCE COMPANY, GREAT )
AMERICAN ASSURANCE COMPANY, LIBERTY )
INSURANCE UNDERWRITERS INC., NATIONAL )
CASUALTY COMPANY, RSUI INDEMNITY )
COMPANY, TIG INSURANCE COMPANY, )
VIRGINIA SURETY COMPANY, INC. f/k/a )
COMBINED SPECIALTY INSURANCE )
COMPANY, WESTERN WORLD INSURANCE )
COMPANY, ENDURANCE AMERICAN )
INSURANCE COMPANY, AMERICAN )
INTERNATIONAL GROUP, INC., AMERICAN )
HOME ASSURANCE COMPANY, and DOE )
INSURERS, )
)
Defendants. )

## PLAINTIFF USA GYMNASTICS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO TIG INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

USA Gymnastics' ("USAG") motion for partial summary judgment should be granted, and TIG's cross-motion should be denied. USAG's motion seeks three limited declarations about the interpretation of five TIG policies. USAG's interpretation of these policies does not require "dissection;" nor is it the result of some concoction of loopholes. It is TIG—not

USAG—that proposes a radical reconstruction of its own policies. TIG's arguments violate basic principles of insurance policy construction and ignore the scope of USAG's actual proposed declarations.

First, for the 2001 primary policy, TIG asks the Court to ignore the policy's plain, unambiguous language. Specifically, TIG asks the Court to ignore an entire clause in the 2001 Abuse or Molestation Exclusion ("AME") that expressly limits its application to Coverages A and B in the CGL Form. The power to interpret insurance policies, however, does not extend to changing their terms. The AME is not found in, and does not apply to, Coverage D. Courts cannot rewrite policies. But that is precisely what TIG is asking the Court to do here.

Second, for the 1996 excess policy, TIG seeks to apply a "personal injury" molestation exclusion to "bodily injury" claims—even though the definition of "personal injury" excludes "bodily injury." Rather than incorporating the definition of "personal injury" from the underlying TIG primary policy—as the excess policy requires—TIG asks (in an unusual twist for an insurer) that the term be deemed ambiguous and defined by its dictionary definition. But even if the Court were to consider TIG's proffered definition (and as a matter of Indiana law it should not), TIG's dictionary definition actually supports USAG's argument. The dictionary definition of the term "personal injury" includes two options: one defines the term as including "bodily injury," but the other definition does not. Because Indiana law provides that when a term can be construed in two ways—one of which favors coverage and one of which does not—the court must use the one that favors coverage. Thus, no matter how TIG spins it, the term "personal injury" in its 1996 AME does not include "bodily injury." Thus, the 1996 AME does not exclude claims for "bodily injury."

And third, for the 1991 and 1992 policies, TIG exaggerates the scope of the requested

declaration. USAG simply seeks a declaration that the AME in the 1991 and 1992 TIG policies does not apply unless the claimant was in the "care, custody or control" of USAG or another insured at the time of the abuse. TIG does not even oppose this final requested declaration. Instead it focuses on factual issues that are not presently before the Court—issues this Court should not decide at this time.

In the end, TIG's arguments are unpersuasive, unreasonable, and unavailing. The Court should grant USAG's motion for partial summary judgment and issue the following three declarations for the additional reasons discussed below.

### Requested Declaration #1:  The AME in the 2001 TIG policy applies only to Coverages A and B and does not apply to Coverage D (Legal Liability to Participants) or any other coverage.

The 2001 TIG primary policy requires TIG to defend and indemnify claims seeking damages "because of 'bodily injury' to any 'participant'." This coverage is provided by Coverage D of the "Commercial General Liability Coverage Form." TIG does not dispute that this coverage applies to the Sexual Abuse Claims at issue. Instead, it claims that the AME excludes such claims from Coverage D even though the AME applies—explicitly—only to coverages A and B. TIG's attempt to rewrite this clear and unambiguous language fails for two reasons.

First, the AME is expressly limited to Coverage A and Coverage B. TIG does not challenge this. Instead, it claims that the general "prefatory language" (outlined in red in its brief and as set forth below) somehow overrides the specific express limitation in the exclusion. TIG is wrong.

Rather than enforce the plain language of the AME in the 2001 primary policy, TIG instead asks the Court to erase this limitation from the AME so that it would look like this:

3

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> ~~The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability.~~
>
> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:
>
> 1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
>
> 2. The negligent:
>    a. Employment;
>    b. Investigation;
>    c. Supervision;
>    d. Reporting to the proper authorities, or failure to so report; or
>    e. Retention;
>
>    of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.

