# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| USA GYMNASTICS, | Case No. 18-09108-RLM-11 |
| Debtor. | |
| USA GYMNASTICS, | |
| Plaintiff, | |
| v. | Adv. Case No. 19-50012 |
| ACE AMERICAN INSURANCE COMPANY f/k/a CIGNA INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, LIBERTY INSURANCE UNDERWRITERS INC., NATIONAL CASUALTY COMPANY, RSUI INDEMNITY COMPANY, TIG INSURANCE COMPANY, VIRGINIA SURETY COMPANY, INC. f/k/a COMBINED SPECIALTY INSURANCE COMPANY, WESTERN WORLD INSURANCE COMPANY, ENDURANCE AMERICAN INSURANCE COMPANY, AMERICAN INTERNATIONAL GROUP, INC., AMERICAN HOME ASSURANCE COMPANY, AND DOE INSURERS, | |
| Defendants. | |

**ACE AMERICAN INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

I.      **INTRODUCTION**

Defendant ACE American Insurance Company, f/k/a Cigna Insurance Company ("AAIC" or "Chubb") submits this Reply brief in response to Plaintiff USA Gymnastics' ("USAG") Combined Response and Reply Brief [Dkt. 231] (the "USAG Response") and in support of Chubb's Cross-Motion for Partial Summary Judgment [Dkt. 216] and accompanying brief [Dkt. 217] (the "Chubb Opening Brief").[1]

USAG analyzes the primary policies and excess policies in backward fashion. USAG's briefing first addresses how many of the follow-form excess policies apply, and then addresses how many of the primary limits apply.  This backwards analysis makes the policies seem confusing, and then USAG uses this self-created confusion to argue that an ambiguity exists. When the policies are analyzed in the proper, logical order—from the primary policies to the excess policies, which follow and incorporate the primary policies—the result is clear and unambiguous.  With respect to abuse by a single perpetrator, the first primary policy's "each act" limit applies, and therefore, only that year's follow-form excess policy applies.  Accordingly, USAG's strained policy construction is unreasonable and must be rejected.  *See Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 632 (Ind. 2018).

With respect to the Deemer Clause in the primary policies, USAG's argument boils down to an alleged mandatory assumption.  USAG asserts that the Court must assume, with respect to

---

[1] Chubb reiterates that it filed its cross-motion solely due to USAG's request for a ruling on the same issue, while reserving its objection to jurisdiction in the Bankruptcy Court and its right to seek withdrawal of the reference pursuant to the Renewed Motion to Withdraw the Reference already pending.  *See* Chubb Cross-Motion, Dkt. 216, p. 2; Chubb Opening Brief, Dkt. 217, p. 22.  Chubb submits that the dispute need only—and should only—be ruled upon once by an Article III court.  However, since the dispute concerns a pure issue of law, if the Bankruptcy Court undertakes to issue a report and recommendation regarding that dispute, it should recommend that the District Court grant partial summary judgment to Chubb.

each and every clause (including the Deemer Clause),[2] that the clause is limited to liability for injury occurring during the particular policy period unless that clause specifically references other policy periods. This assumption is unreasonable, and therefore, USAG's position is untenable, for two reasons. First, the Deemer Clause's use of the word "all" is significant and means what it says: "all acts or omissions … by a single individual." Under Indiana law, the word "all"—rather than (for example) "those," and without a qualifying phrase such as "during the policy period"—encompasses injury both inside and outside the policy period. *See Thomson Inc. v. Ins. Co. of N. Am.*, 11 N.E.3d 982, 1020 (Ind. Ct. App. 2014). Second, other provisions in the same endorsement establish that it encompasses injury occurring during the pendency of other, successive policies issued by AAIC; and further, that when a clause does apply only to the particular policy period, it says so explicitly.

