# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| USA GYMNASTICS, INC., | Case No. 18-09108-RLM-11 |
| Debtor. | Adv. Proc. No. 1:19-ap-50012 |

USA GYMNASTICS, INC., )
)
Plaintiff, )
)
vs. )
)
ACE AMERICAN INSURANCE COMPANY f/k/a )
CIGNA INSURANCE COMPANY, GREAT )
AMERICAN ASSURANCE COMPANY, LIBERTY )
INSURANCE UNDERWRITERS INC., )
NATIONAL CASUALTY COMPANY, RSUI )
INDEMNITY COMPANY, TIG INSURANCE )
COMPANY, VIRGINIA SURETY COMPANY, INC. )
f/k/a COMBINED SPECIALTY INSURANCE )
COMPANY, WESTERN WORLD INSURANCE )
COMPANY, ENDURANCE AMERICAN )
INSURANCE COMPANY, AMERICAN )
INTERNATIONAL GROUP, INC., AMERICAN )
HOME ASSURANCE COMPANY, and DOE )
INSURERS, )
)
Defendants. )

**PLAINTIFF USA GYMNASTICS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST TIG INSURANCE COMPANY ON LOST POLICIES**

USA Gymnastics ("USAG") is entitled to partial summary judgment that TIG Insurance Company ("TIG") sold USAG primary policies for 1986, 1988, 1989, and 1990 (the "Lost Policies"), and that these policies cover liabilities for abuse and/or molestation, with $1 million per occurrence limits with no aggregate limits. TIG does not dispute it sold USAG the Lost Policies. It also does not dispute that those

general liability policies provide bodily injury coverage at $1M per occurrence. TIG fails to presents sufficient evidence that the Lost Policies' general aggregate limits were something different from what the available secondary evidence suggests, or that the Lost Policies contained an Abuse or Molestation Exclusion ("AME"). TIG sold USAG this coverage. It should honor its promises. Delaying the confirmation of this coverage only delays USAG's ability to pay fairly compensate survivors and exit bankruptcy.

TIG's claim that a policyholder cannot win summary judgment on the existence and terms of lost policies is contrary to the Federal Rules of Civil Procedure and Evidence. USAG has met its burden. It does not matter that USAG's motion involves a factual determination; Rule 56 requires TIG to show there is a genuine dispute about that fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). It has not done so.

TIG fails to identify a genuine issue of material fact. It presents no evidence—none—disputing the key terms of the Lost Policies. Expert Schultz' conclusions are sound. TIG's claimed factual disputes with the secondary evidence are neither actually disputed, nor material. TIG argues that it needs discovery, but it has not served any in the months it has known USAG would file this motion. TIG fails to explain how the discovery it even now has not bothered to serve is anything but a pointless fishing expedition, designed to delay resolution of this dispute to the detriment of USAG's estate and survivors holding allowed claims.

For all these reasons, USAG's motion should be granted.

I.  **USAG Has Not Engaged In "Gamesmanship."**

TIG's lead argument is that USAG is somehow engaging in "procedural gamesmanship" because it sought summary judgment on a disputed issue that was impeding resolution of the hundreds of Nassar-related claims at the core of this Chapter 11 Bankruptcy. [Dkt. 236 at 11.] Not so. USAG has requested that these summary judgment issues move forward, notwithstanding the previous stay that was in place because this barrier to resolution arose during attempts to reach a mediated settlement. [Dkt. 178 at 2 ("The Debtor also expects to seek additional judgments specific to TIG, including a ruling regarding certain policies that TIG claims are 'lost,' but for which the evidence actually supports their existence.")] USAG is not trying to "game" the system. It is trying to resolve coverage issues impeding a prompt resolution of hundreds of claims. [*Id.* at 3.] It is trying to fairly compensate the survivors and exit bankruptcy. [*Id.*]

II. **USAG Met Its Burden to Prove the Lost Policies' Key Terms, TIG Has Failed to Rebut That Showing.**

USAG provided ample secondary evidence and expert testimony that TIG sold USAG the Lost Policies. TIG fails to offer any evidence that the Lost Policies' key terms are something different from the evidence in the record: bodily injury coverage for $1M per occurrence with no aggregate limit and no AMEs.

