**November 14, 2019**



_____
**Robyn L. Moberly
United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>USA GYMNASTICS,<br>              Debtor. | Chapter 11<br><br>Case No. 18-9108-RLM-11 |
| USA GYMNASTICS,<br>     Plaintiff,<br><br>v.<br>ACE AMERICAN INSURANCE COMPANY f/k/a CIGNA INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, LIBERTY INSURANCE UNDERWRITERS INC., NATIONAL CASUALTY COMPANY, RSUI INDEMNITY COMPANY, TIG INSURANCE COMPANY, VIRGINIA SURETY COMPANY, INC. f/k/a COMBINED SPECIALTY INSURANCE COMPANY, WESTERN WORLD INSURANCE COMPANY, ENDURANCE AMERICAN | Adv. Pro. No. 19-50012<br>in 18-09108-RLM-11 |

1

| INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, and DOE INSURERS, |
|---|
| Defendants. |

### BANKRUPTCY COURT'S PROPOSED FINDINGS AND CONCLUSIONS WITH RESPECT TO USAG'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND TIG'S CROSS- MOTIONS FOR SUMMARY JUDGMENT

In accordance with 28 U.S.C. 157(c)(1), the Bankruptcy Court now tenders its proposed findings and conclusions :

This matter came before the Court on the *Motion for Partial Summary Judgment against TIG Insurance Company* (the "**Motion**") filed by Debtor and Adversary Plaintiff USA Gymnastics, Inc. ("**USAG**") against Defendant TIG Insurance Company ("**TIG**"). USAG seeks an order under Fed. R. Civ. P. 56(a), made applicable to this Adversary Proceeding through Fed. R. Bankr. P. 7056, and S.D. Ind. L.R. B-7056-1 declaring: (1) the abuse and molestation exclusion ("Abuse and Molestation Exclusion") in the 2001 TIG policy applies only to Coverage A and B and specifically does not limit Coverage D; (2) the Abuse and Molestation Exclusion in the 1996 TIG excess policy does not apply to "bodily injury" claims such as the Sexual Abuse Claims;[1] and (3) the Abuse and Molestation Exclusion in the 1991 and 1992 TIG policies does not apply unless the claimant was in the "care, custody or control" of USAG or another insured at the time of abuse. [Dkt. 173, 176.]

TIG filed a *Cross-Motion for Partial Summary Judgment* (the "**Cross-Motion**") [Dkt. 214] and a *Memorandum of Law in Opposition of USAG's Motion for Partial Summary Judgment and in Support of Cross-Motion for Partial Summary*

---

[1] USAG defined Sexual Abuse Claims as the "claims asserted by individuals who allege that USAG is legally responsible for sexual abuse committed by Larry Nassar or by other persons."

2

*Judgment* (the "**TIG Response**") [Dkt. 215]. USAG filed a *Reply in Support of Motion for Partial Summary Judgment and Response to TIG's Cross-Motion* (the "**USAG Response**") [Dkt. 232], and TIG filed a *Reply in Support of Cross-Motion* (the "**TIG Reply**") [Dkt. 241]. The Court held oral argument on October 30, 2019. The motions are now ripe for decision.[2]

## UNDISPUTED FACTS

Dr. Larry Nasser was the Women's National Team doctor for the gymnasts who trained under the auspices of USAG. USAG also referred member-gymnasts to Nasser for treatment. Nasser (and possibly other perpetrators) sexually abused many of the gymnasts and hundreds of them have filed lawsuits in courts across the nation against USAG, and others, as well as filing Proofs of Claim in this bankruptcy proceeding. The plaintiffs in the lawsuits against USAG have alleged various causes of action including, but not limited to negligent breaches of duties, intentional infliction of emotional distress and fraud. The filing of this bankruptcy petition stayed all pending lawsuits against USAG and it is hoped that a global settlement can be reached. But, first, the question of insurance coverage must be resolved.

## INDIANA LAW CONTROLS

As an initial matter, the Court must ascertain what law should be applied to this diversity action. The parties have not raised choice of law issues. It is apparently agreed, as it should be, by the parties that this Court must follow Indiana law. The Court is required to follow the law as

---

[2] The issue before the court is a non-core claim upon which final judgment must be rendered by an Article III court absent consent of the parties. 28 U.S.C. §157(c)(2). TIG does not consent to entry of final judgment by the Bankruptcy Court in this matter and moved for withdrawal of the reference on March 5, 2019. (Dkt. 37). The District Court denied that motion since mediation was underway. TIG has filed a second motion for withdrawal of the reference on August 20, 2019. (Dkt. 192). That motion remains pending at this time. TIG has neither impliedly consented to this court's jurisdiction nor waived its right to entry of final judgment by the District Court by filing its cross-motion. See *Wellness Intern. Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1947 (2015).

