**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re:<br><br>USA GYMNASTICS,<br><br>Debtor. | Chapter 11<br><br>Case No. 18-09108-RLM-11 |
| USA GYMNASTICS,<br><br>Plaintiff,<br><br>vs.<br><br>ACE AMERICAN INSURANCE COMPANY f/k/a CIGNA INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, LIBERTY INSURANCE UNDERWRITERS INC., NATIONAL CASUALTY COMPANY, RSUI INDEMNITY COMPANY, TIG INSURANCE COMPANY, VIRGINIA SURETY COMPANY, INC. f/k/a COMBINED SPECIALTY INSURANCE COMPANY, WESTERN WORLD INSURANCE COMPANY, ENDURANCE AMERICAN INSURANCE COMPANY, AMERICAN INTERNATIONAL GROUP, INC., and AMERICAN HOME ASSURANCE COMPANY, AND DOE INSURERS,<br><br>Defendants. | Bankr. Adv. Case No. 19-50012 |

**DECLARATION OF RONALD P. SCHILLER IN SUPPORT OF LIBERTY INSURANCE UNDERWRITERS INC.'S MOTION FOR LEAVE TO TAKE DISCOVERY REGARDING FACTUAL ISSUES RAISED IN USA GYMNASTICS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST LIU ON INDEMNITY AND TO EXTEND TIME TO RESPOND TO PENDING SUMMARY JUDGMENT MOTION**

Pursuant to Federal Rule of Civil Procedure 56(d), Ronald P. Schiller declares as follows:

1. I am a shareholder in the law firm of Hangley Aronchick Segal Pudlin & Schiller. I represent Defendant Liberty Insurance Underwrites Inc. ("LIU") in the above-captioned proceeding. The facts set forth in this declaration are based on personal knowledge or, where indicated by citation to the dockets, the record in this case.

2. I submit this declaration in accordance with Federal Rule of Civil Procedure 56(d) in support of LIU's Motion for Leave to Take Discovery Regarding Factual Issues Raised in USA Gymnastics' Motion for Partial Summary Judgment Against LIU on Indemnity And To Extend Time To Respond To Pending Summary Judgment Motion (the "Discovery Motion"). The motion is being filed following the conference with the Court on April 27, 2022, where the Court agreed that LIU could file this motion at this time.

3. On April 18, 2022, Plaintiff USA Gymnastics ("USAG") filed its Motion for Partial Summary Judgment Against LIU on Indemnity, Adv. Proc. ECF 635 (the "Indemnity Motion"), along with a supporting memorandum of law, Adv. Proc. ECF 637, and eight exhibits, *see* Adv. Proc. ECF 637-1 – 637-8.

4. As set forth in LIU's Discovery Motion and the supporting brief ("Memo."), USAG's arguments in favor of summary judgment against LIU rely heavily on disputed facts. Those arguments include the following: (1) Whether the LIU Policy's Third Party EPL sublimit[1] applies to USAG's claim for indemnity; (2) Whether the LIU Policy's **Defense Costs and Settlements** provision (the "Consent Requirement")

---

[1] The Nonprofit Executive Advantage Policy issued by LIU to USAG from May 16, 2016, through May 16, 2017 (the "LIU Policy") is attached to this Declaration as Exhibit 1. Bolded terms are defined in the LIU Policy.

2

applies as a defense to indemnity; and (3) Whether the LIU Policy's **Other Insurance** clause (the "Other Insurance Trigger") applies as a defense to indemnity.

5.  Additionally, the Indemnity Motion necessarily raises the question of whether LIU has other defenses to indemnifying USAG.

6.  LIU is entitled not only to offer legal arguments that USAG's position is wrong as a matter of law, but also to demonstrate through admissible evidence that, at a minimum, genuine disputes of material fact preclude the entry of summary judgment in USAG's favor. Where, as here, a party "cannot present facts essential" to justify its opposition to a motion for summary judgment, the non-moving party—LIU—is entitled to conduct discovery before responding to the motion. *See* Fed. R. Civ. P. 56(d).

### I. LIU Is Entitled to Discovery Regarding the Third Party EPL Sublimit, So that It Can Present Facts Essential to Justify Its Opposition

7.  USAG's request for summary judgment on the LIU Policy's Third Party EPL sublimit is USAG's second attempt for summary judgment on this issue. There are numerous disputed facts about which LIU needs discovery to be able to justify its opposition.

8.  *First*, USAG asserts that "[t]he only possible place this limit [on Third Party EPL coverage] could attach is to the policy's sub-coverage for an Employment Practices Wrongful Act." Adv. Proc. ECF 637, at 7. But the only evidence that USAG cites does not in fact support USAG. *See* Memo. at 11-13. Instead, there is a factual dispute about the scope of the Third Party EPL coverage and the conduct to which it applies. *See id.*

9.  *Second*, USAG concedes that in 2013, LIU removed Third Party EPL from USAG's policy, *see* Adv. Proc. ECF 637, at 9, but the Indemnity Motion omits *why* that

coverage was deleted in 2013. *See* Memo. at 13. According to the Weber Declaration previously submitted to the Court by LIU,[2] Third Party Employment Practices Liability coverage was deleted from the LIU Policy in 2013 after USAG reported a **Claim** arising from a lawsuit by an athlete against USAG involving allegations of sexual misconduct. LIU needs discovery regarding (1) the specific nature of the 2013 sexual assault allegation; and (2) the parties' negotiations precipitating their decision to the return of Third Party EPL coverage to the LIU Policy subject to a sublimit.

