**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In re: | : |
| | : |
| | : Chapter 11 |
| USA GYMNASTICS, | : |
| | : Case No. 18-09108-RLM-11 |
| Debtor. | : |
| | : |
| | : |
| USA GYMNASTICS, | : |
| | : |
| Plaintiff, | : Bankr. Adv. Case No. 19-50012 |
| | : |
| vs. | : |
| | : |
| ACE AMERICAN INSURANCE COMPANY f/k/a | : |
| CIGNA INSURANCE COMPANY, GREAT | : |
| AMERICAN ASSURANCE COMPANY, LIBERTY | : |
| INSURANCE UNDERWRITERS INC., | : |
| NATIONAL CASUALTY COMPANY, RSUI | : |
| INDEMNITY COMPANY, TIG INSURANCE | : |
| COMPANY, VIRGINIA SURETY COMPANY, | : |
| INC. f/k/a COMBINED SPECIALTY | : |
| INSURANCE COMPANY, WESTERN WORLD | : |
| INSURANCE COMPANY, ENDURANCE | : |
| AMERICAN INSURANCE COMPANY, | : |
| AMERICAN INTERNATIONAL GROUP, INC., | : |
| and AMERICAN HOME ASSURANCE | : |
| COMPANY, AND DOE INSURERS, | : |
| | : |
| Defendants. | : |
| | : |

**LIBERTY INSURANCE UNDERWRITERS INC.'S BRIEF IN
SUPPORT OF RULE 56(d) MOTION FOR LEAVE TO TAKE
DISCOVERY REGARDING FACTUAL ISSUES RAISED IN USA
GYMNASTICS' MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST LIU ON INDEMNITY AND TO EXTEND TIME TO
RESPOND TO PENDING SUMMARY JUDGMENT MOTION**

**TABLE OF CONTENTS**

I.    Background ................................................................................................. 3

    A.    The LIU Policy ................................................................................ 3

    B.    Procedural History ......................................................................... 4

        1.    Bankruptcy Court and District Court Proceedings on USAG's Motion for Summary Judgment on LIU's Duty to Defend USAG Including the Applicability of the Third Party EPL Sublimit, But Not on Indemnity for any Loss ................................. 5

        2.    The Court of Appeals Reverses the Grant of Summary Judgment on the Third Party EPL Sublimit and Remands for So LIU Can Pursue and Present Extrinsic Evidence ........................ 7

        3.    USAG, the Nassar Tort Claimants, and Certain Insurers Reach a Settlement Agreement ........................................... 7

        4.    USAG Moves for Summary Judgment on Indemnity Issues ........... 8

II.    Argument .................................................................................................. 9

    A.    Legal Standard ................................................................................ 9

        1.    The Duty to Indemnify Under Indiana Law ..................................... 9

        2.    Motions for Leave to Conduct Discovery Under Rule 56(d) ........... 9

    B.    The Indemnity Motion Presents Questions of Fact to Which LIU Needs Discovery to Respond ......................................................... 10

        1.    LIU Needs Discovery to Respond to USAG's Arguments on the Third Party EPL Sublimit ........................................................ 10

        2.    LIU Needs Discovery to Respond to USAG's Arguments on Whether USAG Breached the Consent Requirement in the LIU Policy ....................................................................................... 15

        3.    LIU Needs Discovery to Respond to USAG's Arguments on Whether the LIU Policy's Other Insurance Trigger Applies to USAG's Indemnity Claim ................................................................ 18

        4.    LIU Needs Discovery to Determine Whether USAG Is Seeking Indemnity for a Loss Covered by the LIU Policy ............... 19

    C.    The Court Should Permit LIU to Take the Requested Discovery Because LIU Has Not Failed to Pursue Discovery Diligently Nor Will the Discovery Be Futile ......................................................... 22

III.    Conclusion ............................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berry Plastics Corp. v. Illinois National Insurance Co.*,
   244 F. Supp. 3d 839 (S.D. Ind. 2017),
   *aff'd*, 903 F.3d 630 (7th Cir. 2018) ............................................................................. 24

*Cairel v. Alderden*,
   821 F.3d 823 (7th Cir. 2016) .................................................................................. 14

*Colonial Life & Accident Insurance Co. v. Newman*,
   288 N.E.2d 195 (Ind. 1972) .................................................................................. 24

*Craig & Landreth, Inc. v. Mazda Motor of America, Inc.*,
   No. 07-CV-0134, 2010 WL 107346 (S.D. Ind. Jan. 6, 2010) ...................................... 10

*CSI Worldwide, LLC v. TRUMPF Inc.*,
   944 F.3d 661 (7th Cir. 2019) .................................................................................. 12

*Davis v. G.N. Mortgage Corp.*,
   396 F.3d 869 (7th Cir. 2005) .................................................................................... 9

*Eli Lilly & Co. v. Valeant Pharmaceuticals International*,
   No. 08-CV-1720, 2009 WL 4745664 (S.D. Ind. Dec. 4, 2009) ................................... 10

*Frazier v. Mellowitz*,
   804 N.E.2d 796 (Ind. Ct. App. 2004) ................................................................ 17, 24

*King v. Cooke*,
   26 F.3d 720 (7th Cir. 1994) ................................................................................ 9, 10

*Magnetek, Inc. v. The Travelers Indemnity Co.*,
   No. 17 3173, 2019 U.S. Dist. LEXIS 115231 (N.D. Ill. July 11, 2019) .......................... 25

*McCaskill v. SCI Management Corp.*,
   298 F.3d 677 (7th Cir. 2002) .................................................................................. 12

*Midwestern Indemnity Co. v. Laikin*,
   119 F. Supp. 2d 831 (S.D. Ind. 2000) ...................................................................... 19

*Pierce v. City of Chicago*,
   No. 09-CV-1462, 2012 U.S. Dist. LEXIS 14331 (N.D. Ill. Feb. 7, 2012) ...................... 11

*Robinson v. McNeil Consumer Healthcare*,
   615 F.3d 861 (7th Cir. 2010) .................................................................................. 12

*Seymour Manufacturing Co. v. Commercial Union Insurance Co.*,
 665 N.E.2d 891 (Ind. 1996) ........................................................................ 9

*Smith v. OFS HealthCare Sys*tem,
 933 F.3d 859 (7th Cir. 2019) .............................................................. 10, 24

*Trisler v. Indiana Insurance Co.*,
 575 N.E.2d 1021 (Ind. Ct. App. 1991) ........................................................ 9

*United States v. One Heckler-Koch Rifle*,
 629 F.2d 1250 (7th Cir. 1980) ....................................................................12

*USA Gymnastics v. Liberty Insurance Underwriters, Inc.*,
 27 F.4th 499 (7th Cir. 2022) .............................................................. *passim*