[*See* TIG's Memorandum of Law in Opp. of USAG's Mot. for Part. Summ. J ("TIG Memo."), Dkt. 215 at 17[1] (strike through added).] It would delete the sentence that says the exclusion is added to Coverage A and B. But courts cannot "rewrite insurance policies." *Bowen v. Monroe Guar. Ins. Co.*, 758 N.E.2d 976, 980 (Ind. Ct. App. 2001). "The power to interpret insurance policies does not extend to changing their terms." *Keckler v. Meridian Sec. Ins. Co.*, 967 N.E.2d 18, 28 (Ind. Ct. App. 2012) (citation omitted). And courts certainly cannot interpret an unambiguous provision in a way, like TIG proposes here, that destroys coverage. *See American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996).

Had TIG intended the AME to modify the <u>entire</u> CGL Form—rather than just Coverages A and B—it would have either listed all the coverages separately[2] or simply omitted the limiting language.[3] In fact, TIG did just that with several other endorsements. For example, TIG's

---

[1] Unless stated otherwise, citations to page numbers on ECF documents refer to the Court-stamped page numbers in the document header.

[2] Under the *expression unius* canon of interpretation, "to express or include one thing implies the exclusion of the other." *Steve Silveus Ins., Inc. v. Goshert*, 873 N.E.2d 165, 174–75 (Ind. Ct. App. 2007).

[3] TIG's "ISO form" excuse is unavailing. [TIG Memo., Dkt. 215 at 18.] Just because Coverage D is not a standard coverage in "ISO CGL forms" does not mean the rules of insurance policy construction go out the window. TIG wrote the language—not USAG—thus the policy wording is TIG's choice. USAG did not negotiate it. *See Kiger*, 662 N.E.2d at 947 ("The insurance companies write the policies; we buy their

asbestos exclusion includes no such limiting language and therefore applies to all coverages in the CGL Form:

**Exclusion - Asbestos Products**

This endorsement modifies changes the policy. Please read it carefully.

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to:

1. "Bodily injury" resulting from exposure to asbestos or any product containing asbestos;

2. "Property damage" resulting from the handling, processing, manufacturing, installing, removing, disposal, sale or distribution of asbestos or any product containing asbestos; or

3. Any loss, cost or expense arising out of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing asbestos or any product containing asbestos, whether done pursuant to government directive or request, or for any other reason.

[TIG 2001 primary policy, Dkt. 2-5, Tab 15 at 535.] The same is true for the fireworks exclusion [*id*. at 537], the additional insureds endorsement [*id.* at 538], and others. TIG knew how to apply endorsements to the entire CGL Form without limitations. It elected not to do so with the 2001 AME.

Indiana courts have made it very clear that insurers may not "imply" that an exclusion applicable to, or found in, one part of a liability policy applies to a separate coverage part. As USAG noted in its opening brief, in *Travelers Indem. Co. v. Summit Corp.*, 715 N.E.2d 926, 940 (Ind. Ct. App. 1999), the insurer argued that a pollution exclusion found in Coverage A (bodily injury and property damage) but not in Coverage B (personal injury) nonetheless should apply to Coverage B. The court noted that there was no such exclusion in Coverage B, and that Coverage

---

forms or we do not buy insurance."). Plus, nothing required TIG to use the ISO-form of the AME. All TIG had to do was add the language of the AME into the "Legal Liability to Participants" endorsement. It did not do so. It cannot do so now.

5

B, like Coverage D here, had its own exclusions. The Court of Appeals held that an exclusion could not be implied. *Id.* at 938–40. An earlier Seventh Circuit case reached the same conclusion, and declared that the insurer's attempt to imply the exclusion into a coverage where it was not found was "nearly sanctionable." *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1042 (7th Cir. 1992).