With respect to the excess policies, USAG sidesteps the plain meaning of the word "pays" in order to achieve an absurd result—$20 million of follow-form excess coverage above primary policies that pay nothing at all. The keyhole through which USAG attempts to squeeze this $20 million elephant is the inclusion of "limits of liability" among a list of exceptions to the follow-form clause. USAG cites no case law precedent for a follow-form policy operating in this illogical manner. Chubb, meanwhile, did cite case law showing that a "limits of liability" exception does not operate in this manner, even with "limits of liability" included within a list of exceptions to the follow-form clause. Chubb Opening Brief, Dkt. 217, pp. 16-17. USAG

---

[2] The phrase "Deemer Clause" is as defined in Chubb's Opening Brief (Dkt. 217, p. 1) and reads as follows:

> All acts or omissions which cause or contribute to "physical abuse" or "sexual misconduct" by a single individual for whose conduct any insured is legally responsible shall be considered a single act, subject to the Each Act limit of insurance, regardless of the number of acts or omissions, number of persons injured, number of insureds responsible or number of locations involved.

attempts to distinguish that case law by asserting—again, citing no case law—that the phrase "related to" is broader than "with respect to" or "as regards" (phrases used in other cases). In fact, as discussed *infra*, courts routinely find those phrases to be equivalent.

Despite the lack of support for its position in the case law or policy language, USAG doubles down on its accusation that Chubb's position is "sanctionable." USAG's Response also argues that insurance policies are not contracts (which is wrong) and that extrinsic evidence is not admissible to interpret policies (which is irrelevant, given that Chubb has not relied on any extrinsic evidence). In essence, USAG is banging on the table to conceal the fact that Chubb's position is the legally correct and reasonable one.

## II. ARGUMENT

### A. USAG Misstates Rules of Policy Interpretation

#### 1. An insurance policy is a contract, and ordinary rules of contract interpretation apply.

In its Response, USAG argues that courts are free to ignore the intent of the parties as to terms of an insurance policy. USAG Response, Dkt. 231, p. 4. From that flawed premise, USAG also argues that extrinsic evidence cannot be considered. *Id.*, p. 5. USAG argues for subordination of all canons of contract interpretation in favor of USAG's self-proclaimed "most essential principle" of insurance law, which is that Courts should do whatever possible to "effect indemnification," whether or not the parties actually agreed to such indemnification.[3] *Id.*, p. 4.

This is not the law in Indiana or any other state. Under Indiana law, "[a]n insurance policy is a contract, and in reviewing the policy, we construe it as we would any other contract—

---

[3] USAG takes this phrase out of context. The goal of "effecting indemnification" refers to indemnification provided for in the insurance contract, and has been cited as an additional justification for applying *contra proferentem* in insurance disputes "when the general language of the contract is susceptible to two equally fair constructions." *Am. Econ. Ins. Co. v. Liggett*, 426 N.E.2d 136, 146 (Ind. Ct. App. 1981) (Staton, J., concurring) (emphasis added).

to give effect to the parties' intentions at the time the contract was made." *Founders Ins. Co. v. May*, 44 N.E.3d 56, 61 (Ind. Ct. App. 2015) (emphasis added). "The freedom to contract is 'a bedrock principle of Indiana law,' and the 'freedom of the parties to exclude risks from an insurance contract is well established[.]'" *Id.* (internal citations omitted). These and other bedrock Indiana principles trump USAG's coverage analysis.

Therefore, "[p]rovisions of insurance contracts are subject to the same rules of construction as other contracts[.]" *Progressive Se. Ins. Co. v. Smith*, 113 N.E.3d 229, 233 (Ind. Ct. App. 2018). These rules include the following: courts "construe the insurance policy as a whole, rather than considering individual words, phrases or paragraphs" (*id.*); a court "should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless" (*Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 676 (Ind. Ct. App. 2007)); and Indiana courts "will not give insurance policies an unreasonable construction to provide added coverage" (*Adkins v. Vigilant Ins. Co.*, 927 N.E.2d 385, 389 (Ind. Ct. App. 2010)). Ambiguities in insurance policies are construed against the insurer, but that is likewise consistent with the contract-law principle of *contra proferentem*. *See, e.g.*, *Emmis Commc'ns Corp. v. Illinois Nat'l Ins. Co.*, 323 F. Supp. 3d 1012, 1024 (S.D. Ind. 2018).