TIG claims that because "lost policy" issues are factual in nature, they are not appropriate for summary judgment. [Dkt. 236 at 12–14.] That claim contradicts the Federal Rules and summary judgment jurisprudence. Rule 56 "mandates the

3

entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . ." *Celotex*, 477 U.S. at 322 (addressing the factual issue of exposure to asbestos). Rule 56 itself explicitly contemplates summary judgment on factual issues: "The court shall grant summary judgment <u>if the movant shows that there is no genuine dispute as to any material fact</u> and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). It tells us how that conclusion can be supported: "Supporting Factual Positions. A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the . . . presence of a genuine dispute . . . ." *Id.* at 56(c)(1).

Responding parties like TIG may not simply show the possibility of disputed facts. "The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the trier of fact could reasonably find for the non-moving party.  In short, summary judgment is warranted if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Johnson v. Doughty*, 433 F.3d 1001, 1009–10 (7th Cir. 2006) (internal quotations and citations omitted). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." *Skinner v. Ambrose*, 556 F. Supp. 2d 921, 924 (N.D. Ind. 2008). "Moreover, more than mere conclusory allegations are required to defeat a motion for summary judgment." *Nowak v. St.*

4

*Rita High Sch.*, 142 F.3d 999, 1002 (7th Cir. 1998) (internal quotations and citations omitted).

Here, USAG provided admissible evidence establishing the existence of the Lost Policies and their core terms. TIG needed to rebut this showing with competent evidence or lose. TIG claims *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 717–22 (Ind. Ct. App. 2004), *trans denied*, prevents summary judgment on lost policy issues. *PSI* does nothing of the sort. The <u>insurer</u> in *PSI* moved for summary judgment on the lost policy issue—not the policyholder. *Id.* 717. As the trial court noted, the insurers in *PSI* "designated materials that the [policyholder] ha[d] failed to provide the [insurers] with the specific terms and conditions (policy language) for which coverage would be triggered." *PSI Energy, Inc. v. Home Ins. Co.*, No. 32D01-9807-230, *slip op.* at 2 (Hendricks Super. Ct. Feb. 1, 2002).[1] The Indiana Court of Appeals reversed the trial court's summary judgment ruling, finding that policyholder provided sufficient evidence to at least establish a question of fact. *Id.* at 722. *PSI* does not stand for the proposition that "lost policies" can <u>never</u> be proven on summary judgment. Both sides submitted evidence. There were genuinely disputed issues of material fact.

Contrary to TIG's claim, Indiana trial courts have granted summary judgment for a policyholder on lost policies and their terms. In *Indiana Technology Development, Inc. v. Federal Insurance Co.* No. 49D05-00507-PL-2661, *slip op.* at 3 (Marion County Super. Ct. Mar. 29, 2012) (Moberly, J.),[2] for example, the court

---

[1] A copy of this opinion is attached as Exhibit A.
[2] A copy of this opinion is attached as Exhibit B.

5

found the policyholder presented sufficient evidence to prove the existence of the policies' key terms and that the insurers failed to provide evidence of any exclusions. *Id.*

Effectively conceding the weakness of its argument, TIG next attempts to cast doubt on the core coverage terms USAG established. [Dkt. 236 at 15 (claiming that "[e]ven if USAG hypothetically could meet its burden to establish issuance of the policies by TIG following discovery, it would still need to prove the terms and conditions of such policies.")] However, TIG's claims are speculation—not evidence. [Dkt. 236 at 15 (claiming that other terms "may have been contained;" that "[i]t is possible" the lost policies contained terms not in the other TIG policies; and that the Lost Policies "may have" contained an AME or other limiting terms).] Such fully speculative factual claims are insufficient to defeat summary judgment. *Skinner*, 556 F. Supp. 2d at 924. "[I]nstead, [TIG] must present definite, competent evidence in rebuttal." *Id.* "[M]ore than mere conclusory allegations are required to defeat a motion for summary judgment." *Nowak*, 142 F.3d at 1002 (internal quotations and citations omitted).[3] TIG offers only speculation.

TIG's failure to provide any evidence that the terms of these policies are different is particularly egregious in light of the fact that TIG drafted and sold these

---

[3] It is unclear if TIG claims USAG has to burden to prove all the terms and conditions of the policies. [Dkt. 236 at 15.] USAG does not. *PSI* noted that the policyholder does not need to prove every term of the policy, only those relevant terms for coverage. *Id.* at 718 n.10 (quoting *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 52 P.3d 79 (Cal. 2002) (noting that "the insurer has the burden of proving the substance of any policy provision essential to the defense, *i.e.*, any provision that functions to defeat the insured's claim.")) Similarly, in *Indiana Technology Development, slip op.* at 3 (attached as Exhibit B), the court properly placed the burden of proving coverage limiting terms on the insurers.