3

articulated by the Indiana Supreme Court. See *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999). If that Court has not spoken to the issue, a federal court must predict how the Indiana Supreme Court would decide the question. *Id.*

The instant matter involves an insurance coverage dispute arising out of commercial general liability ("CGL") insurance policies sold to USAG by TIG. The parties dispute the applicability and construction of abuse/molestation exclusions in the following TIG policies: the 1991 primary policy, the 1992 primary policy, the 1996 primary policy, the 1996 excess policy, and the 2001 primary policy.

### The 1991 and 1992 Primary Policies

TIG issued to USAG general liability policy SSP-02719412 covering August 1, 1991 to August 1, 1992 (the "1991 policy") and general liability policy SSP35038808 covering August 1, 1992 to August 1, 1993 (the "1992 policy"). The parties agree that the Abuse and Molestation Exclusions ("AME") in both policies are identical and states:

> This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:
>
>> (a) The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
>> (b) the negligent:
>> a. employment;
>> b. investigation;
>> c. supervision;
>> d. reporting;
>> e. retention;
>> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a), above.[3]

---

[3] Dkt. #215-4 page 28 of 55 and #215-5 MP_62.

The primary policies contain three separate coverages, each with their own insuring agreement, definitions and exclusions. The first coverage is denoted "Coverage A. Bodily Injury and Property Damage Liability". Coverage A will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies." Excluded from coverage under Coverage A is expected or Intended Injury, Contractual Liability, Liquor Liability, Workers Compensation, Pollution liability, Watercraft liability, and so forth.

The second coverage is denoted "Coverage B. Personal and Advertising Injury Liability". Coverage B will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. Again, there are certain exclusions specified that apply to coverage B such as intentional acts, libel or slander occurring before the policy period, arising out of a criminal act by or at the direction of any insured, breach of contract, and a few others. This section defines "bodily injury", "coverage territory", "employee" and "suit" as well as other definitions.

"Coverage C. Medical Payments" states TIG will pay the medical expenses as described for "bodily injury" caused by an accident on the insured's premises because of the insured's operations. Again, there are exclusions listed such as expenses for bodily injury to any insured, a person hired to work for the insured, a person injured on the insured's premises, and for bodily injury excluded under Coverage A. This section also provides its own definitions.

The 1991 and 1992 policies contain a Participant Liability endorsement which expressly adds to Section 1, Coverage A,

"those sums which you become legally obligated to pay because of actions brought against you for 'bodily injury' or 'property damage' by a

5

participant while practicing for or participating in any contest or exhibition of an athletic or sports nature sponsored by you."

This is in contrast to the 2001 policy where the Participant Liability coverage is treated as coverage separate and apart from Coverages A, B and C.

The parties' disagreement about the AME in the 1991 and 1992 primary policies was not sharply drawn. TIG appears to concede that it must establish that a sexual abuse victim was in the care, custody or control of any insured for the AME to apply. That is exactly what the language of the policy states. Subpart (b) requires that subpart (a) apply. Unless the claimant was in the "care, custody or control" of the Insured, USAG, or another insured, the exclusion does not apply. TIG does not directly refute this position. TIG's response is that USAG is merely asking the Court to confirm by summary judgment exactly what the policies say.

The policy provides that, if the Insured "is an organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors….Your employees [are insureds] but only for acts within the scope of their employment by you."[4] The parties seem to agree Nasser was a volunteer and he is not an insured. If any abuser was an employee acting outside the scope of his or her employment, the AME also would not apply. And, if the wrongful sexual abuse occurred while the victim was not in the care, custody or control of an insured, then the AME would not apply and there would be coverage under the policies up to the limits of the policy in effect.

TIG has the burden of proving the exclusion applies. *FLM, LLC v. Cincinnati Ins. Co.,* 27 N.E.3d 1141, 1143 (Ind. Ct. App. 2015). The Court can not determine whether any particular claimant was in the care, custody

---

[4] Dkt. #215-4

6

or control of USAG or another insured at the time of the abuse and, therefore, this question of fact will remain to be proven as to the individual claimant.

The Abuse and Molestation Exclusion in the 1991 and 1992 Primary Policies does not apply unless the sexual abuse survivor was in the "care, custody or control" of USAG or another insured at the time of the abuse.