10. *Third*, USAG asserts that Larry Nassar was a volunteer and not an employee of USAG and so the Third Party EPL sublimit does not apply to Nassar's conduct or USAG's failure to supervise Nassar. *See* Adv. Proc. ECF 637, at 14. But USAG does not provide any evidence for this assertion. *See* Memo. at 13-14. LIU needs discovery to confirm whether and when Nassar was employed by USAG (without regard to whether it matters if Nassar was a volunteer, as noted next).

11. *Fourth*, USAG asserts that the words "employees" and "volunteers" are mutually exclusive and a volunteer is not an employee for the purposes of the LIU Policy's Third Party EPL sublimit. *See* Adv. Proc. 637, at 14. But USAG cites no evidence to support that assertion, and LIU has identified evidence that shows the opposite is at least sometimes true. *See* Memo. at 14-15.  LIU needs discovery to determine whether the Third Party EPL sublimit encompasses volunteers.

---

[2] In LIU's objections to the Court's Proposed Findings of Fact and Conclusions of Law regarding USAG's Summary Judgment Motion on LIU's duty to defend, LIU submitted a declaration from Todd Weber, the LIU underwriting manager responsible for the USAG account with LIU from 2010 until 2017, which is attached to this Declaration as Exhibit 2.

4

12. The Seventh Circuit Court of Appeals, in its ruling remanding the Third Party EPL issue to the trial court, identified one category of discovery that is undeniably useful to address the foregoing factual issues: evidence of "the parties' conduct," *i.e.*, the LIU Policy's initial inclusion, then deletion, and the re-addition of Third Party EPL coverage, and "what the [Third Party EPL] term they inserted into the policy meant." *USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 27 F.4th 499, 533 (7th Cir. 2022).

13. LIU therefore needs to take discovery about the Third Party EPL in the form of, *inter alia*: (1) production of USAG's documents and internal communications; (2) document production from USAG's insurance agent, and its broker; (3) interrogatories; (4) depositions of USAG, its insurance agent, and its broker; and (5) expert testimony.

**II. LIU Is Entitled to Discovery Regarding USAG's Arguments on Whether USAG Breached the Consent Requirement in the LIU Policy, So that LIU Can Present Facts Essential to Justify Its Opposition**

14. The Indemnity Motion also seeks summary judgment on the applicability of the LIU Policy's Consent Requirement. *See* LIU Policy, § 2.2. In an attempt to avoid application of the Consent Requirement here, USAG makes a litany of arguments about how LIU supposedly forfeited its rights by materially breaching the LIU Policy.

15. *First*, USAG asserts that LIU breached its duty to defend the *investigations* of USAG. *See* Adv. Proc. ECF 637, at 22-26. But it is unclear whether USAG is also claiming LIU materially breached its duty to defend the tort claims. *See* Memo. at 16. LIU needs discovery from USAG of whatever supporting evidence it has regarding any alleged material breach of LIU's duty to defend the tort claims against USAG.

5

16. *Second*, USAG claims that it cannot be adequately compensated for LIU's breach of the LIU Policy. *See* Adv. Proc. ECF 637, at 21. But USAG has not established that it suffered any harm other than monetary damages, *see* Memo. at 16-17, which are compensable. If USAG is claiming intangible harm beyond the amounts it had to pay to provide its own defense, LIU needs discovery from USAG about those alleged harms.

17. *Third*, USAG takes issue with the 4% share of USAG's litigation defense costs that LIU paid USAG prior to October 2021. *See* Adv. Proc. ECF 637, at 24. If USAG is in fact contending that the difference between a 4% and 5% allocation of the tort defense costs to LIU was a material breach or otherwise harmed USAG, LIU is entitled to seek discovery of any facts purportedly supporting that claim.

18. *Fourth*, USAG states that LIU's conduct did not "comport with standards of good faith and fair dealing" by asserting that "LIU is the only party who has refused to participate in the bankruptcy settlement, and it lacks any good-faith reason for that refusal." Adv. Proc. ECF 637, at 25. But LIU disputes that it refused to participate in the settlement agreement. To defend itself from USAG's accusation, LIU needs discovery from USAG about: (1) which parties were invited to participate in the mediation with Judge Carr that precipitated the settlement; (2) why LIU was not invited to participate in the mediation and/or settlement discussions; (3) what evidence USAG has, if any, that LIU refused to participate in the settlement; and (4) if LIU was intentionally excluded from participating in the settlement, why that was and whether the exclusion was in good faith. LIU did not participate in the mediation and settlement negotiations – because it was not asked to participate, as a decision was made by others to treat LIU differently than the general liability ("GL") insurers – and thus LIU has no access to any of those materials.