**Statutes**

28 U.S.C. § 157(e) .........................................................................................1

Bankruptcy Code Chapter 11 .......................................................... *passim*

Federal Rule of Civil Procedure 56 ................................................. *passim*

**Other Authorities**

3 NEW APPLEMAN LAW OF LIABILITY INSURANCE §19.03 .................................12, 14

*A Case-Study of Systemic Abuse in Sports Perpetrated by Larry Nassar*,
 CHILD USA's Game Over Commission to Protect Youth Athletes (Jan.
 2022), https://childusa.org/wp-content/uploads/2022/01/Game-
 Over-Commission-Report-FINAL-1.28.22.pdf ...........................................21

*Investigation and Review of the Federal Bureau of Investigation's
 Handling of Allegations of Sexual Abuse by Former USA Gymnastics
 Physician Lawrence Gerard Nassar at 22-57, Department of Justice
 Office of the Inspector General (July 2021)*,
 https://oig.justice.gov/sites/default/files/reports/21-093.pdf...............................22

USA Gymnastics ("USAG") has moved for summary judgment seeking indemnification from Liberty Insurance Underwriters Inc. ("LIU") (the "Indemnity Motion"). As set forth below and in the accompanying declaration, USAG's Indemnity Motion is premature. LIU has not had, but needs, an opportunity to conduct discovery to present facts essential to support its opposition to the Indemnity Motion that have not previously been available to LIU. As a result, pursuant to Federal Rule of Civil Procedure 56(d), the Court[1] should grant LIU leave to take the required discovery and defer any obligation to respond to the Indemnity Motion.[2]

A central issue raised by the Indemnity Motion is the sublimit in the LIU Policy for "Third Party EPL." *See* LIU Policy, Endorsement No. 6, Ex. 1 to Schiller Decl. (hereinafter, the "LIU Policy" or the "Policy"). By seeking summary judgment on the applicability of the sublimit for Third Party EPL, the Indemnity Motion ignores the Seventh Circuit Court of Appeals' recent decision reversing the prior decision on this issue and remanding for fact finding.[3] *See USA Gymnastics v. Liberty Ins.*

---

[1]    LIU preserves its position that jurisdiction over this proceeding now is in the district court. Because this Court has rejected that position, and without prejudice to LIU's jurisdictional arguments, LIU seeks leave to conduct discovery here. Regardless of what court has jurisdiction, the discovery at issue in this Motion will need to be conducted. LIU agrees that any discovery conducted under the auspices of this Court will be applicable in proceedings on USAG's claims in any other court.

[2]    This case involves five federal court dockets: the Chapter 11 case, "Bankr."; the adversary proceeding in this Court, "Adv. Proc."; the district court action, "D. Ct."; LIU's previous appeal of the injunctive portion of an order to pay prospective defense costs, *USA Gymnastics v. Liberty Insurance Underwriters, Incorporated*, 7th Cir. No. 20-1245, "C.A.7"; and LIU's appeal of the Chapter 11 Plan, S.D. Ind. No. 21-3065, "Bankr. App."

[3]    As LIU has demanded a jury trial and has not consented to such a trial occurring in the bankruptcy court, *see* Adv. Proc. ECF 105, at 7, any fact finding concerning USAG's indemnity claim must occur before a jury in the district court, even if this Court has subject-matter jurisdiction to continue hearing this action prior to trial. 28 U.S.C. § 157(e).

*Underwriters, Inc.*, 27 F.4th 499 (7th Cir. 2022) ("the Appeal"). The Court of Appeals held that "[t]here may be a $250,000 aggregate limit for some or all of the covered claims, subject to what the actual extrinsic evidence shows about the parties' conduct and what the term they inserted into the policy meant. *Because more fact finding is required to resolve this question, this portion of the case is remanded to the district court for that to be accomplished.*" *Id.* at 533 (emphasis added). To date, the parties have not engaged in discovery about the sublimit or the fact-finding discussed by the Court of Appeals. For that reason alone, the Court should grant this Rule 56(d) Motion.

Beyond ignoring that discovery is required to implement with the Court of Appeals' decision, the Indemnity Motion also seeks summary judgment on – or simply ignores – various coverage defenses, despite the fact that each issue turns on obvious factual issues about which LIU will need discovery to respond. More specifically, beyond the Third Party EPL sublimit issue, LIU needs discovery to respond to USAG's arguments about whether (1) USAG breached the **Defense Costs and Settlements Provision** in the LIU Policy by not obtaining LIU's prior written consent before settling the tort claims (the "Consent Requirement"); (2) LIU Policy's **Other Insurance** clause applies to USAG's indemnity claim and puts other policies' coverage before LIU's, such that the LIU Policy is not triggered yet (the "**Other Insurance** Trigger"); and (3) the indemnity USAG is seeking is for a **Loss** covered by the LIU Policy.

Because the USAG settlement with the tort claimants only recently occurred and USAG's Indemnity Motion is the first time these issues have been presented (with the exception of the Third Party EPL sublimit, about which LIU first stated its need for discovery more than two years ago, *see* Adv. Proc. ECF 163, at 30; Adv. Proc. ECF 270, at 40), the discovery now is appropriate. LIU has not failed to pursue the requested

discovery diligently, and the requested discovery is necessary to resolve the issues raised in USAG's Indemnity Motion, and so conducting the discovery will not be futile. As a result, and as shown by the accompanying Rule 56(d) Declaration, the Court should grant LIU's Rule 56(d) Motion for Leave to Take Discovery Regarding Factual Issues Raised in USA Gymnastics' Motion for Partial Summary Judgment Against LIU on Indemnity and to Extend Time to Respond to Pending Summary Judgment Motion (the "Discovery Motion").

I.    **Background**

    A.    **The LIU Policy**[4]

LIU issued a Nonprofit Executive Advantage Policy to USAG for the **Policy Period** from May 16, 2016, through May 16, 2017. Under the Policy's **Insuring Agreement**,

> The Insurer shall pay on behalf of the **Insureds** all **Loss** which they shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or **Discovery Period**, if applicable, against the **Insureds** for a **Wrongful Act** which takes place before or during the **Policy Period**.

LIU Policy, § 1.

The Policy's **Limit of Liability** states that LIU's "maximum aggregate Limit of Liability for all Loss under this Policy shall be the amount set forth in Item III of the Declarations. Amounts incurred as Defense Costs shall be in addition to the Limit of Liability." *Id.*, § 9.1. There is a $5 million Limit of Liability identified in Item III of the Declarations, but a Sub-Limit Endorsement to the Policy provides a $250,000 Limit of Liability for "Third Party EPL". *Id.*, Endorsement No. 6.