TIG tries to sidestep *Summit* and *Pipefitters* by claiming that its AME applies to Coverage D because it is applicable to the entire "CGL part." [TIG Memo., Dkt. 215 at 19.] But that renders the two sentences expressly applying it to Coverage A and B surplusage. Insurance policies may not be construed to render any provision surplusage. *State Farm Mut. Auto. Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016) ("[W]hen construing the language of an insurance policy, a court 'should construe the language of an insurance policy so as not to render any words, phrases or terms ineffective or meaningless.'" (citation omitted)). Those sentences tell us which specific portion of the CGL Form the AME applies to, and they control over any general language in the policy subpart's heading.[4]

TIG's reliance on non-Indiana cases *Capital Indemnity* and *CWC Builders* is misplaced. These cases do not involve endorsements that are limited to specific coverages within the CGL Form like the AME here. Instead, these cases involved endorsements expressly applicable to the entire CGL part, like the asbestos and fireworks exclusions mentioned above. In *Capital Indemnity*, for example, the assault and battery exclusion at issue stated that it "change[d] the policy terms for the Commercial General Liability Coverage Part" without limiting itself to specific coverages in the CGL form. 581 S.E.2d 339, 341 (Ga. Ct. App. 2003). Indeed, the

---

[4] TIG's attempt to apply the 2001 AME to the entire CGL Form based on its excuse that Coverage D is not included in the standard ISO form is unpersuasive. Coverage C (medical payments) is a standard coverage in ISO CGL forms. If TIG intended to exclude all coverages provided in the CGL form, why did it limit the AME to Coverages A and B and not expand it to Coverage C?

6

schedule listing this exclusion stated that it was "applicable to all premises and coverages." *Id.* at 342–43.  Likewise, in *CWC Builders*, the policyholder tried to argue that the "residential construction exclusion" did not apply to the CGL coverage part even though the exclusion explicitly provided that it modified the "Commercial General Liability Coverage Part."  134 F. Supp. 3d 589, 598, 601 n.14 (D. Mass. 2015).  These cases do not help TIG.

Second, the fact that USAG purchased the "Sexual Abuse or Molestation Liability Coverage Form"—which is separate from the "Commercial General Liability Coverage Form"—does not somehow eliminate coverage for the Sexual Abuse Claims under the CGL Form.  As TIG concedes in its descriptions of *FLM* and *TCFI Bell*, "coverage for a particular claim may possibly exist under two coverage parts of an insurance policy."  (TIG Memo., Dkt. 215 at 19.)  That is the case here.  USAG can seek coverage for these claims under either the Sexual Abuse or Molestation Liability Coverage Form or Coverage D of the CGL Form.  *FLM, LLC v. Cincinnati Ins. Co.*, 24 N.E.3d 444, 456–58 (Ind. Ct. App. 2014) (agreeing "with FLM in all respects" that the policyholder may seek coverage under Coverage A or Coverage B, or both, so long as the coverages apply to the claim).  It has chosen Coverage D.[5]

TIG's decision to add the AME to the 2001 policy actually proves that the CGL Form encompasses claims for sexual abuse and molestation.  Otherwise, why would TIG need to add such an exclusion?  As the Indiana Supreme Court explained, "[i]f the insuring provisions do not confer an initial grant of coverage, then there would be no reasons for a [name any] exclusion." *Sheehan Construction Co. v. Cont'l Cas. Co.*, 935 N.E.2d 160, 171 (Ind. 2010) ("[These] policies begin with a broad grant of coverage, which is then limited in scope by exclusions." *Id.*

---

[5] For this reason, TIG's two-page analysis of the Sexual Abuse or Molestation Liability Coverage Form at pages 20–21 of its brief is irrelevant.

7

at 162 (citation omitted)).  TIG understood that its policies covered sexual abuse claims.[6]  It cannot pretend otherwise now.

The correct conclusion is plain.  TIG's CGL Form provides broad coverage that encompasses sexual abuse claims.  The 2001 AME eliminates this coverage under Coverage A (bodily injury and property damage) and Coverage B (personal injury).  It does not eliminate this coverage under Coverage D (legal liability to participants) or any other coverage.  The Court should declare "that the AME in the 2001 TIG policy applies only to Coverages A and B and does not apply to Coverage D (Legal Liability to Participants) or any other coverage."

### Requested Declaration #2: The AME in the 1996 TIG excess policy does not apply to "bodily injury" claims such as the Sexual Abuse Claims.

The 1996 excess policy provides the same coverage—with some limitations—as the underlying 1996 primary policy.  That 1996 primary policy covers sexual abuse claims.  TIG does not dispute this.  Instead, it argues that the molestation exclusion in the excess policy ("1996 AME")—which excludes coverage for "Personal Injury" arising from the molestation of anyone—somehow also excludes coverage for claims of bodily injury.  TIG's proposed reading of this policy defies universal rules of excess policy construction, ignores the plain language of the policies, and misconstrues the dictionary definition of "personal injury."  For all these reasons, TIG's proposed construction fails.