Furthermore, Chubb maintains that the parties' intent is reflected entirely in the policy language and has not even attempted to introduce extrinsic evidence of that intent. USAG bizarrely argues that the policies themselves are "extrinsic evidence" because they are extrinsic to each other. USAG Response, Dkt. 231, p. 11. But Chubb did not rely on any "extrinsic evidence" to construe an ambiguous provision in its favor, which is what *Eli Lilly & Co. v. Home*

4

*Ins. Co.* rejected. *See* 482 N.E.2d 467, 470 (Ind. 1985).[4] Chubb simply cited and applied the policies themselves and the language contained in those policies, which cannot possibly be considered "extrinsic evidence." Moreover, each primary policy expressly acknowledges the existence of the others. *See infra*, p. 8.

Chubb's position was, and remains, that the policies are unambiguous as written and cap all liability with respect to abuse by a single perpetrator at one "each act" limit, and therefore, one corresponding excess limit. Since the policies are unambiguous, no reference to extrinsic evidence is necessary, and in fact, such evidence cannot be used to vary those unambiguous terms.

### 2. USAG's interpretation violates canons of construction, while Chubb's does not; therefore, Chubb's interpretation is the only reasonable one.

Implicitly acknowledging the relative weakness of its position, USAG also relies heavily on the notion that its construction "does not have to be the 'best' construction—only a reasonable one." *See* USAG Response, Dkt. 231, p. 4. This aphorism is an invention of USAG. USAG places quotation marks around the word "best," but that word is nowhere found in either of the cases cited in alleged support. *See id.* The first cited case—*Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467 (Ind. 1985)—contains nothing remotely resembling USAG's assertion. The other case cited by USAG—*Liggett*, *supra*—actually states that an ambiguity exists "when the general language of the contract is susceptible to two <u>equally</u> fair constructions." 426 N.E.2d at 146 (Staton, J., concurring) (emphasis added).

---

[4] *Eli Lilly* was a pollution exclusion case, and USAG is incorrect that it imposed "categorical" prohibition against extrinsic evidence. *See Lexington Ins. Co. v. Am. Healthcare Providers*, 621 N.E.2d 332, 336 (Ind. Ct. App. 1993) (noting that evidence could be admissible to resolve an ambiguity); *Emmis Commc'ns Corp. v. Illinois Nat'l Ins. Co.*, 323 F. Supp. 3d 1012, 1024 (S.D. Ind. 2018) (noting that actual evidence supporting that the insurer and insured negotiated the terms of an insurance policy could support a finding that *contra proferentem* is not applicable).

5

In reality, this argument is representative of an anti-legal theme running through USAG's briefing. USAG is asking the Court to disregard the fundamental, logical and objective rules of law—particularly, canons of contract interpretation—in order to manufacture coverage beyond what was purchased. If an interpretation violates those canons of construction—for example, by straining the plain meaning of words, rewriting provisions to include qualifications that are not present, ignoring another express provision to the contrary, or effecting an absurd result—and another interpretation exists that does none of these things, the former interpretation is *per se* unreasonable under Indiana law, and there is no ambiguity. Properly viewed, USAG's aphorism contradicts itself—it is inherently <u>unreasonable</u> to cling to an inferior interpretation when another one exists that lacks the former's problems. *See Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Estate of Harris by Harris*, 99 N.E.3d 625, 632 (Ind. 2018) (rejecting "unreasonable" interpretation of insurance policy, even though it would have resulted in more coverage).

### B. USAG's Rewriting of the Deemer Clause is Unreasonable

In what was referred to as USAG's "mandatory assumption" in the Introduction, above, USAG argues that the Deemer Clause cannot apply to other policy periods unless the clause itself explicitly references other policy periods. USAG Response, Dkt. 231, pp. 11-13. This argument fails for at least two reasons.