6

policies. It assured USAG that it would provide USAG coverage for unforeseen liabilities in the future. These are occurrence-based policies providing protection for liabilities that might arise—as here—decades after it sold the policies. Yet TIG evidently discarded all copies of its product, without bothering to retain documents sufficient to satisfy itself (or anyone else) of the essential contents of the coverage. Insurers have an obligation to provide their policyholders copies of the policies they sold.

> It does not seem too much to ask that an insurance company provide an insured a copy of the policy upon request following a loss, given that there would almost certainly be no other way to procure a copy, and delivery could be accomplished with very little inconvenience or cost to the insurance company.

*Auto-Owners Ins. Co. v. Hughes*, 943 N.E.2d 432 (Ind. Ct. App. 2011), *trans denied* 962 N.E.2d 647. Absent some evidence that USAG's evidence is inaccurate, there is little reason to reward an insurer for failure to retain evidence of what it sold.

### III. **Expert Schultz Is Eminently Qualified.**

USAG relies on the expert opinion of Marilyn Schultz in support of its motion. Expert Schultz has worked in insurance industry for over forty years—primarily in underwriting—sixteen of which were with TIG during the relevant years at issue here. [Dkt. 205-1 at 1.] She has testified as an insurance expert multiple times and has additional specialize insurance specific training [*Id.* at 2.] There is no question she has the requisite "specialized knowledge, skill, experience, training, or education" needed to testify.

TIG attempts to attack Expert Schultz' opinion claiming she lacks personal

7

knowledge. [Dkt. 236 at 16 ("Ms. Schultz is essentially an underwriting fact witness without personal knowledge of the policies at issue in this case.")] TIG's claim confuses the distinction between an expert and a lay witness. An expert does not need to have personal knowledge—they provide opinions. Fed. R. Evid. 702, 703. They are not required to limit their testimony to personal knowledge (or limited opinions arising therefrom). Fed. R. Evid.701. While Expert Schultz has personal knowledge about TIG's underwriting practices, such personal knowledge is not required. Having such a detailed understanding of TIG's practices and internal workings reinforces the credibility of her opinions. It does not impeach her.

Next, TIG claims that Expert Schultz' opinion is somehow undermined because she "has not reviewed any documents other than those provided by USAG . . . ." [Dkt. 236 at 16.] First, this is not a valid critique of an expert—this is how most all experts get their information. Counsel routinely provide experts with the relevant case material.

Second, TIG makes no showing of any information Expert Schultz should have reviewed other than the material USAG provided her. Instead, it (again) speculates that there are some additional, unknown documents she should have considered. TIG does not say what these mysterious documents are or provide any evidence that any such documents exists. Again, speculative factual allegations are insufficient to defeat summary judgment. *Skinner*, 556 F. Supp. 2d at 924. "[I]nstead, [TIG] must present definite, competent evidence in rebuttal." *Id*. "[M]ore than mere conclusory allegations are required to defeat a motion for summary

8

judgment." *Nowak*, 142 F.3d at 1002.

Third, TIG's claim that Expert Schultz only reviewed information provided to her is factually incorrect. In addition to the secondary evidence provided her, she also "consulted industry treatises and Insurance Services Organization ('ISO') forms, as well as caselaw." [Dkt. 205-1 at 2.] Later in its brief, TIG concedes this point. [Dkt. 205-1 at 16 (stating that "her opinions, [] appear to be limited to reviewing materials provided by USAG and some industry materials").]

Finally, TIG tries to impeach Expert Schultz by claiming her conclusions are inaccurate. [Dkt. 236 at 7.] This fails because TIG's critiques are not factually accurate. Even if they were true, they amount to nothing more than a scintilla of evidence, which fails to create a genuine issue of material fact.

TIG first claims Expert Schultz incorrectly stated that USAG's 1987 policy does not have an aggregate limit. [Dkt. 236 at 7.] The 1987 policy does not have a true aggregate limit, *i.e.,* a maximum total amount the policy will ever pay. 3 New Appleman on Insurance Law Library Edition § 16.09 (2019) ("An aggregate limit establishes the maximum amount the policy will pay for a specified type of damage. . . . The aggregate limit is designed to place a cap on the insurer's liability for all specified types of damage, regardless of the number of occurrences in the policy period.") For the 1987 policy, there is only a limit per location. This does not limit the total amount TIG may have to pay. Expert Schultz's statement was accurate.