### 1996 EXCESS POLICY

USAG purchased an excess policy covering from September 16, 1996 to August 1, 1997 ("1996 excess policy")[5]. The 1996 excess policy follows form to primary policy SSP-37393550. The excess policy states:

> The Definitions, Terms, Conditions, Limitations, and Exclusions of the UNDERLYING INSURANCE, in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with a provision of this policy, or relate to premium, subrogation, any obligation to defend, the payment of expenses, limits of insurance, cancellation or any renewal agreement.

This primary policy contains similar coverages as the 1991 primary policies: Coverage A. Bodily Injury and Property Damage Liability, Coverage B. Personal and Advertising Injury, and Coverage C. Medical Payments.

The insuring agreement for Coverage A. Bodily Injury and Property Damage Liability states:

"a. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies."

Coverage A is supplemented by the Participant Liability Endorsement which states:

"Insurance provided to you under Coverage A includes those sums which you become legally obligated to pay because of actions brought against you for "bodily injury" or "property damage" by a PARTICIPANT while practicing for or

---

[5] Policy number KLB-37498134

7

participating in any contest or exhibition of an athletic or sports nature sponsored by you."

The primary policy defines the term "bodily injury" as follows:

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

The primary policy also defines the term personal injury:

> 13. "Personal Injury" means injury other than "bodily injury" arising out of one or more of the following offenses:
> a. False arrest, detention or imprisonment'
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
> e. Oral or written publication of material that violates a person's right of privacy.

The primary policy has different definitions for "bodily injury" and "personal injury". They are not synonymous.

TIG does not dispute the 1996 primary policy covers sexual abuse. TIG contends the molestation exclusion (AME) contained only in the 1996 excess policy excludes coverage for both personal injury and bodily injury resulting from sexual abuse. USAG argues the molestation exclusion contained only in the 1996 excess policy excludes only personal injury. The AME in the excess policy does not refer to bodily injury at all, it only refers to Personal Injury, capitalized and bolded. The AME in the 1996 excess policy states:

> This insurance does not apply to **Personal Injury** arising out of or contributed to by the molestation of anyone. The term molestation as used here includes, but is not limited to:
>
> 1. any actual, alleged or threatened sexual conduct or misconduct;
> 2. any actual, alleged or threatened mental or physical abuse;

8

3. any negligent screening, hiring, employment, training or supervision related to paragraphs 1. or 2. above; or
4. any investigation, failure to investigate, or failure to report to proper authorities which is related to paragraphs 1. or 2. above
for which any **insured** may be legally liable or for which any **Insured** may have assumed the liability of others.[6]

    TIG argues that the definition of Personal Injury contained in the primary policy cannot be used to define the same term in the excess policy. The primary policy utilizes quotation marks to define words with special meaning but the words **Personal Injury** are bolded in the excess policy, and are not in quotation marks. Therefore, the argument goes, the definition supplied by the primary policy cannot be used in the excess policy and one must resort to a dictionary to define the term.

    Policies are to be read as a person of average intelligence would read the policy. " 'Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence,' and if reasonably intelligent persons may honestly differ as to the meaning of the policy language, the policy is ambiguous." *Allgood v. Meridian Sec. Ins. Co.,* 836 N.E.2d 243, 246–47 (Ind. 2005) (quoting *Burkett v. Am. Family Ins. Grp.*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000)). "Ambiguities are construed strictly against the insurer to further the general purpose of the insurance contract to provide coverage." *Id.* at 247. This is particularly true where an exclusion provision is involved. *State Auto. Mut. Ins. Co. v. Flexdar, Inc.,* 964 N.E.2d 845, 848 (Ind. 2012), *Atlantic Casualty Insurance Company v. Garcia*, 878 F.3d 566, 569 (C.A.7 (Ind.), 2017). It is much less likely that an insured would bring their dictionary to the task of defining a word in a policy rather than turning to the definition provided by the primary policy. Even assuming the insured would find the term undefined and would resort to a dictionary definition, the result would be no different. TIG points to the definition in Black's Law Dictionary 350 (2d Ed. 2001) of "personal injury" as "any harm that

---

[6] Dkt. #215-8

9

is caused to a person, such as a broken bone, a cut, or a bruise; bodily injury" as well as "any invasion of a personal right, including mental suffering and false imprisonment."[7] Black's Law Dictionary, as quoted by TIG, provides a definition of personal injury which includes terms used in the primary policy for both bodily injury and personal injury. So, the Black's Law Dictionary definition of personal injury combines the policy's terms for both bodily injury and personal injury and doesn't help our analysis. TIG addresses this by stating, without reference, the first definition is the usual and common meaning of the term, suggesting we should ignore the full definition. In contrast, The Oxford English Dictionary, the definitive record of the English language, places its definitions in the order in which each word is first used. Oxford English Dictionary, Senses (2019), www.oed.com/public/oed3guide/guide-to-the-third-edition-of#sense. That is to say, the earliest known meanings are given first, not the usual and common meaning.