6

19. LIU needs discovery to access evidence about these disputed facts, in the form of, *inter alia*: (1) production of documents and communications, including communications exchanged between USAG and the other parties during the mediation and settlement negotiations; (2) depositions of USAG's corporate designee and its employees; (3) interrogatories related to USAG's claimed harms and the settlement negotiations; and (4) expert testimony.

### III. LIU Is Entitled to Discovery Regarding USAG's Arguments on Whether the LIU Policy's Other Insurance Trigger Applies to USAG's Indemnity Claim, So that LIU Can Present Facts Essential to Justify Its Opposition

20. The Indemnity Motion seeks summary judgment on the applicability of the LIU Policy's Other Insurance Trigger. In support of its argument that the Other Insurance Trigger did not apply here, USAG makes various assertions that are unsupported by evidence, including that the LIU Policy and the GL policies do not cover the same risk and are not for the benefit of the same parties. *See* Memo. at 18-19. To rebut these conclusory assertions, LIU needs to take document discovery from USAG, including, without limitation, of the policies issued by USAG's other insurers, USAG's coverage correspondence with the other insurers, and any coverage analysis conducted by USAG. LIU may also need to serve interrogatories and take depositions related to the same subject matter.

### IV. LIU Is Entitled to Discovery Regarding Whether USAG Is Seeking Indemnity for a Loss Covered by the LIU Policy, So that LIU Can Present Facts Essential to Justify Its Opposition

21. LIU needs discovery to determine whether USAG is requesting indemnity for a covered **Loss**.

22. *First*, USAG states that the "Chapter 11 Plan ... resolved the sexual-abuse claims" and "USAG borrowed $6,150,000 from the USOPC and contributed it to the resolution of the sexual-abuse claims," Adv. Proc. 637, at 3, but it is unclear whether *all* of the amount USAG is paying relates to *Nassar's* abuse, or some of USAG's funds are to pay claims concerning abuse by *other USAG employees or volunteers* that were not made during the LIU **Policy Period**. *See* Memo. at 19. As a result, LIU needs discovery, in the form of document requests, depositions, and interrogatories, among other things, to determine whether and to what extent USAG's payments are for **Claims** within the LIU Policy.

23. *Second*, while the confirmation hearing was ongoing on December 13, 2021, after a three hour continuance, USAG disclosed for the first time that it had agreed the day before to contribute an amount just above the **Policy Limits** of the LIU Policy – $6,150,000 – to the settlement, funded by an interest-free loan from the USOPC. *See* Memo. at 19-20. As LIU was not involved in these settlement discussions, it has no access to, and thus needs depositions, interrogatories, and production of documents regarding whether the settlement was in bad faith or collusive.

24. *Third*, LIU requires discovery to determine whether the tort litigants' claims are for bodily injury. The LIU Policy contains an exclusion for bodily injury, *see* LIU Policy,§ 4.1(a), and it is an open question whether and to what extent that exclusion applies to indemnification for the specific claims that were settled and released in the Plan and which will be paid by USAG's contribution. *See* Memo. at 20. Thus, LIU needs document discovery and potentially depositions and interrogatories to determine exactly what claims the Plan released and whether they were for excluded bodily injuries. This is a separate inquiry, now that the tort claims have settled, than it was as

to the defense issue in the past. Evidence as to the tort claims actually settled is relevant, and LIU is entitled to pursue discovery concerning settled claims in the new context of a claim for indemnity.

25. *Fourth* and finally, LIU requires discovery to obtain relevant information about when USAG first received any Nassar-related "claim," and thus whether such claims, and costs related to them, are covered under the LIU Policy. There is significant, recent evidence that requires further factual development about when a Nassar-related **Claim** was first made, including a report by CHILD USA's Game Over Commission to Protect Youth Athletes and the Department of Justice's Office of Inspector General. *See* Memo. at 20-22. The recent evidence all became available *long after* USAG filed its Summary Judgment Motion on LIU's duty to defend. Indeed, the two reports, which for the first time describe in concrete detail potential Nassar-related "claims" that pre-date the LIU Policy, were not published until LIU's appeal of the duty to defend order was pending in the Seventh Circuit. Thus, this discovery was never previously available to LIU. LIU needs document discovery and will likely need to take depositions to determine when USAG first received any "written demand, complaint, indictment, notice of charges, or order of formal investigation" related to allegations against Nassar.

26. As is the case with all discovery, it is impossible to predict at the beginning what forms and sources of discovery LIU will need to pursue. References to any form, source, or subject of discovery are not meant to limit LIU's intention and opportunity to pursue others.

27. Because LIU has not had the ability to complete discovery, in particular to take depositions, on the topics at issue in the Indemnity Motion, the Motion should not be adjudicated before LIU has completed the necessary discovery.

9

I declare, under the penalty of perjury, that the statements above are true and correct to the best of my knowledge and belief.

Dated: May 12, 2022             */s/ Ronald P. Schiller*
                                Ronald P. Schiller