---

[4]    Bold terms are defined in the LIU Policy.

The LIU Policy also includes other relevant limitations on coverage. Regarding

coverage of **Defense Costs and Settlements**, the Policy states:

> The **Insureds** shall not incur any **Defense Costs**, admit any liability, assume any obligation, agree to any settlement, or make any settlement offer with respect to any **Claim** *without the Insurer's prior written consent*, which shall not be unreasonably withheld. The Insurer shall not be liable for any **Defense Costs** incurred or any admissions, obligations, agreements, or settlements made by the **Insureds** without the Insurer's prior written consent.

*Id.*, § 2.2 (emphasis added). Additionally, the Policy includes an **Other Insurance**

clause, which provides the following limitation on coverage:

> If any **Loss** arising from any **Claim** is insured by other valid and collectible insurance, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy to this Policy's Policy Number.

*Id.*, § 12.

Finally, the LIU Policy includes a **Claim Exclusion** for "bodily injury,

sickness, disease, [or] death." LIU Policy, § 4.1(a).

### B.    Procedural History

On April 6, 2018, facing hundreds of lawsuits from the victims of Larry Nassar's

sexual abuse (the "Nassar Litigation"), USAG filed a coverage action in Indiana state

court against its insurers, including LIU. After USAG removed that action to the federal

district court then filed a voluntary petition in the bankruptcy court under Chapter 11 of

the Bankruptcy Code, USAG commenced this adversary proceeding against its insurers

in the bankruptcy court, seeking to litigate the same claims raised in USAG's initial state

court complaint.

4

1.      **Bankruptcy Court and District Court Proceedings on USAG's Motion for Summary Judgment on LIU's Duty to Defend USAG Including the Applicability of the Third Party EPL Sublimit, But Not on Indemnity for any Loss**

Before LIU had even entered an appearance in the adversary proceeding, USAG moved for partial summary judgment to declare that LIU owes a duty to defend all Nassar-related matters. *See* Adv. Proc. ECF 26 (the "Duty to Defend Motion"). This Court had not (and has not) held or scheduled a Rule 16 conference. The Duty to Defend Motion focused entirely on whether or not LIU owed a duty to Defend USAG; it did not seek coverage of any **Loss** under the LIU Policy. *See id.* In its reply brief in support of that Duty to Defend Motion, USAG made a new argument for the first time: that the LIU Policy's $250,000 sublimit for Third Party EPL does not apply to USAG's claims. *See* Adv. Proc. ECF 146, at 41 ("USAG recognizes that this issue was not raised in its initial motion.").

LIU responded to USAG's reply brief with a reply brief of its own, unambiguously arguing that there were disputed facts as to the meaning of the term "Third Party EPL," and stating that, "given the factual issues at play, the applicability of the $250,000 sublimit is inappropriate for summary judgment where LIU has not been afforded the opportunity to take any discovery in this case." Adv. Proc. ECF 163, at 30. Nonetheless, in its Proposed Findings of Fact and Conclusions of Law regarding the Duty to Defend Motion, this Court concluded that "LIU's citation to extrinsic evidence to explain an ambiguous term is strictly forbidden by Indiana law.... But, in any case, the undefined term has no common meaning and results in an unenforceable ambiguity in the policy." Adv. Proc. ECF 260, at 31.

LIU filed objections to the Proposed Findings of Fact and Conclusions of Law. *See* Adv. Proc. ECF 270. Regarding the Third Party EPL Sublimit, LIU argued that the District Court should reject the Proposed Findings of Fact and Conclusions of Law because "Third Party EPL" is not ambiguous and is in fact a term of art "commonly used to describe the liability exposure facing an insured organization for claims brought by nonemployees against either the insured organization or its insured individuals for, among other things, discrimination and harassment." *Id.* at 37. Additionally, LIU argued that "[d]iscovery will show – through the deposition testimony of both USAG and its broker – that USAG sought and, in fact, purchased, Third Party EPL coverage which contained a $250,000 sublimit.... In sum, because there are disputed issues of material fact and because LIU has not had the benefit of any discovery on this issue, summary judgment should not enter on the applicability (or not) of the $250,000 Third Party EPL sublimit." Adv. Proc. ECF 270, at 40; *see also id.* at 37. In support of these arguments, LIU attached to its objections a declaration from Todd Weber, the LIU underwriting manager responsible for the USAG account with LIU from 2010 until 2017, providing evidence about LIU's and USAG's course of dealing, their conduct, and the meaning of the Third Party EPL term in the LIU Policy. *See* Adv. Proc. ECF 272, Ex. 2 to Schiller Decl.

On January 13, 2020, the district court overruled LIU's objections and accepted the Bankruptcy Court's Findings and Conclusions, including regarding the Third Party EPL sublimit. D. Ct. ECF 146, at 4-5 ("The court therefore ... **DECLARES** that $5 Million in policy limits is available to resolve the Nassar Athlete Lawsuits."). LIU appealed the January 13, 2020 Order, including the district court's construction of the Third Party EPL sublimit, to the Seventh Circuit Court of Appeals.

**2.    The Court of Appeals Reverses the Grant of Summary Judgment on the Third Party EPL Sublimit and Remands So LIU Can Pursue and Present Extrinsic Evidence**

The Seventh Circuit Court of Appeals agreed with LIU that "'Third Party EPL' … is a term of art in the insurance industry. 'EPL' stands for 'Employment Practices Liability.' Although Liberty offered the bankruptcy court additional evidence to interpret this endorsement, the bankruptcy court did not consider it. That decision was incorrect." *USA Gymnastics*, 27 F.4th at 533. As a result of that error, the Court concluded:

> With this type of insurance term of art, used in a policy in which the parties have a history of negotiating the terms of coverage, *parol evidence should be allowed and considered*, at least in a case involving a sophisticated insured that was able to negotiate the scope of the relevant coverage, notwithstanding the general principle that ambiguities are construed in favor of the insured. *There may be a $250,000 aggregate limit for some or all of the covered claims, subject to what the actual extrinsic evidence shows about the parties' conduct and what the term they inserted into the policy meant. Because more fact finding is required to resolve this question, this portion of the case is remanded to the district court for that to be accomplished.*

*Id.* (citations omitted) (emphasis added).