The term "personal injury" in the 1996 excess policy has the same meaning as it does in

---

[6] TIG's attempt to use premiums to eliminate coverage for sexual abuse claims under Coverage D is meritless.  [TIG Memo., Dkt. 215 at 19–20.]  Contrary to TIG's suggestion, Coverage D was not free.  The cost for this coverage was included in the base rate of $87,560.  [TIG 2001 primary policy, Dkt. 2-5, Tab 15 at 520.]  TIG's additional suggestion that the Sexual Abuse or Molestation Liability Coverage Form was intended to replace the coverage for sexual abuse claims excluded by the AME in the CGL Form is equally incorrect.  These coverages are different.  Coverage D is limited to bodily injury to "participants."  [*Id.* at 539.]  The Sexual Abuse Coverage Form applies to a broader class of claimants, but also contains its own limitations and exclusions.  [*Id.* at 564–570.]  TIG's attempt to equate the AME with the Sexual Abuse or Molestation Liability Coverage Form fails.

8

the primary policy. The 1996 excess policy expressly incorporates all "Definitions," including the definition of "personal injury," from the 1996 primary policy:

> **SECTION I**
> **INSURING AGREEMENTS**
>
> A. COVERAGE
>
> This insurance only applies to injury or damage covered by the UNDERLYING INSURANCE. WE will pay on YOUR behalf the ULTIMATE NET LOSS in excess of the applicable limits of the UNDERLYING INSURANCE listed in the attached Schedule of UNDERLYING INSURANCE (whether such insurance is collectable or not). If the UNDERLYING INSURANCE does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then WE shall not pay such loss.
>
> The Definitions, Terms, Conditions, Limitations, and Exclusions of the UNDERLYING INSURANCE, in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provision of this policy, or relate to premium, subrogation, any obligation to defend, the payment of expenses, limits of insurance, cancellation or any renewal agreement.

[TIG 1996 excess policy, Dkt. 2-5, Tab 12 at 448.] "Personal injury" is defined in the "Definitions" section of the primary policy as "injury, other than 'bodily injury'. . . ." [TIG 1996 primary policy, Dkt. 2-5, Tab 11 at 410.]

TIG urges the Court to again ignore the plain language of the policies by focusing on how defined terms are denoted differently across these two policies. This is irrelevant. That TIG compiled multiple forms—which used different stylistic techniques—to denote defined terms across these policies, does not undo the "follow-form" provision in the excess policy. *See PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 722 n.16 (Ind. Ct. App. 2004) ("It is well established in insurance law that 'a follow form excess policy incorporates by reference the terms of the underlying policy and is designed to match the coverage provided by the underlying policy.").

"Personal injury" is not defined anywhere in the excess policy. It is defined in the primary policy. The excess policy incorporates the definitions from the primary policy. It simply does not matter if "personal injury" is in bold letters or capitalized letters or pink letters in the excess policy. It is not defined in the excess policy. The coverage grant of the excess policy says that it incorporates the definitions of the primary policy. That "personal injury" is

9

capitalized and in bold rather than in quotes in the 1996 AME does not somehow render this term ambiguous and subject to judicial construction.  There can be no honest disagreement about how the term is defined in the AME.

Indiana case law agrees.  In *Erie Indemnity Company v. Estate of Harris*, the court rejected an invitation to construe an undefined term where the policy gave the term special meaning elsewhere in the policy.  99 N.E.3d 625 (Ind. 2018).  In *Estate of Harris*, the policy at issue denoted defined terms with bold font and by defining them in the "Definitions" section of the policy.  *Id.* at 629.  The disputed term—"others **we** protect"—was not denoted as a defined term.  *Id.* at 631.  The policyholder argued that because the term was undefined, it was susceptible to multiple interpretations and thus ambiguous.  *Id.*  The court disagreed.