First, the Deemer Clause <u>does</u> reach <u>all</u> injury, inside and outside the policy period, by using the word "all." Under Indiana law, the word "all"—rather than (for example) "those," and without a qualifying phrase such as "during the policy period"—encompasses injury both inside and outside the policy period. *See Thomson Inc. v. Ins. Co. of N. Am.*, 11 N.E.3d 982, 1020 (Ind. Ct. App. 2014) (distinguishing policies applying to "all sums," without qualification, as referring to injury both inside and outside the policy period, from policies providing coverage for "those sums" or expressly limiting itself to the policy period); *see also Holiday Hospitality Franchising,*

6

*Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 581 (Ind. 2013) (explaining that "any insured" means any insured thereby barring insurance coverage under abuse or molestation exclusion). The Deemer Clause also expressly encompasses an unlimited number of acts or omissions, persons injured, insureds responsible and locations, which <u>necessarily</u> entail an extended period of time. *See* Chubb Opening Brief, Ex. A, Dkt. 217-2, p. 13. The fact that Chubb's Deemer Clause does not contain the redundant phrase "period of time" does not allow USAG to insert a one-year limitation into the clause. The Deemer Clause cannot be rewritten to include such a limitation any more than it can be rewritten to include limitation as to gender, days of the week, or any other unspecified distinction.

For the same reason, USAG fails in its attempt to distinguish the relevant case law cited by Chubb. Specifically, USAG purports to distinguish several cases enforcing deemer clauses on the basis that those clauses contained the phrase "period of time." USAG Response, Dkt. 231, pp. 14-15. USAG characterizes that phrase as "explicitly extend[ing] the deemer beyond the policy period." *Id.*, p. 14. But the phrase "period of time" does not refer explicitly to other policy periods any more than Chubb's policy language does. If USAG's assumption were correct, the phrase would have been read to refer to any period of time within the policy period, even several months apart. But that was not the result.[5]

---

[5] USAG improperly quotes these cases and underlines the phrase without acknowledging that the emphasis was added by USAG. *See* USAG Response, Dkt. 231, pp. 14-15. In reality, the cases did not emphasize the phrase "period of time" in particular, but rather the entire clause and/or use of the phrase "all acts." Thus, contrary to USAG's characterization (Dkt. 231, p. 15), there is no indication that the decisions "turned on" the inclusion of that phrase. *See Church Mut. Ins. Co. v. First United Pentecostal Church of Parma*, Case No. 1:11CV2201, 2012 WL 3619812, at *5 (N.D. Ohio Aug. 21, 2012) (quoting and applying entire deemer clause, giving no particular emphasis to the phrase "period of time"); *TIG Ins. Co. v. Merryland Childcare & Dev. Ctr., Inc.*, Case NO. 04-2666 B, 2007 WL 316571, at *4 (W.D. Tenn. Jan. 31, 2007) (same); *TIG Ins. Co. v. San Antonio YMCA*, 172 S.W.3d 652, 661 (Tex. App. 2005) (emphasizing and italicizing the phrase "all acts," not "period of time").

7

The fact that Chubb did not use the same belt-and-suspenders approach in drafting the Deemer Clause should not and does not matter. Again, the Deemer Clause already applies to "all" acts, regardless of the number of acts, victims, and locations, which necessarily involve an extended period of time. Applying the Deemer Clause only to one policy period requires inserting words into the clause, which Indiana law does not allow. *See Sell v. United Farm Bureau Family Life Ins. Co.*, 647 N.E.2d 1129, 1131-32 (Ind. Ct. App. 1995) ("When construing an insurance policy, we may not extend insurance coverage beyond that provided in the contract, nor may we rewrite the clear and unambiguous language of the insurance contract.").

Second, USAG's assumption is unreasonable when viewed in the context of the endorsement as a whole, as required by Indiana law. *See Briles v. Wausau Ins. Cos.*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006) ("We construe the insurance policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases or paragraphs."). The endorsement's Insuring Agreement section expressly addresses injury occurring during successive policy periods. Chubb Opening Brief, Ex. A, Dkt. 217-2, p. 12, at § 1.b.3.(b). Once injury outside of the policy period is expressly encompassed within the endorsement's scope, and the Deemer Clause applies to "all" acts, there is no reasonable basis to believe that the Deemer Clause only applies to one policy period. Conversely, when a clause is intended to apply only to one policy period—as in Section 3.c.—it says so explicitly. *Id.*, p. 13, at § 3.c.

Thus, the unambiguous result of the Deemer Clause is that the insureds' liability for all abuse by a single perpetrator is deemed a "single act" subject to a single "Each Act" limit, under the policy when that "single act" was "first committed." *See Id.*, p. 12, at § 1.b.(2). In the case of Larry Nassar, that is the 1998-1999 policy.