TIG next claims that Expert Schultz's opinion concerning TIG's AMEs is wrong. TIG claims that because its policies for 1992 and 2001 included an AME

9

("bookending" a portion of USAG's TIG coverage with an AME), Expert Schultz's opinion is somehow diminished. [Dkt. 236 at 7.] TIG is wrong and misses Expert Schultz's point. Expert Schultz's point is that having abuse/molestation coverage included, then taken away, then added back, then taken away again, then added back yet again is highly improbable.[4] It just does not make sense, and TIG provided no evidence this occurred or even a reason why it might have occurred.

TIG attempts to discredit Expert Schultz because its 2001 policy contains an AME. TIG claims that this contradicts Schultz's opinion. It does not. Schultz opinion is about the abuse/molestation <u>coverage</u> afforded under the policy. While the 2001 has an AME attached, that policy does not exclude all abuse or molestation coverage. In its summary judgment brief on the 2001 AME, TIG concedes there is abuse and molestation coverage even though the policy has an AME attached.[5] [Dkt. 215 at 11–13, 19–22.]

TIG's claims of "inaccurate conclusions" are incorrect. And even if they were accurate, these are minor sub-points to Expert Schultz's opinions as to the core policy terms (*e.g.,* $1M per occurrence limits, no aggregate limit, no AME). TIG's nits would only amount to a scintilla of evidence—not enough for the trier of fact to reasonably find for TIG.

---

[4] She also noted that the AME was new during the Lost Policies' years, another reason TIG likely did not include it in the Lost Policies. [Dkt. 205-1 at 3.] TIG ignores this point.
[5] Furthermore, USAG has shown the AME in the 2001 policy does not apply to the Coverage D Participant Legal Liability at all. [Dkt. 176 at 10–12.] It provides additional coverage for sexual abuse and molestation. [*Id.*]

10

### IV. The Secondary Evidence Does Not Create A Genuine Factual Dispute.

TIG argues that certain statements in the secondary evidence create genuine issues of fact. [Dkt. 236 at 8.] However, the narrow statements TIG references are not statements USAG or TIG rely upon. They are immaterial. They cannot create genuine issues of <u>material</u> fact. Fed. R. Civ. P. 56.

First, TIG notes that a broker email does not list two of USAG's carriers. [Dkt. 236 at 9.] But USAG and TIG both agree that those carriers issued policies. This does not impact any of the Lost Policies. This "dispute" is neither material, nor disputed.

Next, TIG points to a broker statement that none of USAG's policies contain an AME. This is not a claim USAG even advances. As TIG notes, USAG has acknowledged the presence of an AME in certain policies. [Dkt. 236 at 9.] Moreover, the broker merely stated that TIG's agent—K&K—can confirm whether or not the policies contained AMEs.

Finally, TIG attacks an insurance chronology attached to a 2006 email between USAG and an insurance broker. TIG claims USAG has not properly authenticated this document. But there is no issue of fact here.[6] TIG cites nothing in the document that it disputes. TIG provides no evidence contrary to the facts contained therein. There is no question of material fact.

---

[6] The email with its attachment is properly authenticated. [205-3 at 2– 3.]; Fed. R. Evid. 901.

11

## V.     TIG's Request For Discovery Does Not Justify Denying The Motion.

Finally, TIG claims it should have discovery on the Lost Policies. While it submitted a declaration supporting its position, the declaration is insufficient to meet the Seventh Circuit's standards for a Rule 56(d) motion. Federal Rule of Civil Procedure 56(d) provides that:

> [I]f a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> > (1) Defer considering the motion or deny it;
> > (2) Allow time to obtain affidavits or declarations or to take discovery; or
> > (2) Issue any other appropriate order.

Fed. R. Civ. P. 56(d).

> The mere fact that discovery is incomplete is not enough to prevent summary judgment. A party seeking relief under Rule 56(d) must show by affidavit or declaration specific reasons discovery should be extended, which requires more than a fond hope that more fishing might net some good evidence.

*Smith v. OSF Healthcare Sys.*, 933 F.3d 859, 864 (7th Cir. 2019) (citations omitted). Importantly, courts should "not delay decision on a summary judgment motion to allow time for discovery on an obviously meritless claim or defense." *Id.* Parties must "set forth any specific evidence which they might have obtained from these depositions that would create a genuine issue as to this material fact." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 885 (7th Cir. 2005).