It is not a foregone conclusion that the usual and common meaning of an undefined word must be used if the word in the policy is not defined. It is only appropriate if the contract and the subject matter do not make it clear that another meaning was intended. *Hilbert v. Conseco Serv., LLC*, 836 N.E.2d 1001, 1008 (Ind.Ct.App.2005), trans. denied. In *Holiday Hospitality,* the parties agreed the term "care, custody and control" was unambiguous. The Indiana Supreme Court said there was "[n]othing in the terms of this contract that the phrase "care, custody or control" is meant to have anything other than a plain and ordinary meaning. *Holiday Hospitality Franchising, Inc. v AMCO Ins. Co.,* 983 N.E.2d 574, 579 (Ind. 2013).

---

[7] The complete definition of personal injury in the current version of Black's Law Dictionary is: (16c) Torts. 1. In a negligence action, any harm caused to a person, such as a broken bone, a cut, or a bruise; bodily injury. — Also termed bodily injury. 2. Any invasion of a personal right, including mental suffering and false imprisonment. — Also termed private injury. 3. For purposes of workers compensation, any harm (including a worsened preexisting condition) that arises in the scope of employment. INJURY, Black's Law Dictionary (11th ed. 2019).

However, in the present case the primary policy supplies a definition for the term "personal injury". There is no reason to resort to a dictionary definition to define a term defined by the underlying policy. Additionally, the Black's Law Dictionary definition adds no clarity to the meaning of the term. When a term has two or more definitions, it is ambiguous and must be construed in favor of coverage. *Travelers Indem. Co v. Summit Corp. of Am.,* 715 N.E.2d 926 (Ind. Ct. App. 1999). If the term was defined by the excess policy, the Court would use the definition given. Since it is not, the Court must use the definition given by the underlying primary policy, as required by the follow form language. That definition does not conflict with anything in the excess policy.

Therefore, the 1996 excess policy does provide bodily injury coverage for molestation at all covered times and events, but not for personal injury as that term is defined in the primary policy. Said differently, the Molestation Exclusion in the 1996 excess policy does not apply to "bodily injury" claims.

## 2001 PRIMARY POLICY

TIG issued a commercial general liability policy with number T7 3921762800 to USAG for the policy period August 1, 2001 to August 21, 2002 (the 2001 primary policy)[8]. The insuring agreement in the primary policy is essentially the same as in the 1991 and 1992 policies. There is Coverage A-Bodily Injury and Property Damage Liability, Coverage B-Personal and Advertising Injury Liability Coverage C- Medical Payments, and an endorsement adding Coverage D-Legal Liability to Participants. The 2001 primary policy differs from the 1991 and 1992 policies by separating Legal Liability to Participants from Coverage A and identifying it as separate Coverage "D".

There is an AME in the 2001 policy that was expressly "added to Paragraph 2. Exclusions of Section 1-Coverage A-Bodily Injury And Property Damage Liability

---

[8] The Declarations page states that the insurance covers the period from 8/1/2001 to 8/1/2004 but it was cancelled on 8/1/2002.

and Paragraph 2. Exclusions of Section 1-Coverage B-Personal and Advertising Injury Liability." The text of the exclusion is as follows:

> This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of:
> 1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
> 2. The negligent:
>    a. Employment;
>    b. Investigation;
>    c. Supervision;
>    d. Reporting to the proper authorities, or failure to so report; or
>    e. Retention;
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1. above.[9]

The exclusion expressly applies only to Section 1-Coverage A and Coverage B, Bodily Injury, Property Damage and Personal and Advertising Injury. By omission, it does not apply to Coverage C or D. This is the plain and only plausible reading of the policy.

The Legal Liability to Participants form (Coverage D) insuring agreement states:

a. We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" to any "participant". We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" to which this insurance does not apply. [10]

In addition to the coverage added by Coverage D (Liability to Participants), the 2001 primary policy also provides a Sexual Abuse or Molestation Liability Coverage Form that contains the following insuring agreement:

SEXUAL ABUSE OR MOLESTATION LIABILITY
A. Insuring Agreement
1. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" caused by a "sexual abuse occurrence". We will have the right and the duty to defend any "suit" seeking those damages. We

---

[9] Dkt. #215-6
[10] Dkt. #215-6

may at our discretion investigate any "sexual abuse occurrence" and settle any claim of "suit" that may result….[11]

The parties' dispute centers around whether the Abuse or Molestation Exclusion also applies to Coverage C- Medical Payments[12] and Coverage D- Liability to Participants. USAG concedes the exclusion applies to Coverages A and B.