**3.    USAG, the Nassar Tort Claimants, and Certain Insurers Reach a Settlement Agreement**

In December 2021, after extended settlement negotiations in which LIU was not invited to participate, this Court confirmed a Chapter 11 Bankruptcy Plan agreed to by USAG, the Nassar Litigation Plaintiffs, and certain of USAG's insurers, which resolved the sexual-abuse claims against USAG. *See* Adv. Proc. 637, at 3. At the last minute, USAG agreed to contribute $6,150,000 to the settlement, funded by an interest-free loan from the USOPC. *Id.* USAG will pay back the loan over 10 years without interest. *See* Bankr. ECF 1776, at 14. This was a new provision in the Modified Third Amended

Chapter 11 Plan of Reorganization, which was filed on December 13, 2021 after the confirmation hearing had already begun. *See* Bankr. ECF 1764, at 14.[5]

### 4.      USAG Moves for Summary Judgment on Indemnity Issues

In April 2022, less than two months after the Court of Appeals concluded that there were fact issues regarding the meaning and applicability of the Third Party EPL and remanded for additional fact finding,[6] USAG filed the Indemnity Motion. In the Indemnity Motion, USAG seeks summary judgment on LIU's duty to indemnify USAG for the LIU Policy's full $5 million **Limit of Liability** (rather than the $250,000 Third Party EPL Sublimit). In USAG's brief in support of the Indemnity Motion, it agrees that "no **Loss** existed until the settlement plan was confirmed in 2022." Adv. Proc. ECF 637, at 26. Prior to that settlement, USAG had not suffered and had not previously asserted that it suffered a **Loss** nor had it ever previously sought indemnification from LIU.

USAG is requesting summary judgment on the following issues:

➢ Whether the LIU Policy's Third Party EPL sublimit applies to any duty of LIU to indemnify USAG;

➢ Whether the LIU Policy's Consent Requirement (which USAG refers to as the "voluntary-payments clause") is a defense to indemnity; and

➢ Whether the LIU's Policy's **Other Insurance** Trigger is a defense to indemnity.

---

[5]      On December 13, 2021, the bankruptcy court held a hearing to consider confirmation of the Plan. The hearing began in the morning. *See* Bankr. App. ECF 13, at 4. LIU presented oral argument on its objections. *See id.* at 27-37. The bankruptcy court rejected them. *See id.* at 41-44. At the end of the initial morning portion of the hearing, the court adjourned the hearing to allow USAG time to circulate the modified Plan to all parties. *See id.* at 52-53. USAG then circulated the modified Plan and a brief hearing was held shortly thereafter, at which the Court announced it would approve the Plan and enter an appropriate order. *See id.* at 55-57.

[6]      The Court of Appeals issued its Mandate on April 5, 2022. *See* C.A. 7 ECF No. 84.

*See generally* Adv. Proc. ECF 635, 637.

## II.    Argument

LIU cannot present facts essential to its response to the Indemnity Motion without taking discovery on numerous factual issues that the Indemnity Motion itself raises.

### A.    Legal Standard

#### 1.    The Duty to Indemnify Under Indiana Law

Under Indiana law, "the duty to defend is broader than an insurance company's coverage liability or its duty to indemnify." *Seymour Mfg. Co. v. Com. Union Ins. Co.*, 665 N.E.2d 891, 892 (Ind. 1996); *accord Trisler v. Indiana Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991) ("In Indiana, the duty to defend is broader than coverage liability."). Put another way, the duty to indemnify is narrower than the duty to defend, and as a result broader discovery concerning a claim for indemnification is warranted.

#### 2.    Motions for Leave to Conduct Discovery Under Rule 56(d)

Rule 56(d) provides that a court may deny or defer decision on a motion for summary judgment if the non-movant has not had a sufficient chance to conduct discovery. *See* Fed. R Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."). A party seeking relief under Rule 56(d) must demonstrate through affidavits or declarations specific reasons discovery should be extended. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 885 (7th Cir. 2005). Courts "should construe the rule liberally and not find violations on rigid technical grounds." *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994)

(discussing former Rule 56(f), which is now Rule 56(d)); *accord Eli Lilly & Co. v. Valeant Pharms. Int'l*, No. 08-CV-1720, 2009 WL 4745664, at *2 (S.D. Ind. Dec. 4, 2009) (citing *King*, 26 F.3d at 726); *Craig & Landreth, Inc. v. Mazda Motor of Am., Inc.*, No. 07-CV-0134, 2010 WL 107346, at *1 (S.D. Ind. Jan. 6, 2010) (same). "Because such requests, when properly made, are granted as a matter of course to ensure fairness, a failure to grant such a request can result in a finding of abuse of discretion." *Craig & Landreth, Inc.*, 2010 WL 107346, at *1.

A movant under Rule 56(d) must avoid two things: (1) "failure to pursue discovery diligently before the summary judgment motion", and (2) "futility of the requested discovery." *Smith v. OFS HealthCare Sys.*, 933 F.3d 859, 865 (7th Cir. 2019). But where there is a record of the movant's diligence and at least some of the additional discovery sought in a Rule 56(d) motion would not have been futile, the Court of Appeals has concluded that a district court abuses its discretion by granting summary judgment despite a motion under Rule 56(d) to postpone a summary judgment decision. *See id.* at 866.

## B.    The Indemnity Motion Presents Questions of Fact to Which LIU Needs Discovery to Respond

### 1.    LIU Needs Discovery to Respond to USAG's Arguments on the Third Party EPL Sublimit

In the Indemnity Motion, USAG seeks summary judgment on the applicability of the LIU's Policy's Third Party EPL sublimit. In so doing, USAG misrepresents the Court of Appeals' holding regarding the Third Party EPL sublimit and wrongly attempts to unilaterally give the term "Third Party EPL" a particular meaning that, according to USAG, demonstrates that the provision does not apply as a matter of law. USAG asserts: "The Seventh Circuit ordered this Court to consider extrinsic evidence in ascertaining

10

what 'Third Party EPL' means. USAG agrees that it refers to claims by 'Third Parties' alleging 'Employment Practices Wrongful Acts.'" Adv. Proc. ECF 637, at 13. This is wrong on two fronts.

### (a)    USAG Misconstrues the Court of Appeals' Directions on Remand

The Court of Appeals' holding was far broader than USAG makes it out to be. The Court of Appeals directed the trial court to consider extrinsic evidence "about the parties' conduct *and* what the term they inserted into the policy meant." *USA Gymnastics*, 27 F.4th at 533 (emphasis added). Extrinsic evidence regarding "the parties' conduct" includes evidence of USAG's intent in purchasing Third Party EPL coverage and why LIU agreed to provide such coverage only subject to a $250,000 sublimit. Indeed, the Court of Appeals made clear that "more fact finding is required to resolve this question," and as a result the Third Party EPL question was remanded "for that to be accomplished." *Id.* This Court should, and indeed must, follow the actual direction of the Court of Appeals and allow the parties to engage in discovery and fact finding regarding the parties' conduct and the construction of the phrase "Third Party EPL" as used in the LIU Policy.