The court initially noted that the "failure to define a term in an insurance policy does not necessarily make it ambiguous[.]"  *Id.* at 630 (quoting *Wagner v. Yates*, 912 N.E.2d 805, 810 (Ind. 2009)).  The failure to define a term just means "it has no exclusive special meaning" and courts can interpret it.  *Id.* at 630.  And that is precisely what the court did in *Estate of Harris*.  But rather than first resorting to dictionary definitions, the court held that the undefined term "others **we** protect" should be given the same meaning provided in the section of the policy titled **OTHERS WE PROTECT**, which listed different categories of individuals:

> We think it eminently reasonable for two phrases consisting of identical words and located near one another to share the same meaning.  While it is not a "definition" per se, the proximity and similarity between the phrases make it is reasonable to understand that the **OTHERS WE PROTECT** section serves as an explanatory list outlining who can be included in "others **we** protect.

*Id.* at 631.  The court concluded that it "believe[d] ordinary policyholders, looking at the four corners of the Policy, would agree that 'others **we** protect' means **OTHERS WE PROTECT**."  *Id.*

This analysis is even more compelling here. In both of the 1996 TIG policies, "personal injury" is denoted as a word with special meaning. In the primary policy, it is set off with quotation marks and defined. In the excess policy's molestation exclusion, it is bolded and capitalized. The excess policy says it incorporates the definitions of the primary policy. It is impossible that "ordinary policyholders, looking at the four corners of the [p]olicy," would not agree that **Personal Injury** means "personal injury." Or, in the words of Gertrude Stein: "A rose is a rose is a rose." Gertrude Stein, "Sacred Emily," *Geography and Plays* (1922).

TIG's efforts to brew up an ambiguity, even if allowed, actually would result in the same outcome. The term "personal injury" in Black's Law Dictionary includes two definitions. One includes "bodily injury;" one does not[7]:

> ***personal injury.*** *Torts.* **1.** In a negligence action, any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury. **2.** Any invasion of a personal right, including mental suffering and false imprisonment.

*Black's Law Dictionary* 350 (2d. ed. pocket 2001). Just because one of these definitions includes "bodily injury" does not mean TIG's interpretation is correct. Under Indiana law, the opposite is true. When an ambiguous term has two or more dictionary definitions, like here, Indiana courts adopt the definition that favors coverage. *Summit*, 715 N.E.2d at 937 (finding multiple dictionary definitions of undefined policy terms and construing those terms in favor of coverage); *see Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 471 (Ind. 1985).

Finally, TIG argues that USAG's motion should be denied because USAG "has not provided any evidence" that the bodily injury claims arose from abuse during any of five listed events in the excess policy. But neither USAG nor TIG asked the Court to determine that issue.

---

[7] TIG misquotes Black's Law Dictionary. TIG claims that "Black's Law Dictionary defines 'personal injury' as 'any harm that is caused to a person, such as a broken bone, a cut, or a bruise; bodily injury **as well as** "any invasion of a personal right, including mental suffering and false imprisonment." [TIG Memo. at 23.] But these two definitions are set off from another in separate sentences. This denotes a separate definition. TIG attempts to improperly blend <u>all</u> the definitions.

11

USAG merely seeks a declaration that the 1996 AME does not apply to "bodily injury" claims. This issue turns on the unambiguous language of the policies. TIG should not be allowed to dodge an unfavorable ruling on this limited legal question by improperly injecting factual issues that are not before the Court.

The 1996 AME in TIG's excess policy applies only to **Personal Injury**. Personal injury is a defined term in the underlying TIG primary policy. There, it means "injury, other than bodily injury . . . ." The excess policy expressly incorporates this definition. Even if it did not, it is reasonable for USAG to interpret **Personal Injury** (in the excess policy) to mean the same thing as "personal injury" (in the primary policy). In any event, even if the Court had to resort to dictionary definitions, TIG's proffered definition supports USAG's interpretation: that personal injury can be construed as something distinct from bodily injury. For all these reasons, USAG requests a declaration that "the AME in the 1996 TIG excess policy does not apply to 'bodily injury' claims such as the Sexual Abuse Claims."

### Requested Declaration #3: The AME in the 1991 and 1992 TIG policies does not apply unless the claimant was in the "care, custody or control" of USAG or another insured at the time of abuse.

TIG has flatly alleged that there is no coverage under the 1991 and 1992 primary policies for any sexual abuse claims. That is incorrect. The 1991 and 1992 TIG primary policies provide coverage for the Sexual Abuse Claims unless TIG can prove that the claimants were in the "care, custody or control" of USAG or another insured at the time of the abuse. USAG is entitled to a declaration confirming this coverage.