8

### C. <u>USAG's Interpretation of the Excess Policies is Unreasonable</u>

#### 1. "Pays" means pays.

USAG argues that even if the primary policies limit Chubb's duty to indemnify with respect to a single perpetrator to one "Each Act" limit under one policy, the full $10 million limit is still available under all three excess policies—even though two of those excess policies follow form to primary policies that <u>pay nothing at all</u>. This result is unreasonable on its face, but it also conflicts with the following express requirement: "If the UNDERLYING INSURANCE <u>does not pay</u> a loss for reasons other than the exhaustion of an aggregate limit of insurance, then <u>WE shall not pay</u> such loss" (emphasis added). *See* Chubb Opening Brief, Ex. E, Dkt. 217-6, p. 7, § I.A.

USAG attempts to avoid this unambiguous requirement by arguing that all three primary policies "pay" because they are all triggered as an initial matter—even if two of them pay no actual money. USAG Response, Dkt. 231, pp. 8-10. This argument ignores the plain meaning of the word "pays," and USAG cites no case law that supports it. Instead, USAG cites only a footnote in *Allstate Ins. Co. v. Dana Corp.*, 759 N.E.2d 1049, 1063 n.10 (2001). But there is no indication that the policies in *Dana* required "payment" of underlying limits, and the court did not make any rule or statement with respect to excess policies generally. The court merely noted that determination of actual payment of the underlying limits was unnecessary because the particular policies in that case did not require it; they only required liability exceeding the underlying limits. *See id.*

But the excess policies here <u>do</u> require it. When excess policies require "payment," courts enforce that requirement. *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 373 (5th Cir. 2011) ("[T]he use of the phrase 'payment of loss' establishes that the underlying insurer must make *actual* payment to the insured in order to exhaust the underlying policy."); *Great Am. Ins. Co. v. Bally Total Fitness Holding Corp.*, 06-CV-04554, 2010 WL 2542191, at *5 (N.D. Ill. June

9

22, 2010) (holding that, where primary insurer had paid only a portion of its limit in exchange for a release, the underlying primary policy had not actually "paid" the full limit, even if the insured's liability exceeded that limit); *Quellos Grp. LLC v. Fed. Ins. Co.*, 177 Wn. App. 620, 638 (2013) (same); *JP Morgan Chase & Co. v. Indian Harbor Ins. Co.*, 947 N.Y.S.2d 17, 21 (N.Y. App. Div. 2012) (same); *Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London*, 161 Cal. App. 4th 184, 197 (2008) (same).

In a final attempt to avoid the plain meaning of the word "pays," USAG attempts to create an absurdity. USAG argues that Chubb's interpretation "would destroy virtually all coverage under every excess policy" because the primary policies do not pay a loss after they are exhausted. USAG Response, Dkt. 231, p. 10. This argument misstates Chubb's position and ignores the plain policy language (which USAG neglects to quote in full). Once again, the policy provides: "If the UNDERLYING INSURANCE does not pay a loss <u>for reasons other than the exhaustion of an aggregate limit of insurance</u>, then WE shall not pay such loss." Chubb Opening Brief, Ex. E, Dkt. 217-6, p. 7, § I.A. (emphasis added). Thus, the language itself solves this problem. If the primary aggregate limit is exhausted, the excess policy will still pay the loss as long as an underlying payment obligation would have existed but for exhaustion of the aggregate limit. Conversely, if the underlying "Each Act" limit applies and has been paid by the underlying policy (as is potentially the case under the 1998-1999 policy with respect to Larry Nassar's abuse), then the underlying primary policy has "paid the loss" and the requirement is fulfilled. With respect to the 1999-2001 policies, however, <u>no underlying payment obligation exists at all</u> with respect to Nassar's abuse, whether or not the aggregate limits are intact. Therefore, the requirement is not fulfilled, and those excess policies do not apply to that loss.

10

### 2. The "Limits of Liability" exception does not negate the fundamental, express requirement of payment under the underlying primary policy.