In *Davis*, the plaintiff wanted additional discovery about missing parts of a contract before responding to summary judgment. The Court refused it:

12

> The only reason to believe that additional, relevant evidence would materialize from deposing the defendants' employees is the Davises' apparent hope of finding a proverbial "smoking gun"—that is, someone who will testify that he or she knows that a signed, two-year prepayment penalty provision did actually exist at some time and that the defendants have either hidden, destroyed, or otherwise disposed of this document. This, however, is based on nothing more than mere speculation and would amount to a fishing expedition, which is an entirely improper basis for reversing a district court's decision to deny a Rule 56(f) motion.

*Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 885 (7th Cir. 2005)

TIG's affidavit fails to meet these Rule 56(d) requirements. At best, Ms. Stefano's declaration is nothing more claim that USAG's motion should be denied because none of the parties have undertaken discovery. As in *Farmer*, the mere fact that discovery has not been completed is insufficient to avoid of summary judgment. Ms. Stefano fails to give detailed reasons why discovery should be granted. Specifically, Ms. Stefano does not articulate what facts TIG is unable to prove or what particular information TIG still requires. *See Drake v. United States*, 2014 U.S. Dist. LEXIS 156196 at *2 (S.D. Ind. 2014). As in *Drake*, TIG's affidavit merely alludes to a general desire for discovery—deposition of fact witnesses, deposition of USAG's expert witness, and access to USAG's records and archive system. (Dkt. 236-1 at 2–3.) TIG fails to explain why permitting discovery in these areas would raise a genuine issue of material fact as to USAG's assertions of the Lost Policies' existence and contents. *See Smith v. Assocs. In Behavioral Counseling, P.C.*, 2012 U.S. Dist. LEXIS 108058 at *3-5 (S.D. Ind. 2012). Just like the plaintiff in *Davis*, TIG's affidavit is "based on nothing more than mere speculation and would amount to a fishing expedition, which is an entirely improper basis for reversing a district

13

court's decision to deny a Rule 56(f) motion." *Davis*, 396 F.3d at 885. Moreover, if TIG is so desperate for discovery, why has it not served any? It has known that this motion was going to be filed since at least August 7, 2019, nearly three months ago. [Dkt. 178.] Despite this, it has chosen to sit back and wait. Delay is not what this case needs.

Finally, Ms. Stefano also fails to explain why TIG is unable to find the policies it sold in its own records, or to show it has even diligently looked for the information it allegedly now requires to respond to USAG's motion. Given that TIG sold the policies at issue, TIG should first exhaustively search its own records to determine the contents of the Lost Policies. TIG has made no showing it has done so.[7] TIG's affidavit utterly fails to explain why a search of its own records is so inadequate that it needs to discover USAG's records—an entity that did not draft, underwrite, or sell the policies. Particularly where a policyholder brings a lost-policy claim and the defendant sold the policy, a defendant insurer should be required to provide sworn testimony that it searched its records and found nothing before it can both (1) delay summary judgment and (2) impose pointless, expensive, and burdensome discovery on the Debtor. TIG is attempting to sidestep summary judgment in the hopes that a fishing expedition into USAG's records during discovery will uncover some "proverbial 'smoking gun'" supporting a lack of

---

[7] USAG notes that on Friday afternoon October 4, 2019, TIG produced 634 pages of additional underwriting information related to the Lost Policies. It does not cite or refer to this material in its brief. TIG did not say when it "located" this information. USAG has not had a reasonable amount of time to conduct a detailed review of these documents. USAG notes, however, that an initial review of these documents confirms the existence of the Lost Policies. USAG reserves its right to supplement the record with these materials.

14

coverage. What would that be? TIG has no answer and no basis to claim such a "gun" exists. TIG's speculation does not suffice. Consequently, this Court should deny TIG Rule 56(d) relief and grant USAG's motion for partial summary judgment.

## VI. CONCLUSION

USAG is entitled to partial summary judgement on four points: (1) TIG sold USAG primary policies in 1986, 1988, 1989, and 1990; (2) These policies contain standard ISO form coverage for liabilities arising from bodily injuries; (3) Each of these policies provides $1 million per occurrence limits with no aggregate limits; and (4) None of them have AMEs.