TIG's position is that the AME, which expressly applies only to Coverages A and B, impliedly "shifts coverage" for any bodily injury to participants from Coverage A (bodily injury) to Coverage D (injury to participants). TIG argues that the prefatory language to the AME ("This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part") means that the AME doesn't only apply to Coverages A and B, it also applies to C and D. That is not a reasonable interpretation of the policy. *Eli Lilly & Co. v. Home Ins. Co.,* 482 N.E.2d 467 (Ind. 1985) instructs us that if a policyholder's interpretation of a policy is reasonable, then its interpretation controls. When looking at the policy as a whole, as this Court must, the endorsement does modify the CGL, but expressly and only modifies Coverages A and B. The prefatory language does not expand the restrictive language from Coverages A and B to all of the CGL. This is the plain and only plausible reading of the policy.

TIG explains that the reason the AME doesn't state that it applies to Coverage D is because the AME is an Insurance Services Office form ("ISO") and ISO CGL forms don't contain a Coverage D.[13] This explains the omission by TIG, but doesn't change the meaning of the policy language nor the coverage granted by the policy.

---

[11] Dkt. 215-6 at page 68.
[12] While the AME does not state that it applies to Coverage C- Medical Payments, Coverage C's exclusion "g." states that Coverage C does not apply to expenses for bodily injury excluded under Coverage A.
[13] There is no designated evidence supporting this explanation for the structure of the policy.

13

Coverage D has its own listed exclusions: "Bodily injury that is excluded under SECTION 1.-COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Exclusions. Paragraphs a., b., c., d., e., f., g., h., i., and o.

The listed exclusions for coverage D do not list an AME. Exclusions in insurance policies are narrowly construed. *Allstate Ins. Co. v. Preferred Financial Solutions, Inc.,* 8 F.Supp.3d 1039, 1049 (S.D.Ind.,2014) citing *American States Ins. Co. v. Kiger*, 662 N.E.2d 945, 949 (Ind.1996).

The AME could have easily been made to apply to the entire policy by just saying it modifies the entire CGL policy without exception. Or, it could have listed all of the coverages individually to which the AME applied, not just coverages A and B. TIG knows how to apply an exclusion to an entire policy because it did so in the Asbestos and the Fireworks exclusions.

TIG cites to a Georgia Court of Appeals case which it argues is analogous, *Capitol Indem., Inc. v. Brown*, 581 S.E.2d 339, 342–43, 260 Ga.App. 863, 866 (Ga.App.,2003). That case is easily distinguished here. The CGL policy in *Capitol Indemnity* states in the form schedule that the assault or battery exclusion applies to *all* coverages under the Commercial General Liability Coverage Part [emphasis added]. The TIG policy here merely states that the AME modifies the policy, and then specifically states that it modifies Coverages A and B. This is significantly different than the cases cited by TIG.

USAG's argument is bolstered by the fact that each of the separate Coverages contains its own definitions and exclusions. An exclusion can bar coverage only when its terms "clearly and unmistakably" apply. *Asbury v Ind. Union Mut. Ins. Co.,* 441 N.E.2d 232 (Ind. Ct. App. 1982).

The very most that can be said in support of TIG's position is that the AME language that says it modifies the policy creates an ambiguity because

14

it conflicts with the language that it only modifies Coverages A and B. As is well known, ambiguities must be resolved in favor of coverage. *Eli Lilly & Co.,* 482 N.E.2d at 470-71.

Accordingly, the Bankruptcy Court proposes that:

the District Court GRANT USAG's Motion for Partial Summary Judgment and declare the Abuse and Molestation Exclusion in the 1991 and 1992 primary policies does not apply unless the sexual abuse survivor was in the "care, custody or control" of USAG or another insured at the time of the abuse.

the District Court also GRANT USAG's Motion for Partial Summary Judgment and declare the 1996 Excess Policy Molestation Exclusion does not apply to "bodily injury" coverage for molestation at all covered times and events; and

the District Court further GRANT USAG's Motion for Partial Summary Judgment and declare that the Abuse or Molestation Exclusion in the 2001 primary policy only applies to Coverages A and B and does not apply to Coverages C or D. However, the Court should note that Coverage C contains its own exclusion that excludes Medical Payment coverage to expenses for bodily injury excluded under Coverage A.

#    #    #