### (b)    USAG Ignores the Myriad Issues Regarding the Third Party EPL Sublimit Concerning Which Discovery Is Necessary

In an attempt to rush the Court to grant summary judgment on the applicability of the Third Party EPL sublimit, USAG cherry-picks evidence purportedly supporting its narrow construction of the meaning of Third Party EPL.[7] But under any scrutiny, it is

---

[7]    USAG asserts that an alternative legal argument that LIU made in the Seventh Circuit Court of Appeals – and which the Court did not accept – is a binding judicial admission. *See* Adv. Proc. ECF 637, at 13 (citing *Pierce v. City of Chi.,* No. 09-CV-1462,

clear that there are many other topics on which LIU needs discovery. *First*, USAG asserts that "[t]he only possible place this limit [on Third Party EPL coverage] could attach is to the policy's sub-coverage for an Employment Practices Wrongful Act." Adv. Proc. ECF 637, at 7. USAG ignores that the Third Party EPL sublimit does not reference the **Employment Practices Wrongful Act** provision nor does USAG submit a declaration in support of its conclusory, counsel-made assertion that the sublimit could "only" attach to an **Employment Practices Wrongful Act**. Instead, USAG cites only to a treatise, 3 NEW APPLEMAN LAW OF LIABILITY INSURANCE §19.03, which in fact stands for a *far broader proposition* than the one proffered by USAG. The treatise states:

> EPL coverage offers protection to employers for wrongful employment practices. EPL policies provide *broad coverage for "workplace torts," "wrongful acts," "wrongful employment practices," or similar catch-all terms*. These terms typically are defined to include a *laundry list* of possible offenses, the most common of which are discussed below.

*Id.* (emphasis added). The Appleman treatise underscores the extensive scope of EPL coverage and suggests that when USAG and LIU added the Third Party EPL sublimit to the LIU Policy, they intended it to apply broadly. As held by the Court of Appeals, the Court must permit additional discovery into the "the parties' conduct," *USA Gymnastics*, 27 F.4th at 533, to determine the specific scope of the Third Party EPL

---

2012 U.S. Dist. LEXIS 14331, at *9 (N.D. Ill. Feb. 7, 2012) (discussing judicial admissions); *United States v. One Heckler-Koch Rifle*, 629 F.2d 1250, 1253 (7th Cir. 1980) (same). But LIU's legal argument was a "legal opinion, not a stipulation of fact. As such, it is not a judicial admission binding on [LIU], and certainly is not binding on this court." *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 682 (7th Cir. 2002); *accord Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010). And because that legal argument failed, there is no judicial estoppel. *See CSI Worldwide, LLC v. TRUMPF Inc.*, 944 F.3d 661, 662 (7th Cir. 2019).

sublimit and identify the applicable conduct provisions of the LIU Policy. *See* Schiller Decl., ¶¶ 8, 13.

*Second*, although USAG acknowledges that Third Party Employment Practices Liability coverage was previously included in past iterations of the USAG policy but deleted in 2013, the Indemnity Motion omits *why* that coverage was deleted in 2013. *See* Adv. Proc. ECF 637, at 8-9. According to the Weber Declaration previously submitted to the Court by LIU, Third Party Employment Practices Liability coverage was deleted from the LIU Policy in 2013 after USAG reported a **Claim** arising from a lawsuit by an athlete against USAG involving allegations of sexual misconduct. *See* Adv. Proc. ECF 272, ¶¶ 2-4, Ex. 2 to Schiller Decl. The Weber Declaration states that USAG subsequently asked LIU to add Third Party Employment Practices Liability coverage back into the LIU Policy, which LIU did subject to a $250,000 sublimit. *Id.* ¶¶ 6-7. As a result, discovery is needed regarding: (1) the specific nature of the 2013 sexual assault allegation, for example whether the perpetrator was a USAG employee or held some other position in relation to USAG, *see* Schiller Decl., ¶¶ 9, 13; and (2) "the parties' conduct," *see USA Gymnastics*, 27 F.4th at 533, in negotiating the return of Third Party EPL coverage to the LIU Policy subject to a sublimit, for example whether USAG and LIU understood the sublimit to apply to sexual misconduct claims against USAG by athletes. *See* Schiller Decl., ¶¶ 9, 13.

*Third*, USAG asserts that Larry Nassar was a volunteer and not an employee of USAG and so the Third Party EPL sublimit does not apply to Nassar's conduct or USAG's failure to supervise Nassar. *See* Adv. Proc. ECF 637, at 14. But to support that assertion, USAG relies on (1) a three year old declaration from USAG's former CFO, which contains only a passing reference to "some time when Nassar volunteered for

USAG," *see id.*; *see also* Adv. Proc. ECF 27-1, at 4; and (2) a report prepared by the law

firm Ropes & Gray on behalf of the USOPC. *See id.* Neither of these documents

definitively establishes that Nassar was *only* a volunteer for USAG. Moreover, eight of

USAG's nine citations are to the Ropes & Gray report, which is hearsay and cannot

support USAG's summary judgment motion at all. *Cairel v. Alderden*, 821 F.3d 823, 830

(7th Cir. 2016) ("To be considered on summary judgment, evidence must be admissible

at trial…. If the evidence is inadmissible hearsay, the courts may not consider it."). LIU

has no way to independently confirm whether Nassar was ever employed by USAG

without conducting discovery. *See* Schiller Decl., ¶¶ 10, 13.[8]

 *Fourth*, USAG asserts, in conclusory fashion, that the words "employees" and

"volunteers" are mutually exclusive and a volunteer is not an employee for the purposes

of the LIU Policy's Third Party EPL sublimit. *See* Adv. Proc. 637, at 14. The Court should

not take USAG's word for it. Instead, as the Court of Appeals held, "with this type of

insurance term of art," *i.e.*, with Third Party EPL coverage, "used in a policy in which the

parties have a history of negotiating the terms of coverage, parol evidence should be

allowed and considered[.]" *USA Gymnastics*, 27 F.4th at 533. Indeed, the NEW

APPLEMAN LAW OF LIABILITY INSURANCE treatise cited by USAG explicitly states

that "[s]ome EPL policies extend coverage to independent contractors, volunteers,

seasonal or temporary employees, and leased laborers." 3 NEW APPLEMAN LAW OF

LIABILITY INSURANCE §19.04. LIU needs discovery to determine whether the Third

---

 [8] Notwithstanding this question, LIU does not concede that, even if Nassar was
exclusively a USAG volunteer, the Third Party EPL sublimit does not apply to Nassar's
conduct or USAG's failure to supervise Nassar.

Party EPL sublimit encompassed volunteers (assuming Nassar was a volunteer). *See* Schiller Decl., ¶¶ 11, 13.