TIG exaggerates the scope of USAG's requested declaration. USAG did not seek a ruling as a matter of law that all abuse that occurred at Michigan State University or at Nassar's house was outside of USAG's "care, custody or control." That would require fact and legal

12

determinations not before the court. Rather, USAG seeks a narrow determination that adopts USAG's construction of the exclusion. That is, USAG seeks a ruling that coverage is not precluded unless TIG shows that the claimant was in the "care, custody or control" of USAG or another insured at the time of the abuse.

TIG offers no substantive response. TIG apparently agrees with USAG's proposed construction of the 1991 and 1992 AME, but discounts that any such ruling is needed. [TIG Memo., Dkt. 215 at 28 ("USAG's request for summary judgment declaring that the Abuse or Molestation Exclusion 'does not apply unless the claimant was in the care, custody or control of USAG or another insured at the time of abuse' is completely unhelpful *as it simply reiterates the language of the exclusion . . . .*").] To the contrary, such a ruling precludes TIG from arguing that the AME bars all coverage for sexual abuse regardless of how USAG might ultimately be found liable.[8]

USAG and TIG agree on one point. And that is "a more complete record is necessary before the Court can determine whether any particular claimant was in the 'care, custody or control' of USAG at the time of the abuse." [TIG Memo., Dkt. 215 at 28.] That issue is for a later day. Insurance cases should not decide factual issues that will be addressed in the underlying matters. *Harleysville Lake States Ins. Co. v. Granite Ridge Builders, Inc.*, No. 1:06-cv-397, 2007 U.S. Dist. LEXIS 41725, at *8–10 (N.D. Ind. 2007); *see also Old Republic Ins. Co. v. Chuhak & Tecson, P.C.*, 84 F.3d 998, 1002 (7th Cir. 1996). For now, the requested declaration will assist the parties because it rejects TIG's overbroad conclusion that "USAG is not entitled to coverage under the 1991 and 1992 policies." [TIG Memo., Dkt. 215 at 19

---

[8] A related point is that Nassar was not an "insured" under the policies. In footnote 13 of the opening brief, USAG explained that Nassar was not an employee of USAG, but rather a volunteer. Volunteers are not insureds under these policies. TIG again offers no response. TIG apparently agrees with this conclusion as well.

13

(Heading V).] Plainly, claims may well defeat that AME.

TIG suggests that under other policy provisions USAG would in any event lose coverage for any claimants <u>not</u> within its "care, custody and control." [TIG Memo., Dkt. 215 at 28–29.] TIG is wrong again. The two "policy changes" endorsements that TIG points to—which allegedly limit coverage to "all gymnastics events duly sanctioned by the United States Gymnastics Federation"—do not override the broad coverage grant in the policies. In those grants of coverage, TIG promised to "pay those sums that the insured become legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and "to defend any 'suit' seeking those damages." [TIG 1991 primary policy, USAG Ex. 7, Dkt. 176-7 at 12; TIG 1992 primary policy, Dkt. 2-5, Tab 2 at 39.] TIG then stated that the "insurance applies" only if the bodily injury or property damage is "caused by an 'occurrence' that takes place in the 'coverage territory'" and "occurs during the policy period." [*Id.*] None of these provisions limit coverage to "covered activities." If TIG intended to limit the scope of this coverage, it needed to do so "clearly and unmistakably." *Asbury v. Ind. Union Mut. Ins. Co.*, 441 N.E.2d 232, 242 (Ind. Ct. App. 1982.) Otherwise, this exclusion is unenforceable. *Id.*

But even if TIG was correct about the limited scope of the coverage, TIG would still have to prove that being a "sanctioned" event means that a claimant participating in that event is, as a matter of law, under the "care, custody or control" of USAG. TIG offers no support for that notion. This determination would, in any event, turn on facts in the underlying case not presently before the Court. This issue does not preclude the Court from issuing the requested declarations.

## CONCLUSION

In requesting these three declarations, USAG asks only that the policies be construed based on their plain and ordinary terms. If there is an ambiguity, USAG asks that it be construed in its favor and in favor coverage. This is precisely what every policyholder is entitled to under Indiana law. For all these reasons, USAG respectfully requests that the Court grant its motion for partial summary judgment and deny TIG's cross-motion for partial summary judgment.