USAG does not dispute that the excess policies are "follow-form" policies; *i.e.*, they substantively follow or mimic the coverage provided by underlying primary policies, except with larger limits and a higher trigger point. *See Hartford Acc. & Indem. Co. v. Chicago Housing Auth.*, 12 F.3d 92, 95 (7th Cir. 1993); *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 722 n.16 (Ind. Ct. App. 2004) ("It is well established in insurance law that 'a follow form excess policy incorporates by reference the terms of the underlying policy and is designed to match the coverage provided by the underlying policy.'") (internal citation omitted). Indeed, USAG cannot dispute this point, because this is the only reason the excess policies here provide any coverage at all for USAG's liability arising from sexual abuse. The excess policies make no specific reference to abuse-related liability, but Chubb concedes that the general "follow form" clause is sufficient to incorporate that coverage, <u>where it applies</u>. At the same time, however, the excess policies only incorporate the underlying indemnity obligation when it actually exists <u>in that underlying policy</u>. As discussed in the previous section, the excess policies each expressly require that the underlying policy pay a loss before the excess policy will pay a loss (except if the reason for the primary policy's non-payment is exhaustion of the aggregate limit).

In arguing that the excess policies must pay a loss even when the underlying policies do not, USAG relies on the inclusion of "limits of liability" within a list of ways that the excess policies might differ from the underlying primary policies. USAG Response, Dkt. 231, pp. 5-8. The excess policies' follow-form clause reads, in full: "The Definitions, Terms, Conditions, Limitations, and Exclusions of the UNDERLYING INSURANCE, in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provisions of this policy, or relate to premium, subrogation, any obligation to defend, the payment of expenses, limits of

11

insurance, cancellation or any renewal agreement." *See* Chubb Opening Brief, Ex. E, Dkt. 217-6, p. 7, § I.A. All of the items in this list are ones that can be different in an excess policy than in a primary policy. In the case of "limits of liability," excess policies (including the ones here) typically include larger limits of liability than the underlying primary policies, but are triggered only after underlying limits are exhausted. Here, the excess policies' limits are $10 million (per occurrence and in the aggregate) in excess of the underlying limits, whereas the primary CGL policies are subject to limits of $1 million per occurrence and $5 million in the aggregate. *See* Chubb Opening Brief, Ex. A, Dkt. 217-2, pp. 6 & 12; Ex. E, Dkt. 217-6, p. 2.

USAG argues that, since "limits of liability" is included within this list of exceptions, the excess policies indemnify losses even when those losses are <u>not paid at all</u> under the underlying policies. USAG Response, Dkt. 231, pp. 8-10. This interpretation is unreasonable as a matter of law because it violates at least two canons of construction. First, it conflicts with the specific, express requirement that the underlying primary policy actually pay a loss (discussed above). *See Briles*, 858 N.E.2d at 213 ("[A court] must accept an interpretation of the contract language that harmonizes the provisions, rather than one that supports conflicting versions of the provisions."). Second, it leads to an unreasonable result that the parties could not have intended—under which an excess policy must pay up to $10 million for a loss, even though the excess policy's coverage obligation is derived entirely from an underlying primary policy that pays nothing for that loss. *Id.* ("[A court] will not give insurance policies an unreasonable construction to provide additional coverage."); *see also Chicago Housing Auth.*, 12 F.3d at 96 (rejecting an interpretation that "would create a significant difference between the coverage schemes" of the follow-form excess policies and underlying primary policies, which "could not have been intended by any of the parties").

12

In addition to these clear problems, Chubb cited case law further demonstrating that an exception for "limits of liability" within a follow-form clause does not operate in the manner advocated by USAG.  Chubb Opening Brief, Dkt. 217, pp. 17-18.  *See Air & Liquid Sys. Corp. v. Allianz Underwriters Ins. Co.*, Civil Action No. 11-247, 2013 WL 5436934, at *25 (W.D. Pa. Sept. 27, 2013) (holding that the excess policy followed form to the underlying policy with respect to the number of years' limits available, even though "limits of liability" were excepted from the follow-form clause); *Union Carbide Corp. v. Affiliated FM Ins. Co.*, 947 N.E.2d 111, 113 (N.Y. 2011) (same); *Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, X04CV 950115305S, 1999 WL 244642, at *3 (Conn. Super. Ct. Apr. 16, 1999) (same).