Dated: October 8, 2019

Respectfully submitted,

/s/ *Gregory M. Gotwald*
George M. Plews (#6274-49)
Gregory M. Gotwald (#24911-49)
Tonya J. Bond (#24802-49)
Christopher E. Kozak (#35554-49)
PLEWS SHADLEY RACHER & BRAUN LLP
1346 N. Delaware St.
Indianapolis, IN 46202-2415
(317) 637-0700
*Attorneys for USA Gymnastics*
gplews@psrb.com
ggotwald@psrb.com
tbond@psrb.com
sbaldwin@psrb.com
ckozak@psrb.com

-and-

          JENNER & BLOCK LLP
          Catherine L. Steege (admitted *pro hac vice*)
          Dean N. Panos (admitted *pro hac vice*)
          Melissa M. Root (#24230-49)
          353 N. Clark Street
          Chicago, Illinois 60654
          (312) 923-2952
          csteege@jenner.com
          dpanos@jenner.com
          mroot@jenner.com

          *Counsel for the Debtor*

# CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

| | |
|---|---|
| Scott P. Fisher<br>Drewry Simmons Vornehm, LLP<br>sfisher@DSVlaw.com<br><br>George R. Calhoun V<br>Ifrah PLLC<br>george@ifrahlaw.com<br><br>Heather E. Simpson<br>Kennedys CMK LLP<br>heather.simpson@kennedyslaw.com<br>*Counsel for TIG Insurance Company* | James P. Moloy<br>Bose McKinney & Evans LLP<br>jmoloy@boselaw.com<br><br>Kevin P. Kamraczewski<br>Law Offices of Kevin P. Kamraczewski<br>kevin@kevinklaw.com<br><br>Robert B. Millner<br>Ronald D. Kent<br>Susan M. Walker<br>Dentons US LLP<br>robert.millner@dentons.com<br>ronald.kent@dentons.com<br>susan.walker@dentons.com<br>*Counsel for Virginia Surety Company Inc., f/k/a Combined Specialty Insurance Company* |
| Jeffrey B. Fecht<br>Riley Bennett Egloff LLP<br>jfecht@rbelaw.com<br><br>Cassandra L. Jones<br>Walker Wilcox Matousek LLP<br>cjones@wwmlawyers.com<br>*Counsel for RSUI Indemnity Company* | Wendy D. Brewer<br>Phillip A. Martin<br>Fultz Maddox Dickens PLC<br>wbrewer@fmdlegal.com<br>pmartin@fmdlegal.com<br><br>Abigail E. Rocap<br>Bates Carey LLP<br>arocap@batescarey.com<br>*Counsel for Endurance American Insurance Company* |
| Harley K. Means<br>Stephen J. Peters<br>Kroger Gardis & Regas, LLP<br>hmeans@kgrlaw.com<br>speters@kgrlaw.com<br><br>Eric D. Freed<br>Cozen & O'Connor<br>efreed@cozen.com<br>*Counsel for ACE American Insurance Company f/k/a CIGNA Insurance Company* | Bruce L. Kamplain<br>Cynthia E. Lasher<br>Norris Choplin Schroeder LLP<br>bkamplain@ncs-law.com<br>clasher@ncs-law.com<br>*Counsel for Western World Insurance Company* |
| Ginny L. Peterson<br>Casey R. Stafford<br>Kightlinger & Gray, LLP<br>gpeterson@k-glaw.com<br>cstafford@k-glaw.com | Hans H. J. Pijls<br>Dinsmore & Shohl LLP<br>Hans.pijls@dinsmore.com<br>*Counsel for National Casualty Company* |

| | |
|---|---|
| Nancy D. Adams<br>Mathilda S. McGee-Tubb<br>Laura Bange Stephens<br>Mintz Levin Cohn Ferris Glovsky & Popeo, PC<br>nadams@mintz.com<br>msmcgee-tubb@mintz.com<br>lbstephens@mintz.com<br>*Counsel for Liberty Insurance Underwriters, Inc.* | |
| Susan N.K. Gummow<br>Igor Shleypak<br>Foran Glennon Palandech Ponzi & Rudloff PC<br>sgummow@fgppr.com<br>ishleypak@fgppr.com<br>*Counsel for American International Group, Inc. & American Home Assurance Company* | Karen M. Dixon<br>Michael M. Marick<br>Skarzynski Marick & Black LLP<br>kdixon@skarzynski.com<br>mmarick@skarzynski.com<br><br>Joshua D. Weinberg<br>Katherine M. Hance<br>Shipman & Goodwin LLP<br>jweinberg@goodwin.com<br>khance@goodwin.com<br>*Counsel for Great American Assurance Company* |
| U.S. Trustee<br>Office of U.S. Trustee<br>ustpregion10.in.ecf@usdoj.gov | Catherine L. Steege<br>Melissa M. Root<br>Jenner & Block LLP<br>csteege@jenner.com<br>mroot@jenner.com<br>*Counsel for Debtor USA Gymnastics* |

            /s/ *Gregory M. Gotwald*
            Gregory M. Gotwald