Despite USAG's arguments to the contrary, LIU is not seeking discovery "to expand or override" the express terms of the LIU Policy. *See* Adv. Proc. 637, at 17. As the Court of Appeals agreed, additional fact-finding is required to construe the Third Party EPL sublimit. LIU is merely seeking the necessary information to establish what conduct and to whose conduct the sublimit applies.

> **2.     LIU Needs Discovery to Respond to USAG's Arguments on Whether USAG Breached the Consent Requirement in the LIU Policy**

The Indemnity Motion also seeks summary judgment on the applicability of the LIU Policy's **Defense Costs and Settlements** provision, which includes a Consent Requirement stating "[t]he **Insureds** shall not ... make any settlement offer with respect to any **Claim** without the Insurer's prior written consent... The Insurer shall not be liable for any ... settlements made by the **Insureds** without the Insurer's prior written consent." LIU Policy, § 2.2. As USAG concedes in the Indemnity Motion, in its recent Chapter 11 Bankruptcy Plan, which resolved the Nassar-related sexual abuse litigation, "USAG settled those lawsuits without LIU's consent, in breach of the policy's voluntary-payment terms." Adv. Proc. ECF 637, at 19.

It is undisputed that USAG did not comply with its obligation under the Consent Requirement.[9] To escape that breach of the LIU Policy's terms, USAG makes a litany of arguments about how LIU supposedly forfeited its rights by materially breaching the LIU Policy. But many of these arguments are fact-intensive and require additional

---

[9]     To the extent it is not, LIU is entitled to whatever evidence USAG has that it sought LIU's consent to the settlement.

discovery before they can be resolved. (LIU also contests them on the law, but this is not the time for that argument.)

*First*, as a general matter, the bulk of USAG's material breach arguments focus on LIU allegedly breaching its duty to defend *the investigations* of USAG. *See* Adv. Proc. ECF 637, at 22-26. But here, USAG is seeking indemnity for USAG's settlement of the *Nassar tort litigation*. *See id.* at 3 ("the Chapter 11 ... resolved the sexual-abuse claims"). It is unclear from the Indemnity Motion whether USAG is claiming that LIU breached its duty to defend the tort claims. *See*, *e.g.*, *id* at 23 ("LIU's breach of its duty to defend the investigations is tethered to the litigation cases, and thus is material in relation to them."). If USAG is claiming LIU breached its duty to defend the tort claims, or that the two duties are "tethered", LIU needs discovery from USAG about what supporting evidence it has so that it can attempt to rebut that otherwise conclusory assertion. *See* Schiller Decl., ¶¶ 15, 19.

*Second*, USAG states it "was entirely deprived of a defense in the multiple Nassar investigations," and "[t]his refusal to defend was incredibly damaging," but USAG also acknowledges that it was able to obtain representation and fund the investigations itself. *See* Adv. Proc. ECF 637, at 22. Likewise, USAG claims that it "cannot be fully compensated even now for the breach," but in support of this assertion it relies entirely on amounts it "had to spend" and other "costs." *Id.* at 23. Of course, USAG *can* be compensated for monetary outlays, assuming it is in fact entitled to compensation. Thus, to the extent USAG is claiming some unspecified intangible harm beyond the amounts it had to pay to provide its own defense, LIU needs discovery from USAG about those harms. *See Sc*hiller Decl., ¶¶ 16, 19. And if there is no harm beyond USAG's monetary expenditures, then "the injured party," USAG, "can be adequately

16

compensated for the part of that benefit of which he will be deprived," weighing against concluding there was a material breach here. *See Frazier v. Mellowitz*, 804 N.E.2d 796, 805 (Ind. Ct. App. 2004) (no material breach where injured party could be "compensated adequately in damages as a result of [breaching party's] failure to perform").

*Third*, in arguing LIU has no intention of curing its breach, USAG takes issue with the 4% share of USAG's litigation defense costs that LIU paid USAG prior to August 2021. USAG states, "LIU has never proven that anyone, let alone USAG, agreed to that tiny allocation." Adv. Proc. ECF 637, at 24. But, as USAG concedes, the dispute was whether LIU's share was 4% or 5% of the litigation defense costs. If USAG in fact contends that a difference of 1% of the tort defense costs was a material breach, LIU is entitled to seek discovery of any facts purportedly supporting that claim. *See* Schiller Decl., ¶¶ 17, 19.

*Fourth*, USAG states that LIU's conduct did not "comport with standards of good faith and fair dealing" by asserting – without any support whatsoever – that "LIU is the only party who has refused to participate in the bankruptcy settlement, and it lacks any good-faith reason for that refusal." Adv. Proc. ECF 637, at 25; *see also id.* at 3. USAG's say-so is not evidence. If USAG is injecting into these proceedings the mediation that occurred before Judge Carr and discussions with participants in that mediation, then LIU is certainly entitled to defend itself from this accusation, including by taking discovery from USAG about: (1) which parties were invited to participate in the mediation with Judge Carr that precipitated settlement; (2) whether LIU was invited to participate in the mediation and/or settlement discussions, and when; (3) what evidence USAG has, if any, that LIU refused to participate in the settlement; and (4) if

17

LIU was intentionally excluded from participating in the settlement, why that was and whether the exclusion was in good faith. *See* Schiller Decl., ¶¶ 18, 19. Because LIU did not participate in the mediation and settlement negotiations – because it was not asked to participate, as a decision was made by others to treat LIU differently than the general liability ("GL") insurers – LIU has no access to any of those materials. *See id.*

### 3. LIU Needs Discovery to Respond to USAG's Arguments on Whether the LIU Policy's Other Insurance Trigger Applies to USAG's Indemnity Claim

USAG contends that the LIU Policy's **Other Insurance** Trigger does not apply here for two reasons. First, USAG argues that the LIU Policy is not "concurrent" with the policies issued by USAG's other insurers. *See* Adv. Proc. 637, at 28-30. But to support this argument, USAG relies entirely on naked assertions with *no evidentiary support whatsoever*. For example, USAG conclusorily states, with no citation:

> Here, LIU's D&O policy and USAG's GL policies do not cover the same risk or the same interest, for the benefit of the same entities, during the same period. LIU's D&O policy only covers emotional distress claims and excludes bodily injury. The general liability policies cover all bodily injuries.

*Id.* at 29. Similarly, USAG asserts, without citing any of the policies, "LIU's policy is not for the same benefit of the same entities as the general liability policies. For example, unlike LIU's policy, most of the general liability policies also insure the USOPC." *Id.* To rebut these naked assertions, LIU needs to take discovery from USAG, including of the policies issued by USAG's other insurers, USAG's coverage correspondence with the other insurers, and any coverage analysis conducted by USAG. *See* Schiller Decl., ¶ 20. The reality here is that, as to the tort claimants and their indemnity settlements, USAG is seeking coverage for precisely the same loss or damages from LIU as it did from the

GL insurers.  LIU has the right to prove that. Discovery is obviously relevant to that proof.