Respectfully submitted,

/s/ *Gregory M. Gotwald*
George M. Plews (#6274-49)
Gregory M. Gotwald (#24911-49)
Tonya J. Bond (#24802-49)
Christopher E. Kozak (#P82156)
PLEWS SHADLEY RACHER & BRAUN LLP
1346 N. Delaware St.
Indianapolis, IN 46202-2415
(317) 637-0700
*Attorneys for USA Gymnastics*
gplews@psrb.com
ggotwald@psrb.com
tbond@psrb.com
sbaldwin@psrb.com
ckozak@psrb.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | |
|---|---|
| Scott P. Fisher<br>Drewry Simmons Vornehm, LLP<br>sfisher@DSVlaw.com<br><br>George R. Calhoun, V<br>Ifrah PLLC<br>george@ifrahlaw.com<br><br>Heather E. Simpson<br>Kennedys CMK LLP<br>heather.simpson@kennedyslaw.com<br>*Counsel for TIG Insurance Company* | James P. Moloy<br>Bose McKinney & Evans LLP<br>jmoloy@boselaw.com<br><br>Kevin P. Kamraczewski<br>Law Offices of Kevin P. Kamraczewski<br>kevin@kevinklaw.com<br><br>Robert B. Millner<br>Ronald D. Kent<br>Susan M. Walker<br>Dentons US LLP<br>robert.millner@dentons.com<br>ronald.kent@dentons.com<br>susan.walker@dentons.com<br>*Counsel for Virginia Surety Company Inc., f/k/a Combined Specialty Insurance Company* |
| Jeffrey B. Fecht<br>Riley Bennett Egloff LLP<br>jfecht@rbelaw.com<br><br>Cassandra L. Jones<br>Walker Wilcox Matousek LLP<br>cjones@wwmlawyers.com<br>*Counsel for RSUI Indemnity Company* | Wendy D. Brewer<br>Phillip A. Martin<br>Fultz Maddox Dickens PLC<br>wbrewer@fmdlegal.com<br>pmartin@fmdlegal.com<br><br>Abigail E. Rocap<br>Bates Carey LLP<br>arocap@batescarey.com<br>*Counsel for Endurance American Insurance Company* |
| Harley K. Means<br>Stephen J. Peters<br>Kroger Gardis & Regas, LLP<br>hmeans@kgrlaw.com<br>speters@kgrlaw.com<br><br>Eric D. Freed<br>Jonathan Toren<br>Cozen & O'Connor<br>efreed@cozen.com<br>jtoren@cozen.com<br>*Counsel for ACE American Insurance* | Bruce L. Kamplain<br>Cynthia E. Lasher<br>Norris Choplin Schroeder LLP<br>bkamplain@ncs-law.com<br>clasher@ncs-law.com<br>*Counsel for Western World Insurance Company* |

| | |
|---|---|
| *Company f/k/a CIGNA Insurance Company* | |
| Ginny L. Peterson<br>Casey R. Stafford<br>Kightlinger & Gray, LLP<br>gpeterson@k-glaw.com<br>cstafford@k-glaw.com<br><br>Nancy D. Adams<br>Mathilda S. McGee-Tubb<br>Laura Bange Stephens<br>Mintz Levin Cohn Ferris Glovsky & Popeo, PC<br>nadams@mintz.com<br>msmcgee-tubb@mintz.com<br>lbstephens@mintz.com<br>*Counsel for Liberty Insurance Underwriters, Inc.* | Hans H. J. Pijls<br>Dinsmore & Shohl LLP<br>Hans.pijls@dinsmore.com<br>*Counsel for National Casualty Company* |
| Susan N.K. Gummow<br>Igor Shleypak<br>Foran Glennon Palandech Ponzi & Rudloff PC<br>sgummow@fgppr.com<br>ishleypak@fgppr.com<br>*Counsel for American International Group, Inc. & American Home Assurance Company* | Karen M. Dixon<br>Michael M. Marick<br>Skarzynski Marick & Black LLP<br>kdixon@skarzynski.com<br>mmarick@skarzynski.com<br><br>Joshua D. Weinberg<br>Katherine M. Hance<br>Shipman & Goodwin LLP<br>jweinberg@goodwin.com<br>khance@goodwin.com<br>*Counsel for Great American Assurance Company* |
| U.S. Trustee<br>Office of U.S. Trustee<br>ustpregion10.in.ecf@usdoj.gov | Catherine L. Steege<br>Melissa M. Root<br>Jenner & Block LLP<br>csteege@jenner.com<br>mroot@jenner.com<br>*Counsel for Debtor USA Gymnastics* |

                                                */s/ Gregory M. Gotwald*
                                                Gregory M. Gotwald