USAG, meanwhile, cites no precedent for a "limits of liability" exception creating an indemnity obligation under an excess policy that follows form to a primary policy with no indemnity obligation for that same loss.  USAG attempts to distinguish the contrary cases, above, by asserting—with no case law support—that the phrase "related to" is "indisputably broader" than "with respect to" and "as regards."  USAG Response, Dkt. 231, p. 7.  But USAG's statement is far from "indisputable."  In fact, courts have consistently construed these phrases as equivalent.  *ACE Capital Ltd. v. Morgan Waldon Ins. Mgmt., LLC*, 832 F. Supp. 2d 554, 571 (W.D. Pa. 2011) ("Courts have similarly described the term 'relating to' as equivalent to the phrases 'in connection with' and 'associated with,' … and synonymous with the phrases 'with respect to,' and 'with reference to'…."); (quoting *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001)); *Phoenix Leasing Inc. v. Sure Broad., Inc.*, 843 F. Supp.

13

1379, 1388 (D. Nev. 1994) ("The phrase 'with respect to' means with reference to, relating to, or pertaining to.").[6]

Moreover, the precise scope of the phrase "related to" is beside the point, as is the fact that the Deemer Clause is located within the Limits of Liability section of the sexual abuse endorsement. The issue is not whether the excess policies incorporate the Deemer Clause into the excess policies. Rather, the Deemer Clause applies to the primary policies and restricts the duty to indemnify under the primary policies with respect to any single perpetrator to the first applicable policy's "Each Act" limit. As a result, the subsequent primary policies do not indemnify any loss with respect to that same perpetrator. Each follow-form excess policy, meanwhile, derives its indemnity obligation entirely from the terms of the underlying primary policy. That is the very nature of a follow-form excess policy. *See PSI Energy, supra.* The excess policy cannot be obligated to indemnify a loss <u>in the first instance</u> if the underlying primary policy has no obligation to pay that loss.

## CONCLUSION

Should this Court decide to address the substance of the issues raised by USAG's Motion for Partial Summary Judgment, for the foregoing reasons, it should recommend that the District Court deny USAG's Motion for Partial Summary Judgment and grant Chubb's Cross-Motion for Partial Summary Judgment.

//
//
//

---

[6] The phrase "as regards" is less commonly used and construed by courts, but there is no reason to believe the scope is any different than "related to" or "with respect to."

14

Respectfully submitted.

Dated:  September 26, 2019

        KROGER, GARDIS & REGAS, LLP

        By  */s/ Stephen J. Peters*
           Stephen J. Peters, Attorney No. 6345-49
           Harley K. Means, Attorney No. 23068-32
           111 Monument Circle, Suite 900
           Indianapolis, IN 46204-5125
           (317) 692-9000
           speters@kgrlaw.com
           hmeans@kgrlaw.com

           *Counsel for Defendant ACE American Insurance Company f/k/a CIGNA Insurance Company*

        COZEN O'CONNOR

        By  */s/ Jonathan Toren*
           Jonathan Toren, *Admitted Pro Hac Vice*
           Eric Freed, *Admitted Pro Hac Vice*
           999 Third Avenue, Suite 1900
           Seattle, Washington 98104
           (206) 340-1000
           jtoren@cozen.com
           efreed@cozen.com

           *Counsel for Defendant, Defendant, ACE American Insurance Company f/k/a CIGNA Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2019, a copy of the foregoing *Reply in Support of Cross-Motion for Partial Summary Judgment* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Respectfully submitted.

Dated:  September 26, 2019          COZEN O'CONNOR

By      */s/ Jonathan Toren*
Jonathan Toren, *Admitted Pro Hac Vice*
Eric Freed, *Admitted Pro Hac Vice*
999 Third Avenue, Suite 1900
Seattle, Washington 98104
(206) 340-1000
(206) 621-8783 (Fax)
jtoren@cozen.com
efreed@cozen.com

*Counsel for Defendant, Defendant, ACE American Insurance Company f/k/a CIGNA Insurance Company*

LEGAL\43003687\2