### 4.    LIU Needs Discovery to Determine Whether USAG Is Seeking Indemnity for a Loss Covered by the LIU Policy

LIU also needs discovery to determine whether USAG is requesting indemnity for a covered **Loss**. *First*, although USAG states that the "Chapter 11 Plan ... which resolved the sexual-abuse claims" and "USAG borrowed $6,150,000 from the USOPC and contributed it to the resolution of the sexual-abuse claims," Adv. Proc. 637, at 3, it is unclear whether all of the amount USAG is paying relates to Nassar's abuse or some other claims concerning abuse by other USAG employees or volunteers that were not made during the LIU **Policy Period**. USAG asserts that its indemnity claim is for "a debt incurred in settlement of the Nassar-related tort claims," but ignores that there are claims for abuse committed by many other people associated with USAG, and the Plan settled all of those claims, not just Nassar-related claims. Thus, LIU needs discovery to determine if and to what extent USAG's payments are for **Claims** within the LIU Policy, i.e., claims arising from Nassar's abuse. *See* Schiller Decl., ¶ 22.

*Second*, because it is unrefuted that LIU did not participate in the mediation and settlement negotiations, *see* Adv. Proc. ECF 637, at 3, while it may well turn out to be the case, LIU nonetheless should be permitted to take discovery about whether the settlement was negotiated in good faith, to ensure that the settlement was not in bad faith or collusive. *See Midwestern Indem. Co. v. Laikin*, 119 F. Supp. 2d 831, 844 (S.D. Ind. 2000).  This is especially the case here where an amount just in excess of LIU's claimed limits of $5 million was added to the settlement in the 59th minute of the eleventh hour during the confirmation hearings: as noted above, USAG filed a modified

Chapter 11 Plan halfway through the Plan confirmation hearing disclosing USAG's payment for the first time – *after the Court had already ruled on USAG's objections to the Plan. See supra* p. 6. This is the only amount for which USAG asserts a claim for indemnity. Information on the settlement and the sole part presumably targeting LIU is uniquely in the control of parties other than LIU. *See* Schiller Decl., ¶ 23.

*Third*, the LIU Policy's bodily injury exclusion bars coverage of USAG's claim for indemnity to the extent the tort litigants' claims are for "bodily injury" as defined under the Policy. Though the Court of Appeals in its recent decision addressed the bodily injury exclusion, it did so only in the context of LIU's duty to defend USAG – which is broader than the duty to indemnify under Indiana law – and the court explicitly held only that the Claims sought some relief that may not be excluded by the bodily injury exclusion. *See USA Gymnastics*, 27 F.4th at 531 ("Because the duty to defend applies even to claims that in part seek excluded relief, Liberty would have a duty to defend the athlete lawsuits seeking relief for emotional distress and/or mental anguish."). As a result, the Court of Appeals left open the question of whether and to what extent the bodily injury exclusion applies to indemnification for the specific claims that were settled and released in the Plan and which will be paid by USAG's contribution. If the Plan releases claims that are *not* for emotional distress, then those claims may be excluded for indemnification by the bodily injury exclusion. LIU needs and is entitled to seek discovery about the injuries at-issue in the released claims. *See* Schiller Decl., ¶ 24.

*Fourth* and finally, newly available evidence casts doubt on whether USAG's request for indemnity is a **Claim** first made during the LIU **Policy Period**. The definition of **Claim** includes "the commencement of a formal criminal, administrative or regulatory proceeding or investigation against an **Insured**…. A **Claim** will be

deemed first made on the date an **Insured** receives a written demand, complaint, indictment, notice of charges, or order of formal investigation." LIU Policy, § 23.3. The Policy also specifies how its **Limits of Liability** apply to related **Claims**. It states that "[a]ll **Claims** arising from the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed one **Claim** and subject to a single limit of liability. Such **Claim** shall be deemed first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**." *Id.*, § 9.2. Thus, if USAG or Nassar received "a written demand, complaint, indictment, notice of charges, or order of formal investigation" concerning abuse by Nassar prior to the **Policy Period**, i.e., prior to May 16, 2016, then all of the Nassar-related **Claims** would have been first made before the **Policy Period**.

There is significant, recent evidence that requires further factual development about when a Nassar-related **Claim** was first made.[10] One just-released investigative report, for example, states that "[t]here were numerous investigations into claims against Nassar, the first of which was conducted by Meridian Township (Michigan) Police in 2004." *A Case-Study of Systemic Abuse in Sports Perpetrated by Larry Nassar, CHILD USA's Game Over Commission to Protect Youth Athletes (Jan. 2022), https://childusa.org/wp-content/uploads/2022/01/Game-Over-Commission-Report-FINAL-1.28.22.pdf.* LIU has not had an opportunity to conduct discovery about whether any of those "numerous investigations" resulted in USAG or Nassar receiving the requisite notice of a **Claim**.

---

[10]   All of this evidence came to light after the Seventh Circuit Appeal was fully briefed and argued.

Moreover, the Department of Justice's Office of Inspector General recently released a report describing in the greatest detail the FBI's investigation of Nassar prior to May 16, 2016, recounting the FBI's many interactions with USAG and its staff and suggesting that USAG may have received an order of formal investigation prior to May 16, 2016. *See Investigation and Review of the Federal Bureau of Investigation's Handling of Allegations of Sexual Abuse by Former USA Gymnastics Physician Lawrence Gerard Nassar at 22-57, Department of Justice Office of the Inspector General (July 2021), https://oig.justice.gov/sites/default/files/reports/21-093.pdf.* Most tellingly, the OIG report confirms that on May 11, 2016, *i.e.*, before the **Policy Period**, "the Los Angeles Field Office opened a full investigation with an FD-71 complaint form to address the Nassar allegations." *Id.* at 55. LIU needs discovery from USAG to determine whether it contemporaneously received notice of the full investigation or FD-71 complaint, and if, at any other time prior, it had received "a written demand, complaint, indictment, notice of charges, or order of formal investigation" related to allegations against Nassar. *See* Schiller Decl., ¶ 25.

### C. The Court Should Permit LIU to Take the Requested Discovery Because LIU Has Not Failed to Pursue Discovery Diligently Nor Will the Discovery Be Futile

There is no question concerning LIU's diligence regarding the requested discovery. As to the Third Party EPL sublimit, LIU has been requesting additional discovery since June 2019, when it first responded to USAG's addition of the Third Party EPL sublimit issue to the Duty to Defend Motion. *See* Adv. Proc. ECF 163, at 30. LIU was consistently denied the opportunity to conduct discovery. The Duty to Defend Motion was only finally resolved in February of this year, when the Court of Appeals explicitly held that "more fact finding is required to resolve this question" of interpreting

the Third Party EPL sublimit and remanded "for that to be accomplished." *USA Gymnastics*, 27 F.4th at 533. This Motion is the manifestation of that remand.

The other additional discovery that LIU is seeking in this Motion is equally timely. Until now, USAG has never before asserted a claim for indemnity against LIU. The coverage defenses that USAG has put at-issue in its Indemnity Motion were not before the Court until USAG suffered an alleged **Loss**, i.e., until December 13, 2021, at the earliest, when USAG, the survivors of Larry Nassar's abuse, and certain of USAG's insurers entered into the settlement reflected in the Chapter 11 Plan. *See* Bankr. ECF 1776. The **Defense Costs and Settlement** clause's Consent Requirement is implicated now, but was not earlier, because USAG has now entered into a settlement agreement, *see* LIU Policy, § 2.2; and the **Other Insurance** Trigger depends on, among other things, payment of a "**Loss** arising from a **Claim**" and the extent to which USAG's GL insurance has been exhausted, neither of which occurred prior to the Effective Date of the Plan. *Id.*, § 12. The bulk of LIU's other requests for discovery likewise relate to the negotiations or terms of the Plan. *See supra* pp. 19-22. The only exceptions are LIU's requests for discovery into whether USAG is settling claims for "bodily injury, and when USAG first received notice of a **Claim** related to Nassar. First, as to the bodily injury exclusion, this is a separate inquiry, now that the tort claims have settled, than it was as to the defense issue in the past. *See* Schiller Decl., ¶ 24. Second, LIU's request regarding when USAG's claims were first made arises entirely from newly discovered facts uncovered by reports published within the past year, long after USAG's Duty to Defend Motion was filed and fully briefed. *See id.*, ¶ 25.

Additionally, LIU's proposed discovery will not be futile. As the Court of Appeals made clear in discussing the futility component of Rule 56(d) requests, "it can be risky

to deny discovery based on a theory that the law makes the discovery irrelevant.… If a district court denies a Rule 56(d) motion based on an erroneous view of the applicable substantive law, and thus of the relevance of the additional discovery sought, an abuse of discretion is likely." *Smith*, 933 F.3d at 868. Here, the substantive law favors permitting LIU's discovery.

*First*, the Court of Appeals has remanded for fact finding regarding the Third Party EPL sublimit; there can be no doubt that discovery on that subject is necessary, not futile. *Second*, as to the **Defense Costs and Settlements** clause's Consent Requirement, USAG's argument is primarily that LIU committed an earlier material breach of the LIU Policy, and so LIU cannot invoke the clause. *See* Adv. Proc. 637, at 21-26.[11] But the test for a material breach involves consideration of six factors, none of which is conclusive or definitively determined by USAG's unsupported factual claims: "[t]he determination of materiality of a failure to perform is not susceptible to mechanical rules." *Frazier*, 804 N.E.2d at 802. Thus, discovery into otherwise undeveloped facts concerning whether USAG can satisfy the various factors for establishing a material breach is required. *Third*, USAG's primary arguments about the **Other Insurance** Trigger, that it does not apply because "LIU's D&O policy and USAG's GL policies do not cover the same risk or the same interest, for the benefit of the

---

[11] USAG's other argument about why the **Defense Costs and Settlement Clause** does not apply is that LIU preemptively repudiated its duty to indemnify. This ignores, however, that LIU has complied with its duty to defend, as ordered by the district court, since at least October 2020. Moreover, where, as here "liability has been denied by reason of an honest dispute concerning facts which constitute a condition precedent to the insurer's duty to pay benefits pursuant to the terms of a policy of insurance, repudiation will not be found." *Berry Plastics Corp. v. Illinois Nat'l Ins. Co.*, 244 F. Supp. 3d 839, 850 (S.D. Ind. 2017), *aff'd*, 903 F.3d 630 (7th Cir. 2018) (quoting *Colonial Life & Accident Ins. Co. v. Newman*, 288 N.E.2d 195, 196 (Ind. 1972)).

same entities, during the same period," *id.* at 29, are fact-specific, making discovery essential.[12] *Fourth* and finally, LIU's other requests for discovery relate to coverage defenses that are potentially dispositive of the Indemnity Motion.

Simply put, because LIU is pursuing the requested discovery at the first available opportunity and the discovery will not be futile, the Court should grant the Discovery Motion.

## III.    Conclusion

For the foregoing reasons, the Court should grant LIU's Discovery Motion and enter an order setting a reasonable scheduled for discovery allowing:

- Sixty days for written discovery;
- Thirty days for depositions;
- Thirty days for expert discovery; and

---

[12]    USAG's other arguments about the **Other Insurance** Trigger do not make discovery futile. USAG's argument regarding the GL insurance policies being "bought back" cites only a single unpublished case which dealt with a settlement agreement that deemed insurance policies "exhausted" as between the parties to the settlement, not third parties. *See* Adv. Proc. ECF 637, at 30-31 (citing *Magnetek, Inc. v. The Travelers Indem. Co.*, No. 17 3173, 2019 U.S. Dist. LEXIS 115231, at *19-20 (N.D. Ill. July 11, 2019)). Moreover, just because USAG "bought back" the GL policies, it does not follow that they are deemed exhausted, and USAG cites no authority for the proposition that its agreement to "buy-back" the GL policies means they are not "valid" or "collectible". *See* LIU Policy, § 12. Likewise, USAG's argument that LIU's **Other Insurance** defense does not implicate LIU's rights against USAG purports to be based on "well settled" law but in fact relies on a treatise and cases from Kansas, New Jersey, and California, but not Indiana. *See* Adv. Proc. ECF 637, at 31-33. These arguments are insufficient to make LIU's request for discovery on the **Other Insurance** Trigger futile.

directing that the deadline for LIU to file a response to the Indemnity Motion be deferred until 28 days after this discovery concludes, or such other later date as the Court may order.

Respectfully submitted,

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

*/s/ Ronald P. Schiller*
Ronald P. Schiller (admitted *pro hac vice*)
Matthew A. Hamermesh (admitted pro hac vice)
Bonnie M. Hoffman (admitted *pro hac vice*)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200 (telephone)
(215) 568-0300 (facsimile)
rchiller@hangley.com
mhamermesh@hangley.com
bhoffman@hangley.com

and

KIGHTLINGER & GRAY, LLP
Ginny L. Peterson, ID No. 20305-41
One Indiana Square, Suite 300
211 North Pennsylvania Street
Indianapolis, Indiana 46204
(317) 638-4521
gpeterson@k-glaw.com

Dated: May 12, 2022          *Counsel for Liberty Insurance Underwriters